UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| NAFEESA SYEED AND NAULA NDUGGA, ON BEHALF OF THEMSELVES AND SIMILARLY SITUATED WOMEN, | : : : : | 20-cv-07464 (GHW) |
| Plaintiffs, | : : | **ECF CASE** |
| -against- | : : | |
| BLOOMBERG L.P., | : : | **ORAL ARGUMENT REQUESTED** |
| Defendant. | : : : | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND, IN THE
ALTERNATIVE, TO STRIKE THE DEMAND FOR A JURY TRIAL**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................... 1

PROCEDURAL HISTORY AND STATEMENT OF ALLEGED FACTS ................................. 2

    A.    This Lawsuit.................................................. 2

    B.    Allegations Relating To Syeed's Employment In Dubai and Washington, D.C. .................................................. 4

    C.    Allegations Relating To Ndugga .......................................... 4

ARGUMENT ....................................................... 6

I.     LEGAL STANDARD APPLICABLE TO A MOTION TO DISMISS ............................ 6

II.    ALL OF SYEED'S CLAIMS SHOULD BE DISMISSED.................................... 6

    A.    Syeed Cannot State a Claim Under the NYSHRL or NYCHRL Because She Did Not Live or Work In New York. ................................... 6

    B.    Syeed's Constructive Discharge Claim Fails For the Same Reasons As Her NYSHRL and NYCHRL Claims.................................. 10

    C.    Syeed's NYSHRL and NYCHRL Claims Relating To Alleged Discrete Acts Before August 2017 Are Time-Barred......................... 11

    D.    Syeed Has Represented That She Does Not Assert Title VII Claims, Nor Could She Because She Never Timely Exhausted Her Administrative Remedies.................................................. 12

III.    NDUGGA'S CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY.................. 13

    A.    Ndugga's Title VII Claims Should Be Dismissed For Failure To Exhaust Her Administrative Remedies and To the Extent They Are Time-Barred.................................................. 13

        1.    Ndugga Cannot Bring Title VII Claims In Court Because She Has Not Yet Obtained a Right To Sue Letter. ............................ 13

        2.    Ndugga's Title VII Claims Based On Disparate Pay Further Should Be Dismissed With Prejudice To the Extent They Are Untimely. .................................................. 13

i

B.    Ndugga Has Failed To State a Claim For Disparate Treatment. .......................... 14

1.   Ndugga Fails To Plausibly Allege That She Was Compensated
     Less Than Any Similarly Situated Comparator. ............................................... 15

2.   Ndugga Has Not Plausibly Pled a Claim Of Failure-To-Promote. ................. 19

3.   Ndugga Does Not Plausibly Allege Discrimination With Respect
     To Evaluations. ............................................................................................... 21

C.    Ndugga Has Not Pled a Claim For Hostile Work Environment Based
      On Sex or Race. ..................................................................................................... 22

D.    Ndugga Cannot State a Claim For Disparate Impact. ............................................ 26

E.    Ndugga's Individual Claim For Retaliation Fails As a Matter Of
      Law. ....................................................................................................................... 29

IV.   THE CLASS CLAIMS ALSO SHOULD BE DISMISSED ............................................ 33

V.    ALTERNATIVELY, THE JURY DEMAND SHOULD BE STRICKEN ...................... 34

CONCLUSION ........................................................................................................................ 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Adam-Flores v. City of N.Y.*,
    2020 WL 996421 (S.D.N.Y. Mar. 2, 2020) ............................................................................23

*Adams v. N.Y. State Educ. Dep't*,
    752 F.Supp.2d 420 (S.D.N.Y. 2010) ....................................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................6

*Bernstein v. MONY Grp., Inc.*,
    228 F.Supp.2d 415 (S.D.N.Y. 2002) ..................................................................................20

*Beverley v. N.Y.C. Health & Hosps. Corp.*,
    2020 WL 1503421 (S.D.N.Y. Mar. 30, 2020) ....................................................................18

*Binson v. J.E. Robert Co., Inc.*,
    2006 U.S. Dist. LEXIS 101012 (E.D.N.Y. June 27, 2006) ................................................34

*Bliss v MXK Rest. Corp.*,
    220 F.Supp.3d 419 (S.D.N.Y. 2016) ............................................................................15, 22

*Brown v. Coach Stores, Inc.*,
    30 F.Supp.2d 611 (S.D.N.Y. 1997), *aff'd*, 163 F.3d 706 (2d Cir. 1998) ......................27, 29

*Brown v. Montefiore Med. Ctr.*,
    2019 WL 4454230 (S.D.N.Y. May 8, 2019) ......................................................................20

*Butterfield-Bajinan v. City of N.Y.*,
    2017 WL 4045175 (S.D.N.Y. Sept. 11, 2017) ....................................................................14

*Cardwell v. Davis Polk & Wardwell LLP*,
    2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) (Woods, J.) ............................................. *passim*

*Chapple v. Fahnestock & Co. Inc.*,
    2005 WL 8157058 (E.D.N.Y. Sept. 16, 2005) ..................................................................13

*Clarke v. Leading Hotels of World, Ltd.*,
    2015 WL 6686568 (S.D.N.Y. Oct. 29, 2015) ....................................................................28

*Collette v. St. Luke's Roosevelt Hosp.*,
 132 F.Supp.2d 256 (S.D.N.Y. 2001)................................................28

*Daniels v. City of N.Y.*,
 2019 WL 251511 (S.D.N.Y. Jan. 17, 2019) ................................18

*Danieu v. Teamsters Local 264*,
 2011 WL 1259839 (W.D.N.Y. Mar. 31, 2011)................................31

*Dechberry v. N.Y.C. Fire Dep't*,
 124 F.Supp.3d 131 (E.D.N.Y. 2015) ................................22

*Downing v. Downing*,
 32 A.D.2d 350 (1st Dep't 1969) ................................35

*Eng v. City of N.Y.*,
 715 F. App'x 49 (2d Cir. 2017) ................................16, 17

*Espinosa v. Van Dorn Plastic Machinery Co.*,
 813 F.Supp. 252 (S.D.N.Y. 1993)................................35

*Espinoza v. N.Y.C. Dep't of Transp.*,
 304 F.Supp.3d 374 (S.D.N.Y. 2018)................................12

*Flaherty v. Metromail Corp.*,
 235 F.3d 133 (2d Cir. 2000)................................12

*Fried v. LVI Servs., Inc.*,
 2011 WL 4633985 (S.D.N.Y. Oct. 4, 2011), *aff'd*,
 500 F. App'x 39 (2d Cir. 2012) ................................7, 9

*Garcia v. Coll. of Staten Island*,
 2012 WL 3930448 (E.D.N.Y. July 31, 2012) ................................31

*Ghorpade v. Metlife, Inc.*,
 2014 WL 7008954 (S.D.N.Y. Dec. 12, 2014) ................................6

*Gibson v. N.Y. State Office of Mental Health*,
 2018 WL 3850632 (N.D.N.Y. Aug. 13, 2018) ................................3

*Goodwine v. City of N.Y.*,
 2016 WL 3017398 (S.D.N.Y. May 23, 2016) ................................24, 25, 26

*Hardwick v. Auriemma*,
 116 A.D.3d 465 (1st Dep't 2014) ................................9

*Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*,
 2018 WL 4055278 (E.D.N.Y. July 6, 2018)................................25

iv

*Henry v. NYC Health & Hosp. Corp.*,
    18 F.Supp.3d 396 (S.D.N.Y. 2014)....................................................................33

*Hoffman v. Parade Publ'ns*,
    15 N.Y.3d 285 (2010) ..............................................................................6, 7, 9

*Humphries v. City Univ. of N.Y.*,
    2013 WL 6196561 (S.D.N.Y. Nov. 26, 2013) ............................................... *passim*

*Janneh v. Regal Ent. Grp.*,
    2009 WL 2922830 (N.D.N.Y. Sept. 8, 2009) ......................................................28

*Johnson v. Xylem Inc.*,
    2020 WL 1963125 (W.D.N.Y. Apr. 16, 2020) ....................................................13

*Kalia v. City Univ. of N.Y.*,
    2020 WL 6875173 (S.D.N.Y. Nov. 23, 2020) ................................................16, 32

*Kasraie v. Jumeirah Hosp. & Leisure (USA), Inc.*,
    2013 WL 5597121 (S.D.N.Y. Oct. 10, 2013) .....................................................21

*Kearse v. ATC Healthcare Servs.*,
    2013 WL 1496951 (S.D.N.Y. Apr. 8, 2013) .........................................................8

*Kernan v. N.Y. State Dep't of Fin. Servs.*,
    2015 WL 13741858 (E.D.N.Y. July 15, 2015) ......................................................8

*LaVoice v. UBS Fin. Servs., Inc.*,
    2013 WL 5380759 (S.D.N.Y. Sept. 26, 2013) ....................................................34

*Lawtone-Bowles v. City of N.Y.*,
    2019 WL 652593 (S.D.N.Y. Feb. 15, 2019).................................................24, 26

*Lucio v. N.Y.C. Dep't of Educ.*,
    575 F. App'x 3 (2d Cir. 2014) .........................................................................30

*Maines v. Last Chance Funding, Inc.*,
    2018 WL 4558408 (E.D.N.Y. Sept. 21, 2018) .......................................................8

*Majeed v. ADF Cos.*,
    2013 WL 654416 (E.D.N.Y. Feb. 20, 2013).......................................................33

*Malone v. N.Y. Pressman's Union No. 2*,
    2011 WL 2150551 (S.D.N.Y. May 31, 2011) ....................................................29

*Mandala v. NTT Data, Inc.*,
    975 F.3d 202 (2d Cir. 2020)................................................................27, 28, 29

*McCabe v. Lifetime Ent. Servs., LLC,*
   761 F. App'x 38 (2d Cir. 2019) ............................................................................34

*McGuirk v. Swiss Re Fin. Servs., Corp.,*
   2016 WL 10683305 (S.D.N.Y. June 17, 2016) ...............................................13, 14

*Miksic v. TD Ameritrade Holding Corp.,*
   2013 WL 1803956 (S.D.N.Y. Mar. 7, 2013) ........................................................31

*Motta v. Glob. Cont. Servs. Inc.,*
   2016 WL 2642229 (S.D.N.Y. May 4, 2016) ....................................................27, 29

*Pedroza v. Ralph Lauren Corp.,*
   2020 WL 4273988 (S.D.N.Y. July 24, 2020) .........................................................8, 9

*Pena v. Bd. of Elections in City of N.Y.,*
   2017 WL 722505 (S.D.N.Y. Feb. 6, 2017) ......................................................22, 32

*Robles v. Cox & Co.,*
   841 F.Supp.2d 615 (E.D.N.Y. 2012) .....................................................................8

*Rogers v. Fashion Inst. of Tech.,*
   2016 WL 889590 (S.D.N.Y. Feb. 26, 2016) .........................................................33

*Samuels v. Williams Morris Agency,*
   2013 WL 417770 (Sup. Ct. N.Y. Cnty., Jan. 14, 2013), *aff'd,*
   123 A.D.3d 472 (1st Dep't 2014) ...................................................................28, 29

*Shmueli v. Savoy Condo., LLC,*
   2018 N.Y. Slip. Op. 33303(U), (Sup. Ct. N.Y. Cnty., Dec. 19, 2018) ..................35

*Shultz v. Congregation Shearith Israel of City of N.Y.,*
   867 F.3d 298 (2d Cir. 2017).............................................................................30, 31

*Silberman v. Atl. Dialysis Mgmt. Servs., LLC,*
   2018 WL 4335510 (S.D.N.Y. Sept. 11, 2018).......................................................10

*Simon v. City of N.Y.,*
   2019 WL 916767 (S.D.N.Y. Feb. 14, 2019)............................................15, 22, 24

*Simon v. E. Ky. Welfare Rts. Org.,*
   426 U.S. 26 (1976)................................................................................................27

*Sivokonev v. Cuomo,*
   447 F.Supp.3d 58 (W.D.N.Y. 2020) ......................................................................3

*Soloviev v. Goldstein,*
   104 F.Supp.3d 232 (E.D.N.Y. 2015) ...............................................................18, 22

*Soto v. Marist Coll.*,
  2019 WL 2371713 (S.D.N.Y. June 5, 2019) ...........................................................21, 24, 30

*Taylor v. City of N.Y.*,
  207 F.Supp.3d 293 (S.D.N.Y. 2016) .......................................................................11, 19, 21

*Tulino v. City of N.Y.*,
  2016 WL 2967847 (S.D.N.Y. May 19, 2016) ...................................................................20

*Vangas v. Montefiore Med. Ctr.*,
  823 F.3d 174 (2d Cir. 2016) .............................................................................................6, 10

*Wang v. Gov't Emps. Ins. Co.*,
  2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016) ..................................................................10

*Whipple v. Reed Eye Assocs.*,
  213 F.Supp.3d 492 (W.D.N.Y. 2016) ................................................................................32

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
  333 F.3d 74 (2d Cir. 2003) ................................................................................................12

## STATUTES

29 U.S.C. § 626(d)(2) ...............................................................................................................12

42 U.S.C. § 2000e-5(e)(1) .........................................................................................................12

## OTHER AUTHORITIES

Fed. R. Civ. P. 12(b)(6) ..........................................................................................................1, 6

Fed. R. Civ. P. 15(a)(1) ...............................................................................................................3

Fed. R. Civ. P. 81(c)(3) .......................................................................................................34, 35

N.Y. C.P.L.R. § 4102(a) ...........................................................................................................35

Defendant Bloomberg L.P. ("BLP" or the "Company") respectfully moves this Court for an Order dismissing with prejudice the Second Amended Complaint (Dkt. 26) ("SAC"), pursuant to Fed. R. Civ. P. 12(b)(6), and, in the alternative, striking the demand for a trial by jury.

## PRELIMINARY STATEMENT

Plaintiff Nafeesa Syeed, a California resident who worked for BLP in Dubai and Washington, D.C. (but never in New York), commenced this putative class action lawsuit, alleging claims under the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"). After BLP moved to dismiss the Amended Complaint, Syeed amended the complaint for the second time, deleting swaths of her allegations in a transparent—but unsuccessful—attempt to salvage her deficient claims. In the SAC, Syeed and newly-added Plaintiff Naula Ndugga, a current BLP employee, allege class-wide claims of sex discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII") and the NYSHRL, as well as individual claims of discrimination and harassment under the NYSHRL and NYCHRL, and, for Ndugga only, retaliation under Title VII.

Even though this is now Syeed's *third* attempt to plead her claims, she still fails to state a single cognizable cause of action. As an initial matter, to the extent Syeed purports to assert claims under Title VII, they fail as a matter of law because she did not timely exhaust her administrative remedies and cannot do so. Syeed's claims under the NYSHRL and NYCHRL continue to suffer from the same fatal deficiency identified in BLP's first motion to dismiss: Syeed never worked in New York, and she does not and cannot establish that any alleged discriminatory conduct had an impact on her in New York State or New York City, as those statutes require. (*See* Dkt. 19.) To the extent all of Syeed's claims are not dismissed, her NYSHRL and NYCHRL claims based on alleged discrete acts that occurred prior to August 2017 should be dismissed as time-barred.

Ndugga's claims fare no better. *First*, Ndugga cannot assert claims under Title VII because she also has not yet exhausted her administrative remedies and, further, at least some of her Title VII claims are time-barred. *Second*, Ndugga has failed to state a claim for intentional discrimination because her conclusory allegations do not give rise to any inference of unlawful animus. *Third,* she has not plausibly alleged that she has been subjected to a hostile work environment. *Fourth*, Ndugga's disparate impact claim fails because she does not allege that any specific employment practice has adversely impacted her as a member of a protected class. *Fifth*, Ndugga cannot state a claim for retaliation under Title VII because she does not plausibly allege that she suffered an adverse employment action as a result of protected activity.

Because neither Syeed nor Ndugga can state an individual claim for relief, the claims they purport to bring on behalf of a putative class also should be dismissed as moot. Lastly, if the SAC is not dismissed in full, then the jury demand should be stricken because Plaintiffs have waived their right to demand a jury trial.

## PROCEDURAL HISTORY AND STATEMENT OF ALLEGED FACTS

### A. This Lawsuit

Syeed, a former New Jersey resident and current California resident, commenced this putative class action lawsuit in New York Supreme Court on August 9, 2020. (Dkt. 1-1 ¶ 5; SAC ¶ 7.) She filed an Amended Complaint on August 11, 2020. (Dkt. 1-2.) After filing a Notice of Removal pursuant to the Class Action Fairness Act of 2005 ("CAFA") (Dkt. 1), BLP moved to dismiss the Amended Complaint on October 9, 2020. (Dkt. 19.) More than a month later, on November 13, 2020, Plaintiffs filed the SAC,[1] even though the Federal Rules of Civil Procedure

---

[1] A copy of the SAC is annexed as Exhibit 1 to the accompanying Declaration of Elise M. Bloom, Esq. ("Bloom Decl."). For purposes of this motion only, BLP assumes the truth of any well-pled factual allegations contained in the SAC, but not any conclusory allegations or legal conclusions contained therein. BLP otherwise unequivocally denies and will vigorously contest Plaintiffs' allegations should this case not be dismissed on the instant motion.

prohibited amendment as of right and they had not sought leave of Court or BLP's consent to amend.[2]

While much of the SAC is filled with irrelevant allegations that pre-date Plaintiffs' employment by nearly a decade and were recycled from other lawsuits filed by Plaintiffs' counsel on behalf of different clients, and of which Plaintiffs have no personal knowledge and do not allege to have personally experienced, Plaintiffs purport to assert the following causes of action: (i) class claims of alleged disparate treatment on the basis of sex under Title VII[3] (Count One) and the NYSHRL (Count Three); (ii) class claims of alleged disparate impact under Title VII (Count Two) and the NYSHRL (Count Four); (iii) individual claims of alleged race and sex discrimination and harassment under the NYSHRL (Count Five) and the NYCHRL (Count Six); (iv) for Syeed only, constructive discharge under the NYSHRL and NYCHRL (Count Seven) (*see* 12/21/2020 Tr. at 13:15-14:8); and (v) for Ndugga only, retaliation under Title VII (Count Eight).

---

[2] More specifically, Fed. R. Civ. P. 15(a)(1) only allows a plaintiff to amend the complaint once as a matter of right, which Syeed already did once in state court prior to removal. *See Gibson v. N.Y. State Office of Mental Health*, 2018 WL 3850632, at *7, n.7 (N.D.N.Y. Aug. 13, 2018) ("Plaintiff lacks the right to amend her operative pleading 'as a matter of right' pursuant to Fed. R. Civ. P. 15(a)(1) because…her operative pleading was already amended in state court.") (collecting cases). Additionally, while the Court's Individual Rules in Civil Cases permit a plaintiff to amend the complaint within 21 days after a motion to dismiss is filed, the SAC here was filed 35 days after BLP moved to dismiss. The SAC therefore should be disregarded because it is procedurally improper, but even if it is considered, it fails to state a cognizable claim for all of the reasons set forth herein. *See Sivokonev v. Cuomo*, 447 F.Supp.3d 58, 62-63 (W.D.N.Y. 2020) (treating the Second Amended Complaint as a nullity where plaintiff could not amend as of right and failed to seek leave of court or opposing counsel, but also finding amendment would be futile because plaintiff failed to state a claim).

[3] Although the SAC reflects that both Plaintiffs purport to assert causes of action for disparate treatment and disparate impact under Title VII (Counts One and Two), Plaintiffs' counsel has represented to the Court that Syeed is not pursuing any Title VII claims. (Dkt. 38 & 12/21/2020 Tr. at 12:16-25.)

### B. Allegations Relating To Syeed's Employment In Dubai and Washington, D.C.

Syeed alleges that she began applying for jobs with BLP beginning in 2012, but was not hired until 2014. (SAC ¶ 56.) In October 2014, Syeed began working for BLP as a Reporter in the Dubai News Bureau, where she produced news stories and features "from within the United Arab Emirates." (*Id.* ¶¶ 56, 57.) Syeed claims that, during her employment in the Dubai Bureau, she was subjected to a hostile work environment by colleagues who also worked in Dubai. (*Id.* ¶¶ 58, 60.)

In 2016, Syeed sought an internal transfer from Dubai to either the Washington, D.C. Bureau or the New York Bureau for personal reasons due to her husband's job location. (*Id.* ¶ 61.) In March 2016, BLP offered Syeed the opportunity to transfer to the D.C. Bureau and she began working in Washington, D.C. on March 20, 2016. (*Id.* ¶ 66.) Syeed alleges that, during her employment in Washington, D.C., she was subjected to a hostile work environment based on the alleged conduct of her colleagues in the D.C. Bureau, and that she was compensated less than unidentified "male reporters." (*Id.* ¶¶ 70-72, 75-84.) Syeed also claims that her supervisors in the D.C. Bureau failed to promote her to Foreign Policy reporting positions between 2016 and 2018. (*Id.* ¶¶ 64, 79, 82, 83.)

On June 6, 2018, Syeed alleges that she complained to the Head of Human Resources in Washington, D.C. about the culture of the D.C. Bureau, specifically referring to conversations she purportedly had with her Washington, D.C. managers. (*Id.* ¶ 87.) Two days later, on June 8, 2018, Syeed resigned from her employment in the D.C. Bureau, which she now characterizes as a constructive discharge. (*Id.* ¶ 88.)

### C. Allegations Relating To Ndugga

Ndugga alleges that she began working for BLP in September 2017 as an intern and, in January 2018, was hired as a full-time Producer. (*Id.* ¶ 93.) Ndugga claims that her starting salary

in 2018 was less than unidentified "male producers" who were "hired out of the same internship program" at some unspecified point in time. (*Id.* ¶ 94.) She further alleges that, at other unspecified times thereafter, she was compensated less than "male team members" despite receiving "positive performance evaluations." (*Id.* ¶¶ 95, 98-99, 103.) She includes no details about these supposed comparators' respective salaries, backgrounds, job duties, responsibilities, supervisors, or performance ratings.

Ndugga alleges she was denied opportunities and benefits because of her sex and/or race, including a promotion to a position she had expressed "interest" in to her female supervisor and that ultimately was "not created," as well as the opportunity to conduct a live interview. (*Id.* ¶¶ 100, 102, 104, 109.) She further claims that she was subjected to workplace hostility because two colleagues opined on "Black culture and issues" and inappropriate language was used in a news script. (*Id.* ¶¶ 105, 110.) She also alleges that after she asked a male colleague why a particular image was included in a news video, he "got really angry and yelled at" her. (*Id.* ¶ 106.) Ndugga alleges that, after she reported this interaction to her supervisor, the male colleague "conveyed a fabrication" about the disagreement to management and that he subsequently "isolated her" and "left her off team emails." (*Id.* ¶¶ 106-08.)

Ndugga allegedly complained about "disparities in treatment to Human Resources" at some unspecified time during her employment. (*Id.* ¶ 101.) She further claims that, on July 14, 2020, she raised concerns about alleged "discriminatory acts" during a conference call with the Editorial Management Committee, but alleges that her complaints were not addressed. (*Id.* ¶ 110.)

## ARGUMENT

## I.  LEGAL STANDARD APPLICABLE TO A MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," and there must be "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A claim is not facially plausible unless "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To avoid dismissal, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557.

## II.  ALL OF SYEED'S CLAIMS SHOULD BE DISMISSED

### A.  Syeed Cannot State a Claim Under the NYSHRL or NYCHRL Because She Did Not Live or Work In New York.

Even accepting all of the allegations in the SAC as true, Syeed's claims under the NYSHRL (Counts Three, Four and Five) and NYCHRL (Count Six) fail as a matter of law because she does not—and cannot—allege that she felt the impact of any alleged discriminatory acts in New York State or New York City. Accordingly, Syeed's claims under the NYSHRL and NYCHRL should be dismissed with prejudice.

A plaintiff, like Syeed, who resides outside of New York cannot assert a claim under the NYSHRL or the NYCHRL unless the plaintiff "felt the impact of [alleged] discrimination within New York City or State." *Ghorpade v. Metlife, Inc.*, 2014 WL 7008954, at *3 (S.D.N.Y. Dec. 12, 2014); *see also Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 290-92 (2010) (affirming order granting a motion to dismiss and holding that a plaintiff must satisfy the "impact requirement" in order to be afforded the protection of the NYSHRL and NYCHRL); *Vangas v. Montefiore Med.*

*Ctr.*, 823 F.3d 174, 183 (2d Cir. 2016) (holding that to state a claim under the NYCHRL, the "impact of the employment action must be felt *by the plaintiff*" in New York City) (emphasis in original).

The impact analysis is *not* intended to be a "fact-intensive analysis of the amount of contact a particular individual maintained with New York." *Fried v. LVI Servs., Inc.*, 2011 WL 4633985, at *13 (S.D.N.Y. Oct. 4, 2011), *aff'd*, 500 F. App'x 39 (2d Cir. 2012). As the New York Court of Appeals explained in *Hoffman*, the impact analysis "confines the protections of the NYCHRL to those who are meant to be protected – *those who work in the city*" and the NYSHRL "achieves the same ends as is the case with its City counterpart, because it permits *those who work in the state* to invoke its protections." 15 N.Y.3d at 291 (emphasis added). It is not intended to permit those with "tangential connection[s] to the city and state" to be able to bring a claim under the NYCHRL or NYSHRL. *Id.* at 292. Accordingly, the impact analysis is intended to be "simple for courts to apply and litigants to follow" and to "lead[] to predictable results." *Id.* at 291.

Syeed's allegations plainly do not establish that she felt the impact of any alleged discrimination within the territorial boundaries of New York State or New York City, as is required to state a claim under the NYSHRL and NYCHRL. Syeed, who is a resident of California, *never* worked for BLP in New York. (SAC ¶¶ 7, 56-90.) Instead, as the SAC makes clear, Syeed only ever worked in Dubai and Washington, D.C., and her claims in this lawsuit are undisputedly based on conduct that she allegedly experienced while she was working in Dubai and Washington, D.C. The SAC is devoid of any allegations that Syeed ever experienced any alleged unlawful conduct while in New York. This deficiency is fatal to her claims.

Under similar circumstances, numerous New York federal courts have dismissed NYSHRL and NYCHRL claims brought by a non-resident plaintiff who worked outside of New York at the time of the alleged unlawful conduct. *See, e.g., Pedroza v. Ralph Lauren Corp.*, 2020 WL 4273988, at *2, 4-6 (S.D.N.Y. July 24, 2020) (dismissing NYSHRL and NYCHRL claims because plaintiff who worked in New Jersey could not establish impact in New York); *Maines v. Last Chance Funding, Inc.*, 2018 WL 4558408, at *8 (E.D.N.Y. Sept. 21, 2018) (dismissing NYSHRL claim brought by a plaintiff who worked with people in New York, but did not personally work in New York); *Kearse v. ATC Healthcare Servs.*, 2013 WL 1496951, at *1-2 (S.D.N.Y. Apr. 8, 2013) (dismissing NYCHRL claim where plaintiff did not work in New York City); *Robles v. Cox & Co.*, 841 F.Supp.2d 615, 625 (E.D.N.Y. 2012) (granting motion to dismiss NYCHRL claim and stating that "the relevant location of the injury for purposes of the impact analysis is…the [p]laintiff's place of employment"). The same outcome is compelled in this case: Syeed's claims under the NYSHRL and NYCHRL for alleged harassment or discrimination that purportedly occurred while she was employed in Dubai or Washington, D.C. should be dismissed.[4]

Syeed's allegations regarding her minimal contacts with New York do nothing to change this conclusion. For instance, she alleges that BLP is headquartered in New York and the Editorial Management Committee supervised her (and more than 2,700 other Bloomberg Media employees worldwide) from New York. (SAC ¶¶ 9, 12, 14.) She also alleges that, while

---

[4] In response to BLP's first motion to dismiss, the SAC deleted and significantly revised dozens of paragraphs in the Amended Complaint concerning Syeed's employment in Dubai and Washington, D.C., in a transparent attempt to try to conceal the fact that her claims are based exclusively on alleged conduct that occurred outside of New York. (*Compare* Am. Compl. ¶¶ 67-159 *with* SAC ¶¶ 54-91.) These prior inconsistent allegations may be considered in connection with this motion to dismiss. *See, e.g., Kernan v. N.Y. State Dep't of Fin. Servs.*, 2015 WL 13741858, at *2, n.6 (E.D.N.Y. July 15, 2015) ("Factual allegations in an earlier pleading may be accepted as admissions").

employed in Dubai and Washington, D.C., she attended a few meetings in New York and purportedly sought to transfer to New York. (*Id.* ¶¶ 62-63, 65, 79, 81-82.) The law is clear that a plaintiff is not entitled to bring a claim under the NYSHRL or NYCHRL when the plaintiff did not work in New York, even in circumstances where the defendant was headquartered in New York, the alleged discriminatory decisions were made in New York, and/or the plaintiff periodically traveled to New York. The test is not where the discriminatory decision allegedly was made, but where its impact allegedly was felt by the plaintiff. Indeed, in *Hoffman*, the New York Court of Appeals ruled that the plaintiff (who lived and worked in Georgia) could not assert a claim under the NYSHRL or NYCHRL even though Hoffman had attended quarterly meetings at the defendant's headquarters in New York, the defendant managed Hoffman from New York, and the defendant made the decision to terminate Hoffman's employment in New York. [5] 15 N.Y.3d at 288. *See also, e.g., Fried*, 500 F. App'x at 42 (affirming dismissal of NYCHRL claim because plaintiff "did not 'work in the city'"); *Pedroza*, 2020 WL 4273988, at *2, 5 (dismissing NYSHRL and NYCHRL claims brought by New Jersey-based employee because "[c]ourts look to where the impact occurs, not the place of its origination…and the impact needs to be felt by the plaintiff in New York City" or State).

Here, Syeed does not even plausibly allege any specific decision related to her employment that she claims was made in New York, much less that the effects of that decision were felt by her within New York. *See Hardwick v. Auriemma*, 116 A.D.3d 465, 467 (1st Dep't 2014) ("[e]ven if the decision to modify [plaintiff's] assignment was made within the City's boundaries, the discriminatory acts alleged did not occur within the City or State of New York,

---

[5] In *Hoffman*, the New York Court of Appeals resolved a split among state and federal courts and held that a plaintiff could not bring a claim under the NYCHRL by merely alleging and proving that the alleged discriminatory decision was made in New York City. 15 N.Y.3d at 290.

but in London where she claims she was relegated to inferior tasks not commensurate with her usual assignments"). Likewise, Syeed's allegations that she was denied opportunities to transfer to the New York Bureau, which she claims would have been a promotion, also do not change the conclusion that she is not entitled to bring claims under the NYSHRL and NYCHRL. Under the impact analysis, it is irrelevant that Syeed – who was employed in the Company's Washington, D.C. Bureau at the time – was not promoted to a position in New York because she still cannot establish that the impact of that decision was "felt *by the [P]laintiff*" within the geographic boundaries of New York City or State. *Vangas*, 823 F.3d at 183 (emphasis in original). *See also Wang v. Gov't Emps. Ins. Co.,* 2016 WL 11469653, at *7 (E.D.N.Y. Mar. 31, 2016) (dismissing plaintiff's failure-to-promote claim under the NYCHRL notwithstanding allegations that the promotion would have required plaintiff to work in New York City).

In sum, Syeed did not live or work in New York, and her claims in this lawsuit purportedly arise solely out of her employment in Dubai and Washington, D.C. Since Syeed cannot establish that she felt the impact of any alleged discriminatory act on her in New York State or City, her claims under the NYSHRL and NYCHRL fail as a matter of law. Her claims in Counts Three, Four, Five, and Six of the SAC accordingly should be dismissed with prejudice.

## B. Syeed's Constructive Discharge Claim Fails For the Same Reasons As Her NYSHRL and NYCHRL Claims.

Syeed purports to bring a claim for constructive discharge as Count Seven of the SAC. While the SAC fails to identify the statute(s) upon which this claim is purportedly based,[6] during the December 21, 2020 pre-motion conference, Plaintiffs' counsel stated that Syeed's constructive discharge claim is alleged under New York law only. (12/21/2020 Tr. at 13:15-

---

[6] Count Seven must have a statutory basis because "New York does not recognize a common law cause of action for constructive discharge" for at-will employees such as Syeed. *Silberman v. Atl. Dialysis Mgmt. Servs., LLC*, 2018 WL 4335510, at *5 (S.D.N.Y. Sept. 11, 2018).

14:8.) Because Syeed cannot state a claim under either the NYSHRL or NYCHRL for the reasons set forth in Section II.A, *supra*, Count Seven should be dismissed.

### C. Syeed's NYSHRL and NYCHRL Claims Relating To Alleged Discrete Acts Before August 2017 Are Time-Barred.

In addition to failing for all of the reasons set forth above, Syeed's NYSHRL and NYCHRL claims based on alleged discriminatory acts that purportedly occurred before August 9, 2017 also suffer from the independent fault that they are barred by the three-year statute of limitations applicable to claims under the NYSHRL and NYCHRL. *Taylor v. City of N.Y.,* 207 F.Supp.3d 293, 302 (S.D.N.Y. 2016) ("The NYSHRL and NYCHRL statutes of limitations are three years"). Syeed commenced this action on August 9, 2020. Any alleged discriminatory acts that purportedly occurred prior to August 9, 2017 are therefore untimely.[7]

Syeed alleges that she began applying for jobs with BLP in 2012, but was not hired until October 2014. (SAC ¶ 56.) To the extent Syeed purports to assert failure-to-hire claims based on the denial of her applications for employment prior to October 2014, such claims are clearly time-barred. With respect to Syeed's claims purportedly arising after hire, she alleges she inquired about lateral transfers that were not offered to her between 2014 and 2016 while she was working in Dubai and Washington D.C., and that, while she was working in Dubai from 2014 to 2016, her Dubai supervisor was harsh with her and a Dubai colleague made inappropriate comments to her. (*Id.* ¶¶ 25, 58-60, 64-66.) Even if accepted as true, these allegations pertain to discrete acts that occurred outside of the applicable three-year statute of limitations and therefore fail to state a claim.

---

[7] Notably, Syeed appears to have conceded that any claims prior to August 9, 2017 are time barred. In her pre-motion submission to the Court, she represented that she "does not make claims for actions prior to August 2017" and that her allegations about events prior to August 2017 are only included as "background information." (Dkt. 38.)

**D.  Syeed Has Represented That She Does Not Assert Title VII Claims, Nor Could She Because She Never Timely Exhausted Her Administrative Remedies.**

Although Counts One and Two of SAC indicate that "Plaintiffs" purport to allege Title VII claims on behalf of themselves and a putative class, Plaintiffs' counsel has twice represented to the Court that Syeed "does not pursue Title VII claims." (Dkt. 38; *see also* 12/21/2020 Tr. at 12:16-25 ("Ms. Syeed was never pursuing Title VII claims").) Counts One and Two therefore should be dismissed with respect to Syeed based on her counsel's unequivocal representations that she does not intend to pursue such claims.

Indeed, Syeed must concede that any Title VII claims fail as a matter of law because she never filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), and her time to do so has expired. In New York, a Title VII plaintiff must file a charge with the pertinent state agency or the EEOC within 300 days from the date of the alleged wrongful act. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d)(2); *see, e.g.*, *Flaherty v. Metromail Corp.*, 235 F.3d 133, 136, n.1 (2d Cir. 2000). This exhaustion procedure is a precondition to bringing suit under Title VII, and "[f]ailure to file a charge with the EEOC within 300 days of that date bars a plaintiff from bringing an action with respect to that claim." *Espinoza v. N.Y.C. Dep't of Transp.*, 304 F.Supp.3d 374, 385 (S.D.N.Y. 2018); *see also Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003). Syeed resigned from BLP on June 8, 2018 (SAC ¶ 88) and therefore would have had to file a timely agency charge by no later than April 4, 2019. Because Syeed did not file a charge on or before April 4, 2019—and, indeed, does not allege that she ever filed a charge—she cannot bring claims under Title VII. *See, e.g., Zerilli-Edelglass*, 333 F.3d at 80 (affirming dismissal of Title VII claims where plaintiff failed to file a timely charge of discrimination). Syeed's claims in Counts One and Two accordingly must be dismissed for failure to exhaust administrative remedies and as time-barred.

12

## III. NDUGGA'S CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY

### A. Ndugga's Title VII Claims Should Be Dismissed For Failure To Exhaust Her Administrative Remedies and To the Extent They Are Time-Barred.

#### 1. *Ndugga Cannot Bring Title VII Claims In Court Because She Has Not Yet Obtained a Right To Sue Letter.*

Under Title VII, a plaintiff may not file suit in court unless she first timely files a charge with the EEOC and has received a notice of right to sue from the EEOC. *See, e.g., Johnson v. Xylem Inc*., 2020 WL 1963125, at *2 (W.D.N.Y. Apr. 16, 2020) ("[a]dministrative exhaustion is an essential element of Title VII's…statutory scheme"). Ndugga filed a charge of discrimination "just hours before" the SAC was filed (*see* 12/21/2020 Tr. at 14:19-22) but, as she candidly admits, the EEOC has not yet issued her a notice of right to sue. (SAC ¶ 6.) She therefore has not satisfied the mandatory exhaustion procedures prior to asserting Title VII claims in court. *See, e.g., Johnson*, 2020 WL 1963125, at *2 (dismissing Title VII claims where plaintiff had not yet received a right to sue notice); *Adams v. N.Y. State Educ. Dep't,* 752 F.Supp.2d 420, 437, 470 (S.D.N.Y. 2010) (same). Counts One and Two of the SAC accordingly should be dismissed.[8]

#### 2. *Ndugga's Title VII Claims Based On Disparate Pay Further Should Be Dismissed With Prejudice To the Extent They Are Untimely.*

Ndugga's Title VII claims also should be dismissed with prejudice to the extent that they are based on a discrete act of alleged discrimination that occurred more than 300 days before she filed her EEOC charge. *See, e.g., McGuirk v. Swiss Re Fin. Servs., Corp.*, 2016 WL 10683305, at *9 (S.D.N.Y. June 17, 2016) ("[d]iscrete acts of discrimination" include "failure to promote,

---

[8] Ndugga's EEOC Charge also is insufficient to exhaust the administrative remedies on behalf of putative class members because the factual allegations in her Charge are highly individualized. Ndugga's allegations in the Charge that female BLP employees worldwide also have experienced harm are far too conclusory and threadbare to demonstrate that the class claims "reasonably relate" to her individual claims. *See, e.g., Chapple v. Fahnestock & Co. Inc.*, 2005 WL 8157058, at *3 (E.D.N.Y. Sept. 16, 2005) (denying plaintiff's motion to amend the complaint to add class claims because "plaintiff's charge is individualized" and "does not allege that anyone else was discriminated against similarly at the same time or that plaintiff was even aware of similar conduct occurring against former or present employees around the same time").

denial of transfer or refusal to hire, as well as disparate pay, denials of accommodation and performance evaluations") (internal quotations and citation omitted).

Ndugga alleges sex discrimination claims premised on purported disparities in her starting salary—which was determined at the time of her hire in January 2018—and the alleged denials of subsequent raises and bonuses in 2018 and 2019. (SAC ¶¶ 93-94, 97-99, 122.) Ndugga filed an EEOC charge on November 13, 2020 (Bloom Decl. Ex. 2); therefore, any claims based on an alleged pay disparity before January 18, 2020 are time-barred. *McGuirk*, 2016 WL 10683305, at *14 (granting motion to dismiss Title VII pay claim as untimely because "Plaintiff's charge had to be filed no later than 300 days after she did not get the raise," noting her charge was filed "more than a year too late"); *Butterfield-Bajinan v. City of N.Y.*, 2017 WL 4045175, at *4 (S.D.N.Y. Sept. 11, 2017) (dismissing untimely Title VII pay disparity claims). Counts One and Two of the SAC therefore should be dismissed with prejudice to the extent they are based on an alleged pay disparity created in January 2018 or that otherwise existed prior to January 18, 2020.

## B. Ndugga Has Failed To State a Claim For Disparate Treatment.

Ndugga alleges claims for sex discrimination in compensation, promotions, and evaluations on behalf of herself and a putative class under Title VII (Count One) and the NYSHRL (Count Three). She also alleges (on behalf of herself only) race and sex discrimination under the NYSHRL and NYCHRL (Counts Five and Six).

To state a claim for disparate treatment on the basis of sex or race under Title VII and the NYSHRL as it existed until October 11, 2019,[9] "a plaintiff must plausibly allege that (1) the

---

[9] Effective October 11, 2019, the NYSHRL was amended to bring the standard for discrimination claims closer to the NYCHRL standard. *Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *19, n.13 (S.D.N.Y. Oct. 24, 2020) (Woods, J.). These amendments are not retroactive and therefore only apply to claims that *accrued* on or after the effective date of October 11, 2019. *Id.*

employer took adverse action against [plaintiff]" and (2) her race or sex "was a motivating factor in the employment decision." *Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *17-18 (S.D.N.Y. Oct. 24, 2020) (Woods, J.) (citation omitted). Under the NYCHRL, a plaintiff must plausibly allege that "she has been treated less well than other employees *because of* her protected status[.]" *Simon v. City of N.Y.*, 2019 WL 916767, at *4 (S.D.N.Y. Feb. 14, 2019) (citation omitted) (emphasis in original). Although the NYCHRL is more lenient than its federal counterpart, even under the City law it is well established that the plaintiff "bears the burden of showing that the conduct is caused by a discriminatory motive." *Bliss v MXK Rest. Corp.*, 220 F.Supp.3d 419, 424 (S.D.N.Y. 2016) (dismissing claims under Title VII, the NYSHRL and NYCHRL because plaintiff failed to allege a causal connection between the conduct she experienced and her gender). Under these standards, Ndugga fails to state a plausible claim of intentional discrimination under Title VII, the NYSHRL and the NYCHRL**.**

     **1.**   ***Ndugga Fails To Plausibly Allege That She Was Compensated Less Than Any Similarly Situated Comparator.***

Ndugga's disparate pay claims should be dismissed because the SAC fails to allege that she "was similarly situated in all material respects to the individuals with whom she seeks to compare herself" for purposes of compensation, as is necessary to give rise to a plausible inference of discrimination. *Humphries v. City Univ. of N.Y.*, 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013). *See also Cardwell*, 2020 WL 6274826, at *21 (Woods, J.) ("a plaintiff alleging that her 'employer treated her less favorably than a similarly situated employee outside her protected group' must allege that 'she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'") (citation omitted).

Ndugga alleges that her starting salary in 2018 was less than that of "male producers who were hired out of the same internship program," but she does not identify any specific "male

producer" who allegedly was paid more than she at the time of hire. (SAC ¶ 94.) The SAC also does not plead any facts about the referenced "male producers," such as their qualifications, prior experience, job duties or responsibilities, or even when they were hired, from which it would be plausible to conclude that they were similarly situated in all material respects to Ndugga at the time of hire. Courts routinely dismiss claims where, like here, the complaint does not contain any factual detail about the individuals who allegedly are similarly situated to the plaintiff. *See, e.g., Eng v. City of N.Y.*, 715 F. App'x 49, 52-53 (2d Cir. 2017) (affirming dismissal of claims under the NYSHRL and NYCHRL); *Kalia v. City Univ. of N.Y.*, 2020 WL 6875173, at *5 (S.D.N.Y. Nov. 23, 2020) ("well-pled facts showing that the plaintiff has been treated differently from others similarly situated remains an essential component of [a disparate treatment] claim and conclusory allegations of selective treatment are insufficient.").

For instance, in *Eng,* the Second Circuit affirmed the dismissal of disparate pay claims under the NYSHRL and NYCHRL where the complaint alleged that plaintiff was paid less than two male colleagues, holding that "[m]erely listing the alleged pay difference with two men…does not plausibly demonstrate that plaintiff has been treated less well than other employees because of her gender" or other protected characteristic because the court "cannot infer discrimination from thin air." *Eng,* 715 F. App'x at 52-53 (citation omitted). Similarly, in *Humphries,* the court granted a motion to dismiss claims under Title VII, the NYSHRL and the NYCHRL where the plaintiff alleged that she was paid a starting salary of $64,956, but a colleague of a different race who purportedly "performed similar job functions" and "had less academic experience and fewer academic credentials" was paid a salary of $79,242. 2013 WL 6196561, at *1. The court held that plaintiff's allegations failed to state a claim for intentional discrimination with respect to compensation because "conclusory statements about a co-workers'

qualifications are insufficient to raise an inference of discrimination" and the complaint did not allege facts to plausibly show that plaintiff and the alleged comparator were similarly situated with respect to, *inter alia*, their relevant experience, length of employment, job responsibilities or performance evaluations. *Id.* at *6-7, 11-12. Like the plaintiffs in *Eng* and *Humphries*, Ndugga has not pled any tangible facts about the alleged comparators that could give rise to a plausible inference of discrimination with respect to her starting salary. Such claims therefore must be dismissed.

Ndugga's conclusory allegations that, after her hire, she was denied raises and bonuses because of sex or race similarly fail to state a claim. Although Ndugga identifies by name certain "male team members" who allegedly received "increased compensation" for "performing similar job duties" at some unspecified points in time (SAC ¶ 95), she again does not plead any concrete facts to plausibly establish that any of these "male team members" were similarly situated to her in all material ways, with respect to, *inter alia*, their "relevant experience[,] length of employment," job titles, supervisors, "job responsibilities or [ ] annual reviews." *Humphries*, 2013 WL 6196561, at *7.

While Ndugga does not plead any information whatsoever about the vast majority of the individuals named in Paragraph 95 of the SAC, as to the few male colleagues who are identified beyond a passing mention of their name, Ndugga's allegations establish that such individuals are in fact *not* similarly situated to her. In particular, she identifies David Meyers, Andrew Barden, and Alexander Gittleson as alleged comparators for purposes of compensation, but she candidly acknowledges elsewhere in the SAC that Messrs. Meyers and Barden are "Executive Producers" and Mr. Gittleson is a "Senior Producer." (*Compare* SAC ¶ 95 *with* SAC ¶¶ 102, 104; *see also* Bloom Decl. Ex. 2 at 4-5.) As Ndugga openly admits, Senior Producer and Executive Producer

are next-level and skip-level positions above her job as a Producer (*id.* ¶¶ 30, 93), so there is no basis to conclude that Ndugga is similar situated to Messrs. Meyers, Barden, and Gittleson in all material ways. Ndugga's claim that Brian Wall received a raise in February 2020 when she did not (*id.* ¶ 103) fails for the same reason: it is undisputed that at the time of this purported compensation differential, Mr. Wall had been promoted to Senior Producer and therefore was not similarly situated to Ndugga (a Producer) in all material ways. (*Id.*); *see Daniels v. City of N.Y.*, 2019 WL 251511, at *4 (S.D.N.Y. Jan. 17, 2019) (granting motion to dismiss disparate pay claims under the NYSHRL and NYCHRL where plaintiff failed to plead facts concerning three alleged comparators' "positions, responsibilities, qualifications or quality of their work," and the complaint established that the fourth comparator was a Chief of Department, whereas plaintiff was a Warden).

Aside from conclusory allegations of discrimination, which must be disregarded, the SAC does not plead any facts from which the existence of a sex-based animus can be inferred, much less facts to plausibly support a finding that such animus caused any alleged disparity in compensation. *Humphries*, 2013 WL 6196561, at *7, 12 (dismissing disparate pay claims under, *inter alia*, the NYCHRL because the "bald allegation that one of [plaintiff's] white colleagues— of unknown years of service, training, or experience—made 20% more than [plaintiff's] starting salary is not enough, standing alone, to raise an inference of discrimination"). Numerous courts have granted motions to dismiss where—like here—the complaint presented only conclusory allegations that the alleged differential treatment occurred because of a discriminatory motive. *See, e.g., id.; Soloviev v. Goldstein*, 104 F.Supp.3d 232, 249 (E.D.N.Y. 2015) (dismissing Title VII, NYSHRL and NYCHRL claims because the "complaint is devoid of allegations regarding [] similarly situated employees' supervisors, job specifics, job performance, or conduct"); *Beverley*

*v. N.Y.C. Health & Hosps. Corp.*, 2020 WL 1503421, at \*4-6 (S.D.N.Y. Mar. 30, 2020) (dismissing pay discrimination claims under the NYCHRL). Ndugga's disparate pay claims (Counts One, Three, Five and Six) accordingly should be dismissed.

### 2. *Ndugga Has Not Plausibly Pled a Claim Of Failure-To-Promote.*

Ndugga's failure-to-promote claims (Counts One, Three, Five and Six) are premised on vague allegations that she was passed over for unspecified promotional opportunities in favor of unidentified male peers (which are entirely conclusory and not entitled to be accepted as true[10]) and that, on one occasion in March 2020, Ndugga expressed "interest" to her supervisor about a new position "focusing on race and identity" that she wanted BLP to create, which she characterizes as a promotion, but that this position ultimately was not created. (SAC ¶¶ 100, 104.) These sparse allegations are plainly insufficient to state a claim.

As an initial matter, a failure-to-promote claim generally requires a plaintiff to allege that: (i) she applied for a specific open promotion for which she was qualified, and (ii) after she was rejected, the position remained open and the employer continued to solicit applicants with plaintiff's qualifications. *See, e.g., Taylor*, 207 F.Supp.3d at 303. Courts routinely grant motions to dismiss where, like here, a complaint does not allege any facts to plausibly establish the denial of a promotion under circumstances giving rise to an inference of intentional discrimination. For instance, in *Taylor*, the court granted a motion to dismiss failure-to-promote claims alleged under Title VII, the NYSHRL and NYCHRL where plaintiff alleged she "made numerous inquiries" about a promotion to higher level positions, but did not allege that she ever applied for a particular open position. *Id.* at 306. The court explained that merely inquiring about promotion opportunities is "not enough to excuse [plaintiff] from the specific-application requirement,"

further stating that even under the NYCHRL, "if plaintiff 'was qualified for the position, yet [she] never applied, [she] was never rejected under circumstances that would give rise to an inference of [sex] discrimination.'" *Id.* (citation omitted).

Here, Ndugga does not allege that she ever actually applied for any specific promotion that she was denied. Rather, she merely claims she expressed "interest" in a role that she admits *was never created* – and therefore was never actually open – and the SAC is devoid of any allegations that BLP ever solicited applications from *anyone* for this position. As numerous other courts have recognized, these deficiencies are fatal to her failure-to-promote claim. *See, e.g., id.*; *Tulino v. City of N.Y.*, 2016 WL 2967847, at *6 (S.D.N.Y. May 19, 2016) (dismissing NYSHRL and NYCHRL claims because plaintiff had not applied for a "known vacant position"); *Brown v. Montefiore Med. Ctr.*, 2019 WL 4454230, at *6 (S.D.N.Y. May 8, 2019), *adopted by*, 2019 WL 3282927 (S.D.N.Y. July 22, 2019) (granting motion to dismiss failure-to-promote claims under the NYSHRL and NYCHRL where plaintiff failed to allege, *inter alia*, that the promotion remained open after plaintiff sought to apply and "whether the position was filled and, if so, by whom."); *Bernstein v. MONY Grp., Inc.*, 228 F.Supp.2d 415, 419 (S.D.N.Y. 2002) (granting motion to dismiss where plaintiff failed to allege the promotion she sought "was ever created or that she was rejected from such position").

Ndugga's failure-to-promote claims should be dismissed for the independent reason that she does not (and cannot) plausibly allege that she was denied any promotion because of alleged sex- or race-based discriminatory animus. *See Cardwell*, 2020 WL 6274826, at *22 (Woods, J.) (a complaint "must allege specific facts supporting both the existence of the racial animus and

---

[10] *See, e.g., Cardwell*, 2020 WL 6274826, at *23 (Woods, J.) (holding that plaintiffs' bald allegations that he was subjected to differential treatment because of race and that "similarly situated non-Black associates" were treated better were conclusory and did not support an inference of discrimination).

the inference of a link between the adverse treatment and the racial animus"). Ndugga states in conclusory terms that the Editorial Management Committee is responsible for promotion decisions (SAC ¶ 28), but she does not plead any concrete facts to support a plausible inference that the Committee was involved in the alleged decision not to promote her to the one position she expressed interest in, or that their decision was linked in any way to her sex or race.[11] (*Id.* ¶ 104.) Even under the more lenient NYCHRL standard, there is no basis to conclude that Ndugga was treated "less well" than male or non-Black employees when, by her own admission, the one position she expressed "interest" in was never created and thus was never filled by *anyone*.[12] *See Taylor*, 207 F.Supp.3d at 306 (dismissing NYCHRL claim); *Kasraie v. Jumeirah Hosp. & Leisure (USA), Inc.*, 2013 WL 5597121, at *5 (S.D.N.Y. Oct. 10, 2013) (dismissing Title VII, NYSHRL and NYCHRL failure-to-promote claims where plaintiff alleged that white employees were promoted over her, but did not plead "specific facts indicating any discriminatory animus" by the decisionmakers). Ndugga's failure-to-promote claims based on sex (Counts One, Three, Five and Six) and race (Counts Five and Six) should therefore be dismissed.

### 3. *Ndugga Does Not Plausibly Allege Discrimination With Respect To Evaluations.*

Counts One and Three of the SAC also vaguely allege discrimination on the basis of sex with respect to evaluations, but Ndugga does not claim that she ever personally received a

---

[11] Ndugga's allegation that two colleagues (whom she does not claim are on the Editorial Management Committee) made negative remarks to her about the need for the new position does nothing to salvage her deficient claim because stray remarks by non-decisionmakers do not give rise to an inference of discrimination. *See, e.g., Soto v. Marist Coll.*, 2019 WL 2371713, at *5 (S.D.N.Y. June 5, 2019) ("[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark.") (collecting cases).

[12] To the extent the SAC could be construed to allege that Brian Wall was promoted to Senior Producer when she was not in February 2020 (SAC ¶ 103), this allegation provides no support for her failure-to-promote claim. Ndugga does not allege that she ever applied for the senior producer position that Mr. Wall ultimately received, nor does she plead any non-conclusory allegations to plausibly establish an inference of discrimination with respect to this decision. *See, e.g., Kasraie,* 2013 WL 5597121, at *4.

negative evaluation. In fact, to the contrary, Ndugga expressly alleges that she received "positive performance evaluations" (SAC ¶¶ 98-99), which is not an adverse employment action and directly contradicts her conclusory claims of discrimination. Counts One and Three alleging discrimination in evaluations therefore should be dismissed. *See, e.g., Soloviev*, 104 F.Supp.3d at 249 ("naked assertions of discrimination…are too conclusory to withstand a motion to dismiss").

### C. Ndugga Has Not Pled a Claim For Hostile Work Environment Based On Sex or Race.

In Counts Five and Six of the SAC, Ndugga alleges (on behalf of herself only) that she has been subjected to a hostile work environment in violation of the NYSHRL and NYCHRL. To state a hostile work environment claim under the NYSHRL as it existed until October 11, 2019,[13] "a plaintiff must allege that her 'workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Cardwell*, 2020 WL 6274826, at *27 (Woods, J.). Under the NYCHRL, a plaintiff must plausibly plead facts demonstrating that "she has been treated less well than other employees because of her protected status." *Simon,* 2019 WL 916767, at *10; *see also Dechberry v. N.Y.C. Fire Dep't*, 124 F.Supp.3d 131, 160 (E.D.N.Y. 2015) (because the "NYCHRL is not a general civility code," "petty slights or trivial inconveniences" are not actionable). Under both statutes, the plaintiff also must establish that the underlying conduct "is caused by a discriminatory motive." *Bliss,* 220 F.Supp.3d at 424 (dismissing claims under the NYSHRL and NYCHRL).

With respect to her claim of hostile work environment on the basis of sex, Ndugga fails to plausibly allege that she was subjected to a pattern of "severe or pervasive" abusive conduct,

---

[13] *See* n.9, *supra*. Ndugga's harassment allegations are vague and, in many instances, do not specify when alleged events purportedly occurred. Regardless of when this claim accrued, the allegations in the SAC are insufficient to state an actionable claim under either the pre- or post-amendment NYSHRL standard.

or even that she was treated less well, *because of* her sex. *See, e.g., Pena v. Bd. of Elections in City of N.Y.,* 2017 WL 722505, at *13 (S.D.N.Y. Feb. 6, 2017) ("a NYCHRL plaintiff must still allege a causal connection between the harassing conduct and her protected status"). Notably, Ndugga does not claim to have experienced any unwanted gender-based conduct, nor does she allege that anyone ever made any comments to, or about, her that implicated her sex. She instead attempts to compare herself to others by summarily stating that—at some unspecified time and under unknown circumstances—some unidentified "male employees" were given opportunities and resources that were purportedly denied to her at some other unspecified time and under unspecified circumstances. (SAC ¶¶ 100, 102, 109.) These vague, threadbare allegations do not (and cannot) come close to establishing that the purported male comparators are similarly situated in all material ways to Ndugga, as is necessary to create any inference of sex-based animus, and therefore cannot plausibly state a claim for a hostile work environment. *See, e.g., Humphries,* 2013 WL 6196561, at *10-12 (plaintiff's allegations that she was, *inter alia*, denied access to software, delayed in being given an office and keys, characterized by her coworkers as "angry and hostile" and that her supervisor leered at her in "a sexually suggestive manner" did not state a claim under the NYSHRL or NYCHRL where plaintiff failed to plead concrete facts establishing that similarly situated males received more favorable treatment). *See also Cardwell*, 2020 WL 6274826, at *24 (Woods, J.) ("The allegation that white associates received more favorable work assignments does not raise even a minimal inference of discriminatory motivation absent plausible allegations that their work performance was similar to Cardwell's"); *Adam-Flores v. City of N.Y.*, 2020 WL 996421, at *5 (S.D.N.Y. Mar. 2, 2020) (granting motion to dismiss where plaintiff alleged that her requests to work remotely were denied, but her peers' requests were granted because a plaintiff's failure to provide "any specificity as to her alleged

comparators' qualifications, responsibilities, employment history, and the particulars of their requests to work remotely, is fatal to her claims") (internal quotations and citation omitted).

With respect to an alleged hostile work environment on the basis of race, Ndugga claims that an inappropriate term allegedly has been used in news scripts and that two of her colleagues "opine[d]" on "Black culture and issues" by saying that "Black people should not criticize Bruno Mars," and asking whether it was appropriate "to refer to February as Black history month." (SAC ¶¶ 105, 110), but she does not plead any factual detail about when these alleged events purportedly occurred, the context in which they purportedly occurred, or even that she personally experienced them. Even if taken as true for purposes of this motion, these vaguely alleged incidents—which allegedly occurred at some unspecified points over a period of more than two years—are "quintessentially episodic" and cannot constitute "severe or pervasive" harassment. *Soto,* 2019 WL 2371713, at *8 (dismissing NYSHRL claim because "five isolated episodes, each of which involves entirely different actors, are insufficient to withstand a motion to dismiss"). Even under the more liberal NYCHRL standard, the alleged conduct does not plausibly demonstrate she was treated less well in some non-trivial respect because of alleged discrimination. *See Lawtone-Bowles v. City of N.Y.*, 2019 WL 652593, at *4 (S.D.N.Y. Feb. 15, 2019) (dismissing hostile work environmental claims under the NYSHRL and NYCHRL where plaintiff alleged a coworker called her a "[B]lack bitch" and a supervisor called her a "nasty woman," among other allegations); *Goodwine v. City of N.Y.*, 2016 WL 3017398, at *8 (S.D.N.Y. May 23, 2016) (dismissing NYSHRL and NYCHRL hostile work environment claims where plaintiff alleged she was referred to as a "cunt" and "bitch" by a manager, was "asked rhetorically if she was 'smoking crack' (a comment that she perceived to be racial)," was referred to as "shit girl," and was physically threatened by a colleague); *Simon*, 2019 WL

916767, at *10 (holding that plaintiff failed to state a NYCHRL claim where a male supervisor invaded her personal space, told her that "she liked him," and asked her when she was leaving work, as such "stray remarks had [no] discriminatory motive at all" and were not hostile).

Ndugga also alleges that a male colleague "yelled" at her on one occasion after she questioned him about an image used in a news production, but such conduct "amounts to nothing more than workplace dynamics—that is, personal enmity or personality conflicts"—that is unrelated to any protected characteristic and is insufficient to create a hostile work environment. *Harrison v. State Univ. of N.Y. Downstate Med. Ctr.*, 2018 WL 4055278, at *2 (E.D.N.Y. July 6, 2018) (denying motion to amend the complaint to add hostile work environment claims under Title VII, the NYSHRL and NYCHRL as futile where plaintiff alleged her supervisor tried to physically intimidate her by "yelling loudly, gesturing erratically with his hands, and moving his body in an agitated, aggressive and threatening demeanor"), *adopted by*, 2018 WL 4054868 (E.D.N.Y. Aug. 24, 2018); *see also Goodwine*, 2016 WL 3017398, at *3, 8-9 (dismissing NYSHRL and NYCHRL hostile work environment claim where plaintiff alleged, *inter alia*, a coworker "screamed, menaced and waved his arms in a threatening manner coming within inches of [Plaintiff's] face" and threatened to "slap a bitch" while staring at plaintiff because complaint did not establish that such conduct was based on plaintiff's race or sex).

Ndugga also alleges that after she complained about this interaction, the male colleague claimed that Ndugga had acted aggressively, which, according to Ndugga, depicted her as an "angry Black woman." (SAC ¶¶ 26, 106-07.) Notably, however, Ndugga does not claim that anyone at BLP ever used this phrase to describe her, nor does she even allege any facts to explain why she believed this was how she was being depicted. Ndugga's subjective perception that she was being portrayed as an "angry Black woman" – as opposed to, for example, simply a

person who was angry in the moment – does not support a plausible inference that she was treated less well on the basis of race or sex. *Humphries*, 2013 WL 6196561, at *9. In *Humphries*, the plaintiff alleged that her supervisor and coworkers "referred to her using 'pejorative words likened to the Angry Black Women Syndrome,'" such as "aggressive," but, like Ndugga, did not allege that anyone ever referred to her as an "angry Black woman." *Id.* The court dismissed the plaintiff's NYSHRL and NYCHRL claims because "feelings and perceptions of being discriminated against are not evidence of discrimination" and plaintiff's "subjective interpretation" of "critical but facially non-discriminatory terms does not, itself, reveal discriminatory animus." *Id.* Like in *Humphries*, Ndugga's subjective (and unfounded) characterization of how she was being depicted does not and cannot give rise to an actionable claim. [14]

Even if Ndugga's allegations are considered collectively, they still do not rise to the level that other courts have found to be sufficient to withstand a motion to dismiss. *See, e.g., Goodwine*, 2016 WL 3017398, at *3, 8-9; *Lawtone-Bowles*, 2019 WL 652593, at *4; *Humphries*, 2013 WL 6196561, at *10-12. Accordingly, Counts Five and Six should be dismissed.

**D. Ndugga Cannot State a Claim For Disparate Impact.**

Counts Two and Four of the SAC (under Title VII and the NYSHRL only) allege that Defendant's employment practices have an adverse impact on Plaintiffs and other female Reporters, Producers and Editors. (SAC ¶¶ 120-25; 136-41.) To state a claim for disparate

---

[14] To the extent Ndugga claims that her female supervisor asked her to "recount her [] trauma, as a Black female to 'help guide the team'" (SAC ¶ 110), this vague allegation cannot give rise to a hostile work environment claim because Ndugga alleges that she (Ndugga) *wanted* this supervisor to create a new position in which Ndugga would be "specifically focusing on race and identity to guide the team." (*Id.* ¶ 104.)

impact, a complaint must "at least set forth enough factual allegations to plausibly support each of the three basic elements" of such claim by "(1) identify[ing] a specific [facially neutral] employment practice or policy; (2) demonstrat[ing] that a disparity exists; and (3) establish[ing] a causal relationship between the two." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 207-09 (2d Cir. 2020) (affirming dismissal of Title VII disparate impact claim); *see also Motta v. Glob. Cont. Servs. Inc.*, 2016 WL 2642229, at *2 (S.D.N.Y. May 4, 2016) (dismissing NYSHRL and NYCHRL claims).

At the outset, Ndugga fails to identify any precise facially neutral practice that had a disparate impact on *her* as a member of a protected class. The only purported employment practice identified in the SAC is that BLP allegedly "bas[ed] starting salary on the salary received by new hires at their prior jobs." (SAC ¶¶ 1, 122, 138.) Even accepting this threadbare allegation as true, Ndugga does not have any actionable claim based on this practice because there is no allegation that *her* salary was determined in this manner, nor could there be given that it is undisputed that Ndugga began working for the Company shortly after her graduation from college. (*Id.* ¶¶ 92-93.) *See Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 40, n.20 (1976) ("[t]hat a suit may be a class action…adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured'").

Ndugga's disparate impact claims otherwise appear to be based on generalized allegations about BLP's practices for promotions, evaluations and compensation as a whole, but such vague allegations fail to carry a plaintiff's burden to identify a *specific* employment practice responsible for producing the alleged adverse impact. *See, e.g., Brown v. Coach Stores, Inc.*, 30 F.Supp.2d 611, 613 (S.D.N.Y. 1997) (dismissing complaint that "identifie[d] no affirmative policy, practice, or criteria that has causally resulted in the alleged disparities in defendant's

27

workforce" to state a claim under Title VII), *aff'd*, 163 F.3d 706 (2d Cir. 1998); *Clarke v. Leading Hotels of World, Ltd*., 2015 WL 6686568, at *3 (S.D.N.Y. Oct. 29, 2015) ("[t]o survive a motion to dismiss, a disparate impact claim must identify a specific employment practice that causes a disparate impact"); *Collette v. St. Luke's Roosevelt Hosp.*, 132 F.Supp.2d 256, 278 (S.D.N.Y. 2001) (granting motion to dismiss because conclusory disparate impact allegations regarding defendant's "hiring practices" and selections for "management positions" did not state a claim); *Janneh v. Regal Ent. Grp.*, 2009 WL 2922830, at *12-13 (N.D.N.Y. Sept. 8, 2009) (dismissing disparate impact claim and noting that "[s]imply gesturing towards the hiring process as a whole will not satisfy the requirement that the plaintiff identify a 'specific employment practice' that is the cause of the statistical disparities.").

Second, even where a plaintiff identifies a particular employment practice, a disparate impact claim still must be dismissed if the plaintiff does not demonstrate a causal connection between the challenged employment policy and a disparity on the basis of sex or other protected characteristic. As the Second Circuit recently held, to withstand a motion to dismiss, a complaint alleging disparate impact generally must identify statistics that "plausibly suggest that the challenged practice *actually* has a disparate impact" on a protected class. *Mandala,* 975 F.3d at 208-10 (emphasis in original). This showing requires that a plaintiff's "statistical analysis must, at the very least, focus on the disparity between appropriate comparator groups" and "must reveal disparities between populations that are relevant to the claim the plaintiff seeks to prove." *Id.*; *see also Samuels v. Williams Morris Agency*, 2013 WL 417770 (Sup. Ct. N.Y. Cnty., Jan. 14, 2013), *aff'd*, 123 A.D.3d 472 (1st Dep't 2014) (dismissing NYSHRL and NYCHRL claims because plaintiff failed to "show a statistically significant imbalance" in the relevant population).

28

In the SAC, Ndugga does not plead any statistics or facts to suggest that there *is* a disparity that exists between male and female Reporters, Editors, and Producers with respect to compensation, promotions or evaluations, nor does she plead any causal link between any of these practices and the alleged disproportionate effect on her and female putative class members. Courts routinely dismiss claims with such glaring deficiencies. *See, e.g., Mandala,* 975 F.3d at 211-13 (affirming dismissal of Title VII claim because the statistics alleged by plaintiffs did not plausibly establish a disparate impact); *Brown*, 163 F.3d at 712-13 (affirming dismissal of Title VII disparate impact claims where plaintiff failed to adequately allege a causal connection); *Malone v. N.Y. Pressman's Union No. 2*, 2011 WL 2150551, at *8 (S.D.N.Y. May 31, 2011) (granting motion to dismiss because the complaint failed to plead facts demonstrating that "the complained-of, facially neutral policies affect minority and female Juniors and Casuals more harshly than they affect white Juniors and Casuals."); *Motta,* 2016 WL 2642229, at *3 (dismissing NYSHRL and NYCHRL claims because the complaint "does not allege that GCS's policies affect employees of protected classes differently than they do non-members of those classes"); *Samuels v. William Morris Agency*, 123 A.D.3d 472, 473 (1st Dep't 2014) (affirming dismissal of disparate impact claims under the NYSHRL and NYCHRL where complaint failed to establish the challenged practice had an adverse impact on the basis of race). Similarly here, Counts Two and Four should be dismissed for failure to state a claim.

**E. Ndugga's Individual Claim For Retaliation Fails As a Matter Of Law.**

In Count Eight of the SAC, Ndugga alleges an individual claim for retaliation under Title VII only. (SAC ¶¶ 158-63.) In addition to being subject to dismissal for failure to exhaust her administrative remedies, as set forth in Section III.A.1, *supra*, this cause of action should be dismissed because Ndugga cannot establish that she suffered any adverse employment action as a result of her protected activity.

To state a claim for retaliation under Title VII, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Shultz v. Congregation Shearith Israel of City of N.Y.*, 867 F.3d 298, 309 (2d Cir. 2017). Protected activity requires that the plaintiff must have taken action "to protest or oppose statutorily prohibited discrimination." *Soto,* 2019 WL 2371713, at *10. An adverse action, in the context of a Title VII retaliation claim, is "any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at *9. Additionally, to plead the requisite causal connection, a plaintiff must allege (1) "direct proof of retaliatory animus"; (2) "disparate treatment of similarly situated employees; or (3) that the retaliatory action occurred close in time to the protected activities." *Id.* at *10. Courts frequently dismiss Title VII claims where, like here, the plaintiff fails to allege facts to support a plausible claim of retaliation. *See, e.g., id.* (granting motion to dismiss); *Shultz*, 867 F.3d at 309-10 (affirming dismissal of retaliation claim where plaintiff failed to allege that she was subjected to a materially adverse action).

Ndugga alleges that after she complained to her supervisor about a verbal altercation with a male colleague relating to an image used in a news video, the colleague retaliated against her by "isolat[ing]" her and failing to send her emails. (SAC ¶¶ 106-08.) This alleged incident is insufficient to state a claim because, as an initial matter, it does not plausibly establish that Ndugga engaged in protected activity by reporting discrimination. "While it is unnecessary for an individual to specifically invoke the word discrimination when complaining … there must be some basis to conclude that the employer was aware that the plaintiff engaged in protected activity." *Lucio v. N.Y.C. Dep't of Educ.*, 575 F. App'x 3, 6 (2d Cir. 2014); *see also Cardwell,*

2020 WL 6274826, at *31 (Woods, J.) ("[m]ere complaints of unfair treatment are not protected speech in the employment retaliation context," and it is the speaker's responsibility "to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally") (citation omitted). Here, Ndugga claims that she reported the disagreement to her supervisor, but the SAC is devoid of any allegation that Ndugga's complaint conveyed concerns about statutorily prohibited discrimination that she allegedly experienced at the Company. *See, e.g., Garcia v. Coll. of Staten Island,* 2012 WL 3930448, at *7 (E.D.N.Y. July 31, 2012) (plaintiff's complaints about being subjected to "instances of yelling, improper tone, rude words, throwing a chair" and other hostile acts did not convey that "[race or gender were] the nature of his objections."); *Cardwell,* 2020 WL 6274826, at *33 (Woods, J.) (holding that plaintiff's "complaints about Davis Polk's choice of clients could not be reasonably understood as complaints about discrimination at the Firm" and therefore did not constitute protected activity).

Even if this was protected activity (which it was not), the alleged retaliatory conduct does not constitute an actionable adverse employment action under Title VII. *See, e.g., Danieu v. Teamsters Local 264,* 2011 WL 1259839, at *9 (W.D.N.Y. Mar. 31, 2011). As other courts have held in dismissing Title VII retaliation claims at the pleadings stage, "[i]t is well established [that] ostracism and isolation at work is not enough to constitute an adverse employment action." *Id.*; *see also Miksic v. TD Ameritrade Holding Corp.*, 2013 WL 1803956, at *7 (S.D.N.Y. Mar. 7, 2013) (holding that plaintiff's allegations that his supervisor "isolat[ed]" him and stopped emailing him did not establish an adverse retaliatory action). The purportedly retaliatory conduct alleged in the SAC is, at most, "petty slights or minor annoyances that often take place at work," but is not materially adverse as a matter of law. *Shultz*, 867 F.3d at 309 (affirming dismissal of

retaliation claim because plaintiff's allegations that her supervisor disparaged her and encouraged others not to speak to the plaintiff did not meet the standard for an adverse action); *see also Whipple v. Reed Eye Assocs.*, 213 F.Supp.3d 492, 496 (W.D.N.Y. 2016) (dismissing retaliation claim where plaintiff's supervisor refused to work with her).

Ndugga also claims that she was retaliated against for complaining about alleged discrimination in July 2020 and for filing an EEOC charge in November 2020. (SAC ¶ 158; *see* Bloom Decl. Ex. 2.) The SAC does not identify any specific retaliatory act that allegedly occurred because of these complaints and, instead, summarily states that thereafter, Ndugga experienced "harassing actions" such as the denial of the opportunity to conduct a live interview, denial of advancement opportunities, and unequal pay. (SAC ¶ 159.) However, this conclusory statement is untenable in light of Ndugga's allegations that each of these alleged "harassing actions" purportedly occurred *before* the July 2020 conference call and *before* she filed an EEOC Charge in November 2020. (*Id.* ¶ 109 (alleging denial of interview in May 2020); ¶ 104 (alleging denial of a "promotion" in March 2020); ¶ 94 (alleging a pay disparity created at the time of her hire in 2018)). It is well-established that an alleged adverse act that predates a plaintiff's protected activity cannot constitute "'temporally possible' retaliatory acts under Title VII." *Pena,* 2017 WL 722505, at *12 ; *see also Kalia*, 2020 WL 6875173, at *6 (granting motion to dismiss retaliation claim where plaintiff failed to plausibly allege a causal connection, noting that the complained-of salary decision was made before plaintiff filed an EEOC charge). Ndugga therefore has failed to establish a causal link between her alleged protected activities in June or November 2020 and any purportedly retaliatory act.

Finally, to the extent Ndugga claims retaliation after she reported "disparities in treatment to Human Resources" (SAC ¶ 101), she fails to allege when she made this complaint to Human

Resources, whom she made it to, what alleged "disparities" she reported, and what adverse action allegedly occurred as a result. This conclusory allegation fails to state a claim, as an initial matter, because Ndugga does not allege that her report to Human Resources conveyed concerns about statutorily prohibited discrimination. *See, e.g., Cardwell,* 2020 WL 6274826, at *31 (Woods, J.). Additionally, it is simply "too vague in nature and non-specific as to time ... to serve as a basis for her retaliation claims" because Ndugga does not plausibly allege that her report to Human Resources was the cause of any specific allegedly adverse action. *Henry v. NYC Health & Hosp. Corp.*, 18 F.Supp.3d 396, 412 (S.D.N.Y. 2014). As other courts have held in granting motions to dismiss, a conclusory claim of retaliation that "fails to provide any factual detail describing the specific acts of retaliation, when it occurred and which employee of the defendant had knowledge of the plaintiff's protected activity or actually engaged in the claimed retaliation, is insufficient to withstand a motion to dismiss." *Majeed v. ADF Cos.*, 2013 WL 654416, at *11 (E.D.N.Y. Feb. 20, 2013); *see also Henry*, 18 F.Supp.3d at 412 (granting motion to dismiss Title VII claim where complaint failed to specify when the relevant protected activity and retaliatory conduct occurred); *Rogers v. Fashion Inst. of Tech.*, 2016 WL 889590, at *7 (S.D.N.Y. Feb. 26, 2016) (granting motion to dismiss Title VII retaliation claims because "Plaintiff fails to allege sufficient facts regarding the timing of his complaints to establish causation"). In sum, Ndugga has failed to a state a plausible claim of retaliation under Title VII.[15]

## IV. THE CLASS CLAIMS ALSO SHOULD BE DISMISSED

In Counts One through Four, Syeed and Ndugga purport to assert Title VII and NYSHRL claims on behalf of themselves and a putative class of female employees. Because Plaintiffs have failed to state a claim on behalf of themselves with respect to these causes of action, the claims

---

[15] Because Plaintiffs have already had three opportunities to plead their claims, this action should be dismissed without leave to replead.

asserted on behalf of the putative class also should be dismissed as moot. *See, e.g., LaVoice v. UBS Fin. Servs., Inc.,* 2013 WL 5380759, at *3 n.6 (S.D.N.Y. Sept. 26, 2013) ("[b]ecause the Court has not yet certified a class in this action, dismissal of the named plaintiff's claims requires dismissal of the entire action") (collecting cases); *Binson v. J.E. Robert Co., Inc.,* 2006 U.S. Dist. LEXIS 101012, at *42 (E.D.N.Y. June 27, 2006) ("[O]nce the named plaintiffs' claims are dismissed, there is no one who has a justiciable claim that may be asserted…. Since there is no 'case or controversy,'…the court is without jurisdiction to proceed further."); *McCabe v. Lifetime Ent. Servs., LLC*, 761 F. App'x 38, 41 (2d Cir. 2019) ("Because McCabe's individual claims were time barred, the district court also properly dismissed the class claims as moot.").

## V. ALTERNATIVELY, THE JURY DEMAND SHOULD BE STRICKEN

If the SAC is not dismissed in its entirety, then Plaintiffs' demand for a trial by jury in the SAC (p. 1 & ¶ 179) should be stricken because it was not made in a timely manner in accordance with the Court's directives. Specifically, on September 14, 2020, the Court issued an Order that clearly stated: "[p]ursuant to Fed. R. Civ. P. 81(c)(3), if any party wishes to demand a jury trial in this matter, the demand must be served and filed no later than September 25, 2020." (Dkt. 7.) Federal Rule of Civil Procedure 81(c)(3) unequivocally provides that "[a] party who fails to make a demand when so ordered waives a jury trial." *Id.*

Notwithstanding this Court's September 14, 2020 Order and the clear language of Rule 81(c)(3) referenced therein, Plaintiffs' counsel did not file a jury demand on behalf of Syeed and the putative class (which included Ndugga) by the September 25, 2020 deadline. As such, Plaintiffs have waived their right to request a jury trial in the SAC.

To the extent Plaintiffs attempt to suggest that they already had requested a jury trial in the First Amended Complaint filed in state court (the operative pleading at the time of removal) and therefore were within their rights to ignore this Court's subsequent September 14th Order

34

directing them to file a jury demand by September 25, 2020 in accordance with Rule 81(c)(3), this position is meritless. Under New York law, a demand for a jury trial must be made in a note of issue. *See* N.Y. C.P.L.R. § 4102(a) ("[a]ny party may demand a trial by jury of any issue of fact triable of right by a jury, by serving upon all other parties and filing a note of issue containing a demand for trial by jury."); *Downing v. Downing*, 32 A.D.2d 350, 351 (1st Dep't 1969) ("[t]he manner of asserting the right [to a jury] is by including a demand for it in the note of issue and the time for so doing is when the note of issue is filed."); *Shmueli v. Savoy Condo., LLC*, 2018 N.Y. Slip. Op. 33303(U), at *2 (Sup. Ct. N.Y. Cnty., Dec. 19, 2018) (denying motion for a jury trial because plaintiff "must abide by CPLR 4102(a) in seeking a jury trial"); *Espinosa v. Van Dorn Plastic Machinery Co.*, 813 F.Supp. 252, 254, n.2 (S.D.N.Y. 1993) ("Under New York law, a request for a trial by jury must be filed with a note of issue or by filing a jury demand within fifteen days of service of the note of issue."). There can be no dispute that, at the time this case was removed, Plaintiffs had not filed a Note of Issue in New York Supreme Court (*see* Dkt. 1); therefore, they never properly filed a jury demand as a matter of New York law.[16]

Plaintiffs accordingly have waived their right to demand a jury trial under Rule 81(c)(3), and the untimely jury demand should be stricken.

## **CONCLUSION**

For all of the foregoing reasons, the Court should grant Defendant's motion to dismiss the SAC in its entirety with prejudice and without leave to replead or, in the alternative, strike Plaintiffs' demand for a jury trial, together with such other and further relief as the Court deems just and proper.

---

[16] Indeed, Plaintiffs' excuse for their failure to file a jury demand in contravention to the Court's explicit order, as represented at the December 21, 2020 conference, rings particularly hollow because their counsel, Donna Clancy, is an experienced New York state court litigator who currently has approximately

Dated: New York, New York
January 15, 2021

PROSKAUER ROSE LLP

By: */s/ Elise M. Bloom*
Elise M. Bloom
Rachel S. Philion
Allison L. Martin
Eleven Times Square
New York, New York 10036
(t) 212-969-3000
(f) 212-969-2900
ebloom@proskauer.com
rphilion@proskauer.com
amartin@proskauer.com

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
(t) 617-526-9850
(f) 617-526-9899
mbatten@proskauer.com

*Attorneys for Defendant Bloomberg L.P.*

---

35 *active* matters pending in state court as of the date of this filing, and has appeared as counsel of record in more than 75 state court cases over the past five years.