UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

NAFEESA SYEED AND NAULA NDUGGA,
ON BEHALF OF THEMSELVES AND
SIMILARLY SITUATED WOMEN,                    Case No 20-cv-07464 (GHW)

        Plaintiffs,

    -against-

BLOOMBERG L.P.,

        Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X


**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS

Page

Introduction ................................................................................................................. 1

Background .................................................................................................................. 1

Argument .................................................................................................................... 4

I.      Legal Standard Governing Motion to Dismiss ................................................. 4

II.     Syeed States Claims Under the NYSHRL and NYCHRL .................................. 5

        A.      NYSHRL and NYCHRL Apply to Claims Where the Impact Was in New York .......................................................................................................... 5

        B.      Syeed Did Not Plead Claims that Are Time Barred or Under Title VII ................ 8

III.    Ndugga Properly Pleads Her Claims ................................................................ 9

        A.      Ndugga Has Exhausted her Administrative Remedies and Pleads Timely Claims ................................................................................................... 9

                1.      Ndugga Exhausted her Administrative Remedies ..................................... 9

                2.      Plaintiff Ndugga's Pay Claims Are Timely ................................. 10

        B.      Plaintiff Ndugga States a Claim for Disparate Treatment ................................. 11

                1.      Plaintiff Ndugga Plausibly Pleads Pay Discrimination Claims ............... 12

                2.      Plaintiff Ndugga Plausibly Pleads Failure to Promote ........................... 16

        C.      Ndugga Properly Pled a Claim for Hostile Work Environment ......................... 18

        D.      Ndugga States a Claim for Retaliation ................................................................. 21

        E.      Plaintiffs Properly Pled a Claim for Disparate Impact ....................................... 25

                1.      Plaintiffs Identified Facially Neutral Practices ......................................... 26

                2.      Plaintiffs Adequately Pled Adverse Impact and Causation .................... 29

IV.     Class Claims Survive, Because Ndugga's Pay, Promotion, and Disparate Impact Claims Survive ............................................................................................... 33

V.      Plaintiffs Preserved Their Jury Demand ........................................................ 33

Conclusion ................................................................................................................ 35

# TABLE OF AUTHORITIES

Page

**CASES**

*Adler v. Pataki*,
   185 F.3d 35 (2d Cir. 1999).................................................................................27

*Aldrich v. Randolph Cent. Sch. Dist.*,
   963 F.2d 520 (2d Cir. 1992)...............................................................................27

*Anderson v. HotelsAB, LLC*,
   2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015)................................................5, 7

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................4

*Aslin v. Univ. of Rochester*,
   2019 WL 4112130 (W.D.N.Y. Aug. 28, 2019) ................................................24

*Barrett v. Forest Labs., Inc.*,
   39 F. Supp. 3d 407 (S.D.N.Y. 2014)..............................................10, 14, 16, 31

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...............................................................................5, 16, 25

*Brown v. Coach Stores, Inc.*,
   163 F.3d 706 (2d Cir. 1998).............................................................16, 17, 32

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006)..............................................................................................23

*Butterfield-Bajinan v. City of N.Y.*,
   2017 WL 4045175 (S.D.N.Y. Sept. 11, 2017).......................................................11

*Cardwell v. Davis Polk & Wardwell LLP*,
   2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) (Woods, J.) ..........................11, 12, 25

*Cascone v. Ortho Pharm. Corp.*,
   702 F.2d 389 (2d Cir. 1983).........................................................................33, 34

*Chau v. Donovan*,
   357 F. Supp. 3d 276 (S.D.N.Y. 2019)...................................................................7

*Chin v. Port Authority of N.Y. & N.J.*,
   685 F.3d 135 (2d Cir. 2012)...........................................................16, 30, 31

# TABLE OF AUTHORITIES

Page

*Cirigliano v. Vill. of Afton, N.Y.*,
   2012 WL 2752867 (N.D.N.Y. July 9, 2012) ...............................................2

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018)...............................................................5, 25

*Collette v. St. Luke's Roosevelt Hosp.*,
   132 F. Supp. 2d 256 (S.D.N.Y. 2001)......................................................28

*Cosgrove v. Sears, Roebuck & Co.*,
   9 F.3d 1033 (2d Cir. 1993).....................................................................22

*Craven v. City of N.Y.*,
   2020 WL 2765694 (S.D.N.Y. May 28, 2020) (Furman, J.)......................21

*Danieu v. Teamsters Local 264*,
   2011 WL 1259839 (W.D.N.Y. Mar. 31, 2011)..........................................24

*EEOC v. Bloomberg L.P.*,
   751 F. Supp. 2d 628 (S.D.N.Y. 2010)......................................................10

*EEOC v. Bloomberg L.P.*,
   967 F. Supp. 2d 816 (S.D.N.Y. 2013)........................................................5

*Emamian v. Rockefeller Univ.*,
   823 F. App'x 40 (2d Cir. 2020) ...............................................................19

*Encarnacion v. Isabella Geriatric Ctr., Inc.*,
   2014 WL 7008946 (S.D.N.Y. Dec. 12, 2014) (Woods, J.)..................19, 34

*Eng v. City of N.Y.*,
   715 F. App'x 49 (2d Cir. 2017) ...............................................................14

*Fed. Ins. Co. v. Tyco Int'l Ltd.*,
   422 F. Supp. 2d 357 (S.D.N.Y. 2006).......................................................2

*Flores v. N.Y. City Human Res. Admin.*,
   2011 WL 3611340 (S.D.N.Y. Aug. 16, 2011)...........................................23

*Foman v. Davis*,
   371 U.S. 178 (1962)................................................................................35

*Gargiulo v. Delsole*,
   769 F.2d 77 (2d Cir. 1985).......................................................................34

# TABLE OF AUTHORITIES

Page

*Ghorpade v. MetLife, Inc.*,
2014 WL 7008954 (S.D.N.Y. Dec. 12, 2014) ..........................................................8

*Gittens-Bridges v. City of N.Y.*,
2020 WL 3100213 (S.D.N.Y. June 11, 2020) ........................................................31

*Gonzalez v. City of N.Y.*,
442 F. Supp. 3d 665 (S.D.N.Y. 2020)......................................................................8

*Gordon v. City of N.Y.*,
2016 WL 4618969 (S.D.N.Y. Sept. 2, 2016)........................................................26

*Gorzynski v. JetBlue Airways Corp.*,
596 F.3d 93 (2d Cir. 2010)............................................................................20, 24

*Hagan v. City of N.Y.*,
39 F. Supp. 3d 481 (S.D.N.Y. 2014).....................................................................16

*Halbrook v. Reichhold Chems., Inc.*,
735 F. Supp. 121 (S.D.N.Y. 1990)........................................................................10

*Hoffman v. Parade Publ'ns*,
15 N.Y.3d 285 (N.Y. 2010) ...................................................................................5

*Holowecki v. Fed. Exp. Corp.*,
440 F.3d 558 (2d Cir. 2006) .................................................................................10

*Holtz v. Rockefeller & Co., Inc.*,
258 F.3d 62 (2d Cir. 2001).....................................................................................10

*Humphries v. City Univ. of N.Y.*,
2013 WL 6196561 (S.D.N.Y. Nov. 26, 2013)........................................12, 14, 21

*Int'l Bhd. of Teamsters v. United States*,
431 U.S. 324 (1977)...............................................................................................16

*Janetos v. Home Depot USA*,
2012 WL 4364510 (E.D.N.Y. Sept. 25, 2012) ....................................................35

*Janneh v. Regal Entm't Grp.*,
2009 WL 2922830 (N.D.N.Y. Sept. 8, 2009) ......................................................28

*Jenkins v. N.Y. City Transit Auth.*,
646 F. Supp. 2d 464 (S.D.N.Y. 2009)..............................................................31, 32

# TABLE OF AUTHORITIES

Page

*Kounitz v. Slaatten*,
  901 F. Supp. 650 (S.D.N.Y. 1995).............................................................................9

*Littlejohn v. City of N.Y.*,
  795 F.3d 297 (2d Cir. 2015).............................................................................*passim*

*Mandala v. NTT Data, Inc.*,
  975 F.3d 202 (2d Cir. 2020).............................................................................*passim*

*Mandell v. Cty. of Suffolk*,
  316 F.3d 368 (2d Cir. 2003).............................................................................12

*Martin v. Coinmach Corp.*,
  2016 WL 6996182 (S.D.N.Y. Nov. 29, 2016)......................................................31

*Matima v. Celli*,
  228 F.3d 68 (2d Cir. 2000).............................................................................22

*McGullam v. Cedar Graphics, Inc.*,
  609 F.3d 70 (2d Cir. 2010).............................................................................18

*Menaker v. Hofstra Univ.*,
  935 F.3d 20 (2d Cir. 2019).............................................................................4, 29

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*,
  715 F.3d 102 (2d Cir. 2013).........................................................11, 18, 19, 20

*Mikolaenko v. N.Y. Univ.*,
  2017 WL 4174928 (S.D.N.Y. Sept. 7, 2017)......................................................19

*Miksic v. TD Ameritrade Holding Corp.*,
  2013 WL 1803956 (S.D.N.Y. Mar. 7, 2013).....................................................24

*Motta v. Glob. Contract Servs. Inc.*,
  2016 WL 2642229 (S.D.N.Y. May 4, 2016) ......................................................32

*Nat'l R.R. Passenger Corp. v. Morgan*,
  536 U.S. 101 (2002).............................................................................8

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012).............................................................................27

*Osborne v. Moody's Inv'rs Serv., Inc.*,
  2018 WL 1441392 (S.D.N.Y. Mar. 22, 2018) .................................................21

# TABLE OF AUTHORITIES

Page

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007)........................................................................21

*Petrosino v. Bell Atl.*,
    385 F.3d 210 (2d Cir. 2004)........................................................................16

*Reeves v. Sanderson Plumbing Prod., Inc.*,
    530 U.S. 133 (2000)...................................................................................14

*Rizo v. Yovino*,
    950 F.3d 1217 (9th Cir.), *cert. denied*, 141 S. Ct. 189 (2020)................27

*Rizvi v. Urstadt Biddle Properties Inc.*,
    2018 WL 460975 (D. Conn. Jan. 17, 2018)................................................2

*Robinson v. Metro-North Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)...................................................................25, 26

*Rodriguez v. Town of Ramapo*,
    412 F. Supp. 3d 412, 439 (S.D.N.Y. 2019)................................................26

*Rupolo v. Oshkosh Truck Corp.*,
    749 F. Supp. 2d 31 (E.D.N.Y. 2010) ......................................................34, 35

*S.S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co.*,
    608 F.2d 28 (2d Cir. 1979)..........................................................................35

*Samuels v. Agency*,
    2013 WL 417770 (N.Y. Sup. Ct. Jan. 14, 2013).......................................32

*Sanderson v. Leg Apparel LLC*,
    2020 WL 7342742 (S.D.N.Y. Dec. 14, 2020) (Woods, J.).......................18

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
    2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) ........................................6, 7

*Shah v. N.Y. State Dep't of Civil Serv.*,
    168 F.3d 610 (2d Cir. 1999)........................................................................22

*Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*,
    116 A.D.3d 134 (N.Y. App. Div. 1st Dep't 2014)......................................8

*Smith v. Xerox Corp.*,
    196 F.3d 358 (2d Cir. 1999) ...................................................................25, 28

# TABLE OF AUTHORITIES

Page

*Sorrenti v. City of N.Y.*,
    851 N.Y.S.2d 61 (Sup. Ct. 2007)........................................................................8

*Soto v. Marist Coll.*,
    2019 WL 2371713 (S.D.N.Y. June 5, 2019) .......................................................15

*Spires v. MetLife Grp., Inc.*,
    2019 WL 4464393 (S.D.N.Y. Sept. 18, 2019).....................................................8

*Spirt v. Teachers Ins. & Annuity Ass'n*,
    691 F.2d 1054 (2d Cir. 1982) .............................................................................9

*Stewart v. City of N.Y.*,
    2012 WL 2849779 (S.D.N.Y. July 10, 2012) ....................................................17

*Sumner v. U.S. Postal Serv.*,
    899 F.2d 203 (2d Cir. 1990)..............................................................................23

*Swierkiewicz. Nguedi v. Fed. Rsrv. Bank of N.Y.*,
    2017 WL 5991757 (S.D.N.Y. Dec. 1, 2017) ...............................................12, 15

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002).............................................................................12, 16, 31

*Taylor v. Bailey Tool & Mfg. Co.*,
    744 F.3d 944 (5th Cir. 2014) ...............................................................................2

*Teasdale v. N.Y. City Fire Dep't, FDNY*,
    574 F. App'x 50 (2d Cir. 2014) .........................................................................25

*Tolliver v. Xerox Corp.*,
    918 F.2d 1052 (2d Cir. 1990).............................................................................10

*Torre v. Charter Commc'ns*,
    2020 WL 5982684 (S.D.N.Y Oct. 8, 2020)..................................................15, 23

*Tsombanidis v. West Haven Fire Dep't*,
    352 F.3d 565 (2d Cir. 2003)...............................................................................30

*Tulino v. City of N.Y.*,
    813 F. App'x 725 (2d Cir. 2020) .........................................................................8

*United Air Lines v. Evans*,
    431 U.S. 553 (1977)............................................................................................9

# TABLE OF AUTHORITIES

Page

*Vega v. Hempstead Union Free Sch. Dist.*,
   801 F.3d 72 (2d Cir. 2015)...........................................................................5, 12, 23

*Vuona v. Merrill Lynch & Co.*,
   2011 WL 5553709 (S.D.N.Y. Nov. 15, 2011) ...................................................12, 13

*Wang v. Gov't Emps. Ins. Co.*,
   2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016) .........................................................7

*Wards Cove Packing Co. v. Atonio*,
   490 U.S. 642 (1989)................................................................................................32

*Watson v. Fort Worth Bank and Trust*,
   487 U.S. 977 (1988)................................................................................................26

*Williams v. N.Y. City Hous. Auth.*,
   61 A.D.3d 62 (N.Y. App. Div. 1st Dep't 2009).......................................................25

*Williams v. R.H. Donnelley, Corp.*,
   368 F.3d 123 (2d Cir. 2004).....................................................................................16

*Woods-Early v. Corning Inc.*,
   330 F.R.D. 117 (W.D.N.Y. 2019).......................................................................17, 27

*In re Zarnel*,
   619 F.3d 156 (2d Cir. 2010).....................................................................................31

**STATUTES AND RULES**

42 U.S.C. § 2000e-2(k)(1)(B)(i) ..................................................................................28

N.Y.C.P.L.R. § 4102(a) ................................................................................................33

Fed. R. Civ. P. 81(c) ................................................................................................2, 33

## INTRODUCTION

Despite the substantial allegations in the Second Amended Complaint (SAC), which detail specific policies and practices of Bloomberg L.P. (BLP) which have the purpose and effect of creating disparities in compensation and promotion based on sex, along with detailed descriptions of the two named plaintiffs' personal experience being subject to these policies, and the injuries they suffered as a result, BLP seeks to dismiss the SAC prior to any discovery.  But Plaintiffs have set forth ample factual allegations to state a claim for relief that is plausible, both as to their individual claims and the claims they assert on behalf of classes.  Moreover, with respect to Plaintiff Syeed, BLP does not challenge the adequacy of her factual allegations of discrimination, including constructive discharge, in any respect except for whether the impact of those actions was felt in New York, such that New York law applies, as she does not present Title VII claims.  However, the law is clear that when an individual seeks a position in New York, and is discriminatorily denied that position, then New York law applies, regardless of where the applicant lives or works prior to seeking the New York position.  Ms. Syeed sought numerous positions based in New York, and her claims of discrimination with respect to those positions are plainly covered by New York law.  BLP's motion should be denied, and the parties permitted to proceed with discovery.

## BACKGROUND

Plaintiff Nafeesa Syeed filed a class action suit against Defendant in New York Supreme Court on August 9, 2020, alleging systemic sex discrimination by Bloomberg L.P., as well as several individual claims, filing an amended complaint on August 11, 2020.  Dkt. 1-1, 1-2.  Prior to any proceedings in state court, Defendant removed the case to this Court on September 11, 2020, Dkt. 1, and on October 9, 2020 filed a motion to dismiss.  Dkt. 19.  The Court granted Plaintiff's unopposed request for an extension of time to respond to the motion to dismiss, setting

a November 13, 2020 deadline.  Dkt. 23.  On that day, pursuant to Fed. R. Civ. P. 15(a)(1)(B),

Plaintiffs filed their Second Amended Complaint, which added Naula Ndugga as a plaintiff,

alleging sex discrimination in violation of Title VII on behalf of Ms. Ndugga and a class of

similarly situated women, sex discrimination in violation of New York law on behalf of both

Plaintiffs and a class of similarly situated women, as well as individual claims.[1]

Plaintiffs, one current and one former employee of BLP, allege classwide disparate

treatment in compensation and promotion on the basis of sex, in violation of Title VII and

NYSHRL (Counts One and Three), and classwide disparate impact in compensation and

promotion on the basis of sex, in violation of Title VII and NYSHRL (Counts Two and Four).  In

---

[1] Federal Rule of Civil Procedure 15(a) permits filing an amended complaint in response to a motion to dismiss.  While the rule generally provides for 21 days, BLP consented to Plaintiffs' request for an extension to file their response to BLP's Motion, Dkt. 22, which this Court granted, Dkt. 23.  Tucked in a footnote of their procedural history, BLP now disingenuously asserts that, when this Court granted Plaintiffs an extension to respond, it stripped Plaintiffs of their right to do so with an amended complaint.  It is well established that district courts can extend deadlines established in the Federal Rules.  *See, e.g.*, *Rizvi v. Urstadt Biddle Properties Inc.*, 2018 WL 460975, at *4 (D. Conn. Jan. 17, 2018) ("Plaintiffs moved for an extension of time and the Court's granting of that motion extended the time for the filing of an amended complaint as of right.").  Plaintiffs thus timely filed the SAC.  BLP also asserts that, because Plaintiffs once amended their Complaint two days after filing in *state court*, they lost the ability to amend as of right in *federal court*.  However, this was the first time Plaintiffs amended in federal court.  The Federal Rules of Civil Procedure do not apply retroactively.  *See* Fed. R. Civ. P. 81(c)(1); *cf. Taylor v. Bailey Tool & Mfg. Co.*, 744 F.3d 944, 946 (5th Cir. 2014) (explaining that the rules "do not provide for retroactive application to the procedural aspects of a case that occurred in state court prior to removal"); *Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 381 (S.D.N.Y. 2006) (applying state law to assess pre-removal joinder).  While some courts have held that an amendment in state court constitutes the one amendment as of right permitted by Rule 15 (*see* Def. Mem. at 3 n.2), the Second Circuit has not addressed this issue, and Plaintiffs respectfully submit that such an interpretation is inconsistent with the non-retroactivity of the Federal Rules; because the Rules did not apply in state court, Rule 15(a)'s grant of an amendment as of right only attached once the case was removed.  Nonetheless, if the Court disagrees, then Plaintiffs request leave to file the SAC *nunc pro tunc*, as this litigation is in its earliest stages, a second plaintiff came forward to be added to the case, and there is no unfair prejudice to BLP, as it has already fully briefed its Motion to Dismiss the SAC on the merits.  *See, e.g.*, *Cirigliano v. Vill. of Afton, N.Y.*, 2012 WL 2752867, at *3 (N.D.N.Y. July 9, 2012).

support of these allegations, Plaintiffs detail BLP's policies and practices, including that the three-member, all-male Editorial Management Committee exercises authority over hiring and promotion decisions. SAC ¶¶ 14, 28, 42. With respect to promotions, BLP also had a practice of designating certain positions as "diversity slots," which effectively limited the promotion opportunities for everyone other than white men to these segregated positions. ¶ 32. The diversity slot practice was specifically used to bar Plaintiff Syeed from promotion. ¶¶ 32, 84. Both Plaintiffs alleged they were passed over for promotions, and numerous female reporters also complained to Plaintiffs that BLP bypassed them for promotion. *E.g.* ¶¶ 31, 82, 104. With respect to compensation, decisions were also controlled by the Editorial Management Committee. ¶¶ 14, 33, 42. Initial compensation was established largely based upon prior pay, although the Editorial Management Committee would agree to offer more money to male reporters or editors seeking a better salary, while declining to do so for female new hires. ¶¶ 33-34. Those initial pay disparities impacted compensation throughout employees' careers, as even equal raises would continue disparities. ¶ 36. Both Plaintiffs alleged they were paid significantly less than male peers. ¶¶ 37, 70, 97. Twice annual evaluations are used to decide on pay increases, bonuses, and even promotions. ¶¶ 40-41. Here too, the Editorial Management Committee dictates which employees should have their ratings lowered, which then has a direct impact on their compensation and promotion prospects. ¶¶ 40-41.

BLP has long been characterized by a systemic, top-down culture of sexism, as alleged in the SAC with specific details from prior cases and news reports. ¶¶ 18-24. Plaintiffs further alleged their personal exposure to sexism at BLP, describing specific incidents. ¶¶ 25-26. The male leadership of BLP that created and perpetuated this sexist culture, also made the relevant compensation and promotion decisions. It is not surprising therefor, that there are ample detailed

allegations that these practices, whether intended, or as a result of adverse impact, led to women being paid less than similarly situated men, and being denied promotion to more senior positions. Specifically, a D.C. Bureau Chief disclosed that gender pay disparities were well known in Bloomberg News, while many women reported pay disparities of 20% to 50%. ¶ 38. BLP disclosed compensation data as required by the UK Government Equalities Office, which showed a 20% difference in pay. ¶ 39. With respect to exclusion of women from senior positions, Editor-in-Chief Micklethwait eliminated several senior women soon after assuming his position. ¶ 19. Moreover, Plaintiff Syeed met with the head of HR for Washington DC, Tamika Alexander, and described her experience with sexism and racism at BLP, particularly with respect to promotions. ¶ 87. Ms. Syeed concluded "I am probably not telling you anything you do not already know," to which Ms. Alexander agreed "Sadly, yes." *Id.*

Plaintiffs' individual experiences with discrimination in pay and promotion—consistent with their allegations on behalf of the class—and their additional individual experiences of hostile work environment, as well as Ms. Syeed's constructive discharge and Ms. Nudugga's retaliation claim, are described in greater detail below in the relevant portions of the argument.

## ARGUMENT

## I.    LEGAL STANDARD GOVERNING MOTION TO DISMISS

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Menaker v. Hofstra Univ.*, 935 F.3d 20, 30 (2d Cir. 2019) (footnotes and citations omitted). The standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this determination, the Court accepts all facts as true and "draw[s] all inferences in [plaintiff's] favor." *Id.* The question is not whether plaintiffs are "likely to prevail, but whether" they include enough

allegations to "nudge[] their claims across the line from conceivable to plausible." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87 (2d Cir. 2015) (quotation omitted).  Nor must plaintiffs plead a *prima facie* case.  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020).  Instead, they simply must allege enough facts to "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'"  *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II.    SYEED STATES CLAIMS UNDER THE NYSHRL AND NYCHRL

A.    <u>NYSHRL and NYCHRL Apply to Claims Where the Impact Was in New York</u>

The parties agree that, "[i]n order for a nonresident to invoke the protections of the NYSHRL and NYCHRL, she must show that the discriminatory act had an impact within the boundaries of the State and City, respectively."  *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 865 (S.D.N.Y. 2013) (citing *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285 (N.Y. 2010)). According to BLP, Plaintiff Syeed has not alleged that she "experienced any alleged unlawful conduct while in New York," and so cannot "establish that she felt the impact of any alleged discrimination within the territorial boundaries of New York State or City, as is required to state a claim under the NYSHRL and NYCHRL."  *See* Def. Mem. 7.  As a matter of law, this contention is incorrect.  Ms. Syeed need not allege that she experienced discrimination while in New York State or City to establish that she felt the impact of such discrimination there.  Instead, even "[w]here the discriminatory conduct occurs outside the geographical bounds of New York City, courts have found that the impact requirement is satisfied if the plaintiff alleges that the conduct has affected the terms and conditions of plaintiff's employment within the city." *Anderson v. HotelsAB, LLC*, 2015 WL 5008771, at *2 (S.D.N.Y. Aug. 24, 2015) (internal citations omitted).  Specifically, "[c]ourts in this district have … found that when non-resident

plaintiffs allege that that they were not hired for a job in New York City on a discriminatory basis, the impact requirement for both the NYSHRL and NYCHRL is met." *Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, 2019 WL 6916099, at *4 (S.D.N.Y. Dec. 19, 2019). That is precisely what Plaintiff Syeed alleges: she sought and was denied numerous positions with BLP in New York.

Plaintiff Nafeesa Syeed, having worked for a number of major news outlets, was hired by Bloomberg as a reporter in its Dubai News Bureau in October 2014. SAC ¶¶ 54, 56. In the Dubai Bureau, Plaintiff Syeed experienced a work environment permeated by racism and hostility to women. ¶¶ 58–60. To escape this toxic work environment, she advised BLP in October 2015 that she wished to relocate to its New York and/or Washington, D.C. Bureaus because of her husband's job location. ¶¶ 61–64. She applied unsuccessfully for the Digital Features/Longform Editor position in New York, among other New York based positions. ¶ 65. In March 2016, she obtained a position in the D.C. Bureau covering cybersecurity, but then experienced further workplace racism and sexism. ¶¶ 66, 68, 70-78, 80. Plaintiff Syeed expressed interest in the New York City-based UN reporter position when it became vacant in March 2018, and also applied for other positions in New York, including the New Economy Forum Editor position. ¶¶ 79–82. Ultimately, the UN position was filled by a less experienced, less qualified male reporter. ¶ 82. In a subsequent conversation with Mike Shepard, Managing Editor, in June 2018, Ms. Syeed observed that Bloomberg did not employ any women of color in senior roles, and he replied that "Bloomberg considered making the New York UN job a 'diversity slot,'" but it "didn't work out that way." ¶¶ 83, 84. Plaintiff Syeed understood this response to mean that rather than being considered for positions on her merits, she was effectively limited to positions designated as "diversity slots." ¶ 84.

Ms. Syeed's circumstances are thus like the plaintiff in *Anderson* who was interviewed and subject to discriminatory statements and hiring decision on Shelter Island, but who was found to have sufficiently alleged the conduct "had an impact with respect to her prospective employment responsibilities in New York City" because the position for which she was not hired would have required her to work there for a period of seven months each year. *Anderson*, 2015 WL 5008771, at *3. Similarly, in *Chau v. Donovan*, 357 F. Supp. 3d 276 (S.D.N.Y. 2019), the court likewise found that where a California resident "alleges she would have taken a position in New York City had she not been discriminated against, she has satisfied the requirement that the alleged discriminatory act had an impact within the boundaries of New York City." *Id.* at 284 (internal citations omitted); *see also Scalercio-Isenberg*, 2019 WL 6916099, at *4 (holding that a New Jersey resident met the impact requirement for NYSHRL and NYCHRL by alleging "that she was discriminated against when she was not hired by the New York office of Morgan Stanley, and that Morgan Stanley retaliated against her when she complained").

The sole case cited by Bloomberg that addresses the impact of a failure to hire or promote, *Wang v. Gov't Emps. Ins. Co.*, 2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016), addresses very different allegations. The *Wang* plaintiff did not allege that the position would have placed her in New York City, and thus subject to the NYCHRL, but that if she had been promoted she might have handled litigation in courts in New York City. *Id.* Thus, *Wang* is distinguishable from cases, such as this one, in which the position sought was a New York-based position.

In the present matter, Plaintiff Syeed met the impact requirement for both the NYSHRL and NYCHRL since BLP refused to promote her on a discriminatory basis to certain New York-based positions, including the position of UN reporter within Bloomberg's New York Bureau.

Moreover, since Ms. Syeed's constructive discharge claim is based primarily on being denied promotions to positions in New York,[2] the constructive discharge claim also is based on a New York impact.[3]

B.    Syeed Did Not Plead Claims that Are Time Barred or Under Title VII

Contrary to BLP's suggestion, Ms. Syeed has not made claims under Title VII, but has asserted claims under NYCHRL and NYSHRL.  Her New York claims go back only to August 9, 2017, consistent with the governing statute of limitations.  While Ms. Syeed includes factual allegations that pre-date the limitations period, those facts are nonetheless relevant to her claims of discrimination within the covered time period.  It has long been held that pre-limitations evidence may be considered, particularly for showing intent.  *See, e.g.*, *Nat'l R.R. Passenger*

---

[2] *See Halbrook v. Reichhold Chems., Inc.*, 735 F. Supp. 121, 127 (S.D.N.Y. 1990) (recognizing that "dashing reasonable expectations of career advancement may create intolerable working conditions that rise to the level of constructive discharge.").  While some courts have held that "denial of promotion *by itself*" does not constitute constructive discharge (*Spires v. MetLife Grp., Inc.*, 2019 WL 4464393, at *10 (S.D.N.Y. Sept. 18, 2019) (emphasis added)), Defendant made no such argument, and courts have recognized that the contours of the constructive discharge claim under New York law are unsettled given the amendments generally broadening the scope of the law.  *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, 116 A.D.3d 134, 139 n.1 (N.Y. App. Div. 1st Dep't 2014); *Tulino v. City of N.Y.*, 813 F. App'x 725, 727 n.2 (2d Cir. 2020) (summary order) (explaining the unsettled nature of the proper standard for NYCHRL and NYSHRL for constructive discharge claims).  "Because [BLP] did not present this argument [as to whether Ms. Syeed stated a claim for constructive discharge if New York law applies], it is waived."  *Gonzalez v. City of N.Y.*, 442 F. Supp. 3d 665, 690 (S.D.N.Y. 2020), *aff'd*, 2021 WL 438894 (2d Cir. Feb. 9, 2021) (Woods, J.) (summary order).  Further, while the constructive discharge claim may take into account the totality of the circumstances, including the refusal to hire Ms. Syeed for the New York-based positions, along with other aspects of her employment not physically located in New York, that merely places her constructive discharge claim as one of those "cases in which an employee's workplace is sufficiently difficult to pin down that her mere physical presence outside New York at the moment she is discriminated against should not control."  *Ghorpade v. MetLife, Inc.*, 2014 WL 7008954, at *3 (S.D.N.Y. Dec. 12, 2014).

[3] Upon further review of New York law, Plaintiff Syeed agrees that her claims of pay discrimination and hostile work environment did not have a New York impact in the way that the promotion discrimination and constructive discharge she experienced had a New York impact.

*Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (holding pre-limitations acts may be used "as background evidence in support of a timely claim"); *United Air Lines v. Evans*, 431 U.S. 553, 558 (1977) (holding discriminatory pre-limitations acts "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue . . .").

## III.     NDUGGA PROPERLY PLEADS HER CLAIMS

### A.     Ndugga Has Exhausted her Administrative Remedies and Pleads Timely Claims

#### 1.     Ndugga Exhausted her Administrative Remedies

Ms. Ndugga filed a timely charge of discrimination with the EEOC on November 13, 2020.  While she did not receive her notice of right to sue before filing her complaint, she subsequently received her notice on February 2, 2021, a copy of which is attached to the Clancy Declaration as Ex. 1.  Courts hold that such receipt of a right to sue letter after a Title VII suit began satisfies the exhaustion requirements under Title VII.  *See Kounitz v. Slaatten*, 901 F. Supp. 650, 655 (S.D.N.Y. 1995) (citing *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1059 n.4 (2d Cir. 1982), *vacated and remanded on other grounds*, 463 U.S. 1223 (1983)).

Moreover, Ms. Ndugga's EEOC charge exhausted not only her individual claims, but claims of those similarly situated, so that the proposed class may rely upon her EEOC charge. Her EEOC charge alleged that BLP maintained a system for promotion and compensation of producers, reporters, and editors that was intended to and had the effect of adversely affecting Ms. Ndugga and other female employees.  She identified a small group of male decisionmakers who made the relevant decisions for her and other women.  She identified common practices they used, such as relying on prior pay in setting starting salaries.  Her charge further described how these practices, and the history of a top-down sexist culture at BLP, directly impacted her. Ms. Ndugga's charge described practices and decisionmaking that applied to women throughout BLP, not just to her, and alleged those practices adversely affected women throughout

Bloomberg, not just herself; she explicitly alleged that her charge was on behalf of herself and those similarly situated. *See Holowecki v. Fed. Exp. Corp.*, 440 F.3d 558, 569 (2d Cir. 2006), *aff'd*, 552 U.S. 389 (2008) (holding charge which described allegedly discriminatory policies and practices, and alleged that the policies affected other workers, exhausted administrative remedies for others similarly situated). Ms. Ndugga's charge explicitly gave notice to the EEOC and BLP that the scope of her claims included class allegations, thus satisfying the Second Circuit's requirement for application of the single-filing rule to a large group of individuals. *Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 454 (S.D.N.Y. 2014) (citing *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1058 (2d Cir. 1990)).[4]

### 2. Plaintiff Ndugga's Pay Claims Are Timely

Contrary to Defendant's claim, Ms. Ndugga does not allege untimely claims of pay discrimination. She only seeks to include Title VII claims on or after January 18, 2020. She specifically alleges that compensation at BLP is impacted by differences in starting pay, because even if equal raises were given, the initial discrepancy would not be eliminated, a phenomenon known as "start low, stay low." SAC ¶¶ 36-37. Ms. Ndugga also alleges subsequent decisions furthered the pay disparities of which she complaints. ¶¶ 96-99. Even if the entirety of the pay disparity Ms. Ndugga experienced were due to the difference in starting pay, each week in which she received discriminatorily lower pay after January 18, 2020 provides a fresh violation of Title VII. *EEOC v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y. 2010), decision clarified on

---

[4] Even if she had not given such notice, the class claims "reasonably relate" to Ms. Ndugga's individual claims as described in her EEOC charge, thus, her charge serves to exhaust class claims as well as her individual claims. *Barrett*, 39 F. Supp. 3d at 454 (quoting *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 83 (2d Cir. 2001)) (holding a claim is "reasonably related" when "the conduct complained of would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination.").

reconsideration (Dec. 2, 2010) (finding timely "claims based on compensation decisions that took place prior to [300 days before charge filed], as long as the Claimant remained employed by Bloomberg and received a paycheck impacted by that previous decision on or after that date."). Indeed, *Butterfield-Bajinan v. City of N.Y.*, 2017 WL 4045175, at *4 (S.D.N.Y. Sept. 11, 2017), the case relied upon by BLP, reached the same conclusion.

B.     Plaintiff Ndugga States a Claim for Disparate Treatment

To plead the intent necessary for a disparate treatment claim under Title VII, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). Under the NYCHRL and the NYSHRL,[5] "the plaintiff need only show differential treatment—that she is treated 'less well'— because of a discriminatory intent." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013). At the pleading stage, a plaintiff needs simply to provide enough facts to support a plausible inference of such differential treatment. *See Littlejohn*, 795 F.3d at 311. The SAC supports a minimal inference of discrimination through several means: by identifying similarly situated male comparators who were treated better than Ms. Ndugga as to pay and promotions, by showing that the rationale for denying her raises and promotions was unworthy of credence, and by showing that discrimination in such decisions was standard operating procedure at BLP.

---

[5] Courts have interpreted recent amendments to the NYSHRL to require compliance with the employment discrimination standards under the NYCHRL. *Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *19 n.13 (S.D.N.Y. Oct. 24, 2020) (Woods, J.); *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 109 (2d Cir. 2013) (describing the similar amendment to the NYCHRL). It is undisputed that the amended NYSHRL standard applies to all of Ms. Ndugga's pay claims that accrued on or after October 11, 2019. *See* Def. Mem. 14 n.9.

1.    Plaintiff Ndugga Plausibly Pleads Pay Discrimination Claims

Defendant's argument that Plaintiff Ndugga's pay discrimination claims should be dismissed for failure to identify a similarly situated comparator imposes the wrong standard and ignores the well-pled facts in the SAC.  *See* Def. Mem. 15-18.  One way to support an inference of discriminatory motivation is by showing that plaintiff was treated "less favorably than a similarly situated employee outside of her protected group."  *Littlejohn*, 795 F.3d at 312 (internal citations and brackets removed).  Defendant's argument that Plaintiff Ndugga must demonstrate that she was similarly situated in all material respects, would improperly require her to plead the elements of a prima facie case—a requirement the Supreme Court has squarely rejected. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511-12 (2002).  Indeed, this Court has questioned whether the non-precedential decisions that rely on *Littlejohn* to require a plaintiff to plead facts showing the comparators are similar in all material respects improperly impose a higher standard than required under *Swierkiewicz*.  *Nguedi v. Fed. Rsrv. Bank of N.Y.*, 2017 WL 5991757, at *7 (S.D.N.Y. Dec. 1, 2017) (Woods, J.).[6]  The Second Circuit has repeatedly clarified that a plaintiff need not plead a *prima facie* case of discrimination.  *E.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015).

Whether two employees are similarly situated is ordinarily a question of fact for the jury. *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003).  Because a principal purpose of

---

[6] Although this Court has quoted *Littlejohn* for the standard that comparators be similar in "all material respects," *Cardwell*, 2020 WL 6274826 at *21, this Court's more in-depth analysis of this issue that appears in *Nguedi* makes clear that any application of this standard should not require a plaintiff to plead a *prima facie* case of discrimination.  *Nguedi*, 2017 WL 5991757 at *6-7.  Further, the cases cited by Defendant, *Cardwell* and *Humphries*, rely on precedent from the summary judgment phase of litigation and apply an analysis that predates the Supreme Court's decision in *Swierkiewicz*.  *Cardwell*, 2020 WL 6274826 at *21; *Humphries v. City Univ. of N.Y.*, 2013 WL 6196561, at *6 (S.D.N.Y. Nov. 26, 2013).

discovery is to identify proper comparators, a court must not conclude prematurely that alleged comparators are improper. *See Vuona v. Merrill Lynch & Co.*, 2011 WL 5553709, at *4 (S.D.N.Y. Nov. 15, 2011) (granting discovery into personnel records of potential comparators). Such a conclusion is particularly improper at the pleading stage, where Ms. Ndugga has identified comparators and alleged facts showing they were similarly situated.

Plaintiff Ndugga has met her burden of pleading facts that support a minimal inference of discriminatory motivation. She alleges that "male producers who were hired out of the same internship program as Ms. Ndugga were paid a starting salary of $75,000" whereas she was paid a starting salary of $65,000 when she was hired as a producer out of the internship program. SAC ¶ 93-94. Defendant ignores these allegations when it argues that Ms. Ndugga "has not pled any tangible facts about the alleged comparators that could give rise to a plausible inference of discrimination with respect to her starting salary." Def. Mem. 17.

Plaintiff Ndugga also alleges that starting pay rates impact compensation throughout employees' careers at BLP, SAC ¶ 36. For example, after Ms. Ndugga worked for three years at BLP, her salary was $66,500, still less than the *starting* salaries of the male peers who were hired for same position out of the same internship program. *Id.* ¶¶ 37, 93, 94, 97. Further, Plaintiff Ndugga identifies 18 male colleagues who "performed similar job duties" but were paid more than she was paid. *Id.* ¶ 95. Although Defendant argues that three of these colleagues held higher positions than Ms. Ndugga, that leaves 15 male colleagues who performed similar job duties unaddressed. Def. Mem. 17. Defendant's only argument about these 15 comparators is that one of them, Brian Wall, also received a promotion at the time he received a raise. *Id.* at 18. Defendant's argument that Ms. Ndugga does not plausibly allege discriminatory intent because her comparator received a raise *and* a promotion (both of which Ms. Ndugga alleges are

discriminatory) defies logic.  Ms. Ndugga pleads additional facts supporting an inference of discriminatory motive: when she asked why she did not receive a raise despite her manager recommending she receive one, Mindy Massucci, Head of Global, falsely told Ms. Ndugga that BLP could not afford raises for her division, when it had given raises to her male peers, including Mr. Wall.  SAC ¶ 103.  *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000) (holding that a defendant's false explanation is probative of discriminatory motive).

Defendant relies on *Humphries v. City Univ. of New York*, 2013 WL 6196561 (S.D.N.Y. Nov. 26, 2013) to argue that Plaintiff Ndugga has not alleged enough details about her comparators.  Def. Mem. 16.  In contrast to *Humphries,* however, Ms. Ndugga alleges that Mr. Wall "began his employment at the same time as Ms. Ndugga for the same position, with similar education," SAC ¶ 103, in addition to performing similar job duties, ¶ 95.  Defendant's reliance on *Eng v. City of N.Y.*, 715 F. App'x 49 (2d Cir. 2017) (summary order), is also misplaced.  In *Eng*, the Court held that the plaintiff's allegations did not give rise to an inference of discrimination where the plaintiff alleged only that she, a 58-year old woman, was paid less than a "57-year old man, a 54-year old man, and a 41-year old woman."  *Id.* at 52.  Here, by contrast, Ms. Ndugga identifies at least 15 male comparators by name and alleges that they perform "similar job duties."  *Compare* SAC ¶ 95 *with Barrett*, 39 F. Supp. 3d at 431 (holding that "nine other Plaintiffs [who] simply allege 'upon information and belief' that an identified male, who performed a similar job, was paid more" had plausibly alleged disparate treatment).  She further alleges that male producers (the same position she held) hired out of the same internship program as her were paid more than she was paid.  *Compare* SAC ¶ 93-94 *with Barrett*, 39 F. Supp. 3d at 434 ("[T]he six Plaintiffs who identify a male comparator who held the same title have at least plausibly alleged that he performed similar work").  For one such comparator who she identifies

14

by name, Brian Wall, she also alleges that he had a similar educational background.  SAC ¶ 103.

These allegations are plainly sufficient to meet Plaintiffs Ndugga's burden.  *See Barrett*, 39 F.

Supp. 3d at 432-34; *Torre v. Charter Commc'ns*, 2020 WL 5982684, at *1 (S.D.N.Y Oct. 8,

2020) (facts supporting discriminatory pay claims were sufficient under Title VII, the NYSHRL,

and the  NYCHRL where they alleged that plaintiff earned "substantially less than other male

anchors" with "similar skill," "similar, or even less experience," and similar "roles and/or

responsibilities" to the plaintiff's "including anchoring a news program on NY1."); *Nguedi*, 2017

WL 5991757, at *8 (holding that African American plaintiff's allegation that White employees

with security clearances who worked in the same "area" as plaintiff were treated differently by

the same supervisor was sufficient to plead disparate treatment).

Ms. Ndugga alleges numerous other "bits and pieces of information" to provide a

"mosaic" that supports an inference of discrimination.  *See Soto v. Marist Coll.*, 2019 WL

2371713, *3 (S.D.N.Y. June 5, 2019).[7]  For example, she alleges that different assignment areas

carry different levels of prestige, which in turn affect pay and promotions and that, in contrast to

her male peers, she was assigned to cover less desirable topics and denied opportunities to

conduct live interviews.  SAC ¶¶ 29-30, 102, 109.  She alleges that the small group of decision-

makers responsible for all employment decisions harbored bias against women.  ¶¶ 16-17, 19,

---

[7] All of the allegations in this paragraph similarly support an inference of discriminatory animus for denying Ms. Ndugga promotions.  Defendant also argues that Ms. Ndugga does not state a claim for discrimination in evaluations.  However, Ms. Ndugga does not bring a separate cause of action alleging that her evaluations were an adverse employment action.  Rather, Plaintiffs describe Bloomberg's evaluation process in the context of demonstrating how pay and promotion decisions are controlled by the Editorial Management Committee.  Not only does the Editorial Management Committee have final decision-making authority over such decisions, it also has the ability, which it routinely exercises, to direct Team Leaders to alter their proposed evaluation ratings. SAC ¶ 40-42.  Plaintiffs allege that BLP uses these altered ratings to justify its pay and promotion decisions.  *Id.* at ¶ 41.

20, 22, 23, 110.  Ms. Ndugga alleges that these facts were part of a pattern or practice of discrimination, ¶¶ 18-26, 31-42, which is "highly relevant" to proving her individual claims of disparate treatment.  *Hagan v. City of N.Y.*, 39 F. Supp. 3d 481, 497 (S.D.N.Y. 2014) (citing *Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012)).[8]  Thus, the facts alleged to demonstrate a pattern or practice of discrimination should also be considered in concluding that her individual claims are supported by adequate allegations.

### 2.   Plaintiff Ndugga Plausibly Pleads Failure to Promote

Defendant argues that Plaintiff Ndugga's failure to promote claims should be dismissed because she did not identify a specific position for which she applied.  Def. Mem. 19.  That standard is inappropriate at the pleadings stage where a plaintiff need only provide sufficient factual allegations to make her claims plausible, *Twombly*, 550 U.S. at 570, and need not plead all elements of a *prima facie* case to survive a motion to dismiss.  *Swierkiewicz*, 534 U.S. at 515.  While the Second Circuit has at times required plaintiffs to plead that they applied for a specific position, *e.g. Brown v. Coach Stores, Inc.*, 163 F.3d 706, 710 (2d Cir. 1998), such a requirement is at odds with the Supreme Court's holding in *Swierkiewicz*.  *See Barrett*, 39 F. Supp. 3d at 441-42 ("At a minimum, *Swierkiewicz* calls into question the reasoning in *Brown*, if it does not abrogate that case's holding entirely.").  Moreover, there are exceptions to the general rule that a plaintiff must identify a specific position that she applied to.  *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 129 (2d Cir. 2004) ("[I]f an employee expresses to the employer an interest in promotion to a particular class of positions, that general expression of interest may satisfy the

---

[8] If Plaintiff Ndugga succeeds in establishing systemic disparate treatment, she would receive the benefit of the resulting presumption that decisions made about her pay and promotions were infected with the same bias.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 359 (1977).

requirement that the employee apply for the position."); *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004) (explaining that "the law recognizes that 'the facts of a particular case' may sometimes make 'a specific application a quixotic requirement,'" although finding that the exception did not apply on the record presented) (citing *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998)); *Woods-Early v. Corning Inc.*, 330 F.R.D. 117, 126 (W.D.N.Y. 2019) (holding "[t]he mere fact that Plaintiff does not identify a particular promotion that Defendant denied her is not fatal to her claim," where plaintiff alleged that executive group assigned evaluations in a manner that disproportionately made African Americans ineligible for promotion).  Because the determination of when a plaintiff need not identify a specific position to which she applied depends on the totality of the circumstances, it is premature to decide this issue at the motion to dismiss stage.  *See, e.g.*, *Stewart v. City of N.Y.*, 2012 WL 2849779, at *6 (S.D.N.Y. July 10, 2012) (holding that where plaintiff complained about not being promoted when he had sufficiently indicated an interest in being promoted, it would be "inappropriate" to dismiss his claim prematurely before developing a factual record).

Consistent with her burden at the pleading stage, Plaintiff Ndugga has alleged facts that make plausible her claim that she was denied promotions because of her sex and race.  She alleges that Defendant had a practice of limiting promotion opportunities for women and people of color to "diversity slots," leaving other positions effectively reserved for white men.  SAC ¶ 32.  She describes a specific instance she was denied advancement: she expressed interest in a position under discussion focused on race and identity, but the position was not created because her superiors believed that she already performed the extra work required for such a role—albeit without any corresponding raise or change in title.  *See id.* at ¶ 104.  Shortly before Mr. Wall received a promotion and raise, Plaintiff Ndugga received a positive performance evaluation and

was recommended for a raise.  *Id.* at ¶ 103.  Nonetheless, she did not receive the promotion that Mr. Wall did, nor the promotion to fill a new position focusing on race that she requested.

      C.    <u>Ndugga Properly Pled a Claim for Hostile Work Environment</u>

Contrary to Defendant's assertions, Def. Mem. 22-26, Plaintiff Ndugga properly pled claims for hostile work environment because she alleged facts supporting an inference that she was treated less well than her peers, because of her race and sex—no more is required under the NYCHRL and the NYSHRL.[9]  *Mihalik*, 715 F.3d at 110. The differential treatment need not be severe or pervasive and need not rise to the level of a tangible employment action.  *Id.*  While a defendant may assert that a reasonable person would find the challenged conduct no more than "petty slights and trivial inconveniences," "that is an affirmative defense unavailable on a motion to dismiss."  *Sanderson v. Leg Apparel LLC*, 2020 WL 7342742, at *8 (S.D.N.Y. Dec. 14, 2020) (Woods, J.).

In support of her hostile work environment claims, Plaintiff Ndugga describes a series of repeated discriminatory conduct occurring over more than a year, which cannot be viewed in isolation.  *Mihalik*, 715 F.3d at 111 (requiring courts to consider the context surrounding the challenged conduct).  She describes numerous instances in which she was treated less well than her white male peers: she was paid less than her male peers and denied opportunities for promotions, SAC ¶¶ 34, 37, 93, 94, 97, 104; she was denied benefits such as remote-work

---

    [9] As explained above, the NYSHRL is interpreted consistently with the NYCHRL for all claims accrued on or after October 11, 2019.  *See supra* n.5.  Because Plaintiff Ndugga's hostile work environment claims involve repeated conduct, and the vast majority of the misconduct took place in 2020, *see* SAC ¶¶ 102-110 (describing events in chronological order), the amended standard should apply here.  *See McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) ("[C]onsideration of the entire scope of a hostile work environment claim, including behavior alleged outside the statutory time period, is permissible for the purposes of assessing liability, so long as an act contributing to that hostile environment takes place within the statutory time period.").

resources and language classes that were afforded to male colleagues, ¶ 100; she was denied

opportunities and received less desirable assignments than her male peers on a continued basis,

¶¶ 102, 109; and she was continually ignored, isolated from meetings, and left off of emails

related to her work, ¶ 108. *See Emamian v. Rockefeller Univ.*, 823 F. App'x 40, 45–46 (2d Cir.

2020) (summary order) (plaintiff met NYCHRL standard where she was paid a lower salary,

subjected to harsher criticism, and denied an office and resources); *see also Encarnacion v.

Isabella Geriatric Ctr., Inc.*, 2014 WL 7008946, at *11 (S.D.N.Y. Dec. 12, 2014) (Woods, J.)

(frequent verbal reprimands, unfavorable assignments, and refusal to meet with plaintiff, among

other complaints, necessarily met lower NYCHRL standard where they were sufficiently

pervasive under Title VII).  While "a single comment" may be actionable if it signals the

employers' views about people within the plaintiffs' protected category, *Mihalik*, 715 F.3d at

111, the SAC exceeds that standard: Ms. Ndugga alleges that she was *repeatedly* subjected to

derogatory racial and gendered remarks, SAC ¶¶ 105, 108, 110; that a White supervisor, David

Meyers, physically threatened her after she questioned a racist editorial decision,[10] ¶ 106; and

that afterwards Mr. Meyers conveyed to his supervisor a fabricated account of the altercation that

---

[10] Defendant blatantly misrepresents these allegations when it argues that she alleges only
that a male colleague "'yelled' at her on one occasion after she questioned him about an image
used in a news production."  Def. Mem. 25.  This characterization omits key facts that
demonstrate the incident's severity.  Ms. Ndugga raised concerns about a racist editorial choice:
in a news segment on marathons throughout the world, Ms. Ndugga's colleagues chose images
of actual marathons for countries with predominantly White populations, and for Uganda, which
has a predominantly Black population, chose an image of a "young White woman holding
seemingly impoverished Black Ugandan children."  SAC ¶ 106.  When Ms. Ndugga alerted Mr.
Meyers of the inappropriateness of this choice, he "got really angry and yelled at Ms. Ndugga,
throwing his headphones in her direction, standing over her and demanding that she step outside
the room and talk to him privately" and "kept pushing her to leave the room with him."  *Id.*
Notably, the threat to "step outside" is often associated with physical violence, and Ms. Ndugga
understood is as such.  *See id.* (describing Mr. Meyers' conduct as "aggression" and alleging that
she did not feel safe and was in fear of Mr. Meyers).

employed racist and sexist tropes about Ms. Ndugga.  ¶ 107.  *See Mikolaenko v. N.Y. Univ.*, 2017 WL 4174928, at *2 (S.D.N.Y. Sept. 7, 2017) (plaintiff properly pled hostile work environment claim based on national origin under the NYCHRL where her supervisor used an offensive slur to refer to Russians on one occasion, moved the plaintiff to an inferior office for no reason, and reportedly had fired other staff because they were Russian).

Because the NYCHRL is "not a general civility code," a plaintiff must plausibly allege that the "the conduct is caused by a discriminatory motive."  *Mihalik*, 715 F.3d at 110.  Plaintiff Ndugga alleges such animus based on her race and sex.  SAC ¶¶ 146, 151.  Courts recognize that discriminatory animus can be intersectional—combining more than one protected status—and that "where two bases of discrimination exist, the two grounds cannot be neatly reduced to distinct components."  *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010). The Court should consider the combined allegations of hostile work environment based on Ms. Ndugga's race and sex.

Ms. Ndugga supports her hostile environment claims with numerous instances of differential treatment based on her sex, described *supra* at 13-15.  SAC ¶¶ 100, 102, 109.  She alleges numerous incidents connected to her identity as a Black woman.  She was asked to take on additional work to "guide the team" on issues of race and gender, called on to recount trauma she experienced as a Black woman, subjected to her supervisors frequent racially derogatory and insensitive comments directed at Ms. Ndugga and other Black team members, and after she raised concerns about a racist editorial choice, portrayed by her supervisor according to the "angry black woman" stereotype, and then ostracized for months.  *Id.* at ¶¶ 105-10.

Defendant misrepresents the pleadings when it argues that Ms. Ndugga had only a subjective perception and did not "allege any facts to explain" her belief that she was depicted as

an "angry black woman."  Def. Mem. 25-26.  In fact, Ms. Ndugga alleged that, *in the context of Ms. Ndugga reporting a racist editorial choice,* Mr. Meyers falsely claimed that she raised her voice and was aggressive.  SAC ¶ 107.  Other judges in this Court recognize that facially neutral terms that evoke racist stereotypes can show discriminatory animus.  *See, e.g.*, *Craven v. City of N.Y.*, 2020 WL 2765694, at *2 (S.D.N.Y. May 28, 2020) (Furman, J.) (allegation that defendant "stereotyped and branded [plaintiff] an 'angry black woman'" was among facts showing discriminatory animus).  Defendant relies on *Humphries*, to argue that evoking the stereotype of an "angry black woman" is insufficient alone to plead animus based on race and/or gender.  Def. Mem. 26.  Yet, even in *Humphries*, the Court acknowledged that such stereotyping may support a claim for discrimination if combined with other allegations of discriminatory animus, as Ms. Ndugga has done here.  *Humphries*, 2013 WL 6196561, at *9.

In addition to the allegations of race- and gender-based animus described above, Ms. Ndugga further alleges that her mistreatment occurred within a culture at BLP that sanctioned racism and sexism such that it was standard operating procedure.  SAC ¶¶ 18-26.  When considered together, the allegations are more than sufficient to infer that the mistreatment that formed Ms. Ndugga's hostile work environment was because of her race and gender.  *See Osborne v. Moody's Inv'rs Serv., Inc.*, 2018 WL 1441392, at *5 (S.D.N.Y. Mar. 22, 2018) (allegations of "widespread institutionalized discrimination against [plaintiff] and other women" showed discriminatory animus under the NYCHRL).

D.   Ndugga States a Claim for Retaliation

Plaintiff Ndugga sufficiently alleges that BLP retaliated against her in violation of Title VII.  To succeed at this stage of the litigation, she need only allege facts to plausibly support that "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the

protected activity and the adverse action." *Patane v. Clark*, 508 F.3d 106, 115 (2d Cir. 2007).

"Protected activity" encompasses "participation" and "opposition." *Littlejohn*, 795 F.3d at 316. The participation clause covers only involvement with formal EEOC proceedings.[11] *Id.* The opposition clause protects any "informal protests of discrimination," including making complaints to management and objecting to discrimination in the industry in general. *Matima v. Celli*, 228 F.3d 68, 78-79 (2d Cir. 2000). Indeed, to qualify under the opposition clause, the plaintiff need not even establish the conduct she opposed was in fact a Title VII violation—she "need only prove that she was acting under a good faith belief that the activity was of the kind covered by the statute." *Cosgrove v. Sears, Roebuck & Co.*, 9 F.3d 1033, 1039 (2d Cir. 1993).

Plaintiff Ndugga reported race- and sex-based discrimination to supervisors or human resources multiple times. First, she reported that she was denied a raise and bonus by the all-male Editorial Management Committee and denied benefits made available to her male peers. SAC ¶¶ 99-101. Second, after Mr. Meyers responded in a highly aggressive manner to Ms. Ndugga pointing out racism in a video, she reported the incident to Ms. Massucci. ¶¶ 106-08. This report explicitly addressed racism in BLP's coverage generally and in how Ms. Ndugga was treated as a Black woman at the company specifically. As Ms. Ndugga alleges, Mr. Meyers depicted her as an "angry Black woman." ¶ 107. She also repeatedly reported to Ms. Massucci that, following this incident, Mr. Meyers was retaliating against her. ¶ 108. Additionally, after

---

[11] BLP argues that, because Ms. Ndugga filed her EEOC charge the same day as the SAC was filed, it cannot be the basis for any retaliation claims. Def. Mem. at 32. However, claims that were not asserted in the charge may be pursued so long as they are "reasonably related." *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999). And, "alleging retaliation … for filing the underlying claim of discrimination" is reasonably related. *Id.* Ms. Ndugga thus may pursue claims based on retaliation BLP inflicts upon her as a result of filing her charge. The SAC does not plead retaliation ended, and Ms. Ndugga experienced retaliation, consistent with the allegations of her complaint, following the filling of her EEOC charge.

an on-air interview she was scheduled to host about the death of George Floyd was cancelled, Ms. Ndugga again reported to Ms. Massucci that she was being treated differently than her male colleagues.  ¶ 109.  Finally, on a conference call with the Editorial Management Committee, Ms. Ndugga reported discrimination at BLP, including the pay gap, the need to hold managers responsible for discriminatory acts, and racial disparities in BLP's reporting.  ¶ 110; *see Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (noting that "protesting against discrimination by industry or by society in general" is protected under the opposition clause).

As a result of speaking out against discrimination, Plaintiff Ndugga has suffered numerous negative consequences.  She need only show that the actions were "materially adverse," meaning they "could well dissuade a reasonable worker from making or supporting a charge of discrimination."  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). The standard is described in "general terms" by design, as the significance of a particular act is context-specific.  *Id.* at 69.  Thus, deciding whether conduct constituted an adverse employment action is often "better left for summary judgment."  *Flores v. N.Y. City Human Res. Admin.*, 2011 WL 3611340, at *10 (S.D.N.Y. Aug. 16, 2011).

Following her first report to human resources, instead of being consulted about what she wanted to cover like her male peers, Plaintiff Ndugga was assigned "scraps"—subjects no one else wanted that "provided fewer opportunities for career advancement."  SAC ¶ 102.  "[I]n the unique circumstances of a broadcast news channel," actions such as "reducing [a reporter's] on-air time, and depriving her of services needed to produce a quality news show constitute an adverse employment action."  *Torre*, 2020 WL 5982684 at *5.  Notably, *Torre* applied a higher standard—an "adverse employment action" needed for a disparate treatment claim—than applies here.  *See Vega*, 801 F.3d at 90.

After Ms. Ndugga's report of Meyers' behavior related to the marathon video, the retaliation intensified.  As explained in detail *supra* at 19 n.10, she was pulled from a live interview she was scheduled to conduct, repeatedly "isolated … from meetings," excluded from emails she "needed for her job," and only acknowledged by Meyers when he was berating her. SAC ¶ 108-09.  Thus, Ms. Ndugga is not alleging isolated, "petty" workplace slights.  "The social environment in a workplace can prove to be a powerful motivator; fear of *employer-sponsored isolation* might well influence an employee's decision whether to make or support a charge of discrimination."  *Aslin v. Univ. of Rochester*, 2019 WL 4112130, at *5 (W.D.N.Y. Aug. 28, 2019) (emphasis added); *compare id. with Danieu v. Teamsters Local 264*, 2011 WL 1259839, at *9 (W.D.N.Y. Mar. 31, 2011) (holding that "without any facts showing Local 264 actively supported the retaliatory acts [*committed by co-workers who were union members*], it cannot be held liable for the retaliation").  Further, unwarranted criticism and negative attention from supervisors, as Ms. Ndugga received, "may diminish future employment prospects" by damaging the employee's reputation.  *Aslin*, 2019 WL 4112130, at *5.  Additionally, the actions must be assessed in their entirety; while being left off emails alone might not necessarily be enough, *see Miksic v. TD Ameritrade Holding Corp.*, 2013 WL 1803956, at *7 (S.D.N.Y. Mar. 7, 2013), when "placed within many other allegedly adverse activities," such allegations can suffice to meet even the more rigorous standard for an adverse employment action, *id.* at *4.

Finally, causation can be shown where the protected activity was followed closely by the discriminatory treatment.  *Littlejohn*, 795 F.3d at 319.  Ms. Ndugga alleges that Meyers began retaliating against her the morning after she reported his behavior.  SAC ¶ 107.  Likewise, Ms. Ndugga alleges that the other incidents of retaliation all began only *after* her reports of discrimination.  *See* ¶¶ 102, 108.  There is no "bright line" for how close-in-time an action must

have been to a protected activity in order to be able to infer discrimination indirectly.  *Littlejohn*, 795 F.3d at 319-20; *see also Gorzynski*, 596 F.3d at 110 (explaining a five-month gap is not too long).  Ms. Ndugga's allegations of consistent retaliatory actions that escalated with each report plausibly suggest causation.

E.    Plaintiffs Properly Pled a Claim for Disparate Impact

Plaintiffs' allegations that BLP's facially neutral practices have an adverse impact on them and other female employees are more than sufficient under Title VII and the NYSHRL.[12] At this early stage of the proceeding, a plaintiff simply must "assert [enough] nonconclusory factual matter … to nudge [her] claim[] across the line from conceivable to plausible."  *Mandala*, 975 F.3d at 209 (alterations in original; quotation omitted).  Claims satisfy the plausibility standard if they "'raise a reasonable expectation that discovery will reveal evidence' of the wrongdoing alleged, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Twombly*, 550 U.S. at 570).  Thus, for disparate impact claims to survive, Plaintiffs need only plead facts which raise an expectation that, following discovery, they can put forth evidence of: 1) a facially neutral policy or practice, 2) the existence of a disparity between her protected

---

[12] Claims brought under the NYSHRL for harms inflicted by BLP's practices prior to October 11, 2019 are analyzed "identically" to Title VII claims.  *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999), *overruled on other grounds by Meacham v. Knolls Atomic Power Lab.*, 461 F.3d 134 (2d Cir. 2006).  Claims that arose after that date are interpreted consistent with the NYCHRL.  *Cardwell*, 2020 WL 6274826, at *19 n.13.  Thus, the majority of Ms. Ndugga's claims—including most of the instances in which the Editorial Management Committee denied her a raise or promotion—must be assessed under the NYCHRL's "uniquely broad and remedial purposes."  *Williams v. N.Y. City Hous. Auth.*, 61 A.D.3d 62, 66 (N.Y. App. Div. 1st Dep't 2009).  The basic standards governing NYCHRL and Title VII, however, are consistent.  *See, e.g.*, *Teasdale v. N.Y. City Fire Dep't, FDNY*, 574 F. App'x 50, 51-52 (2d Cir. 2014).  Ms. Ndugga thus does not address her claims separately, beyond highlighting that the state claims are to be construed "more liberally" than those brought under Title VII.  *Williams*, 61 A.D.3d at 66.

group and other employees, and 3) a causal relationship between the two.  *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 160 (2d Cir. 2001).

       1.    <u>Plaintiffs Identified Facially Neutral Practices</u>

Plaintiffs identify practices that, while neutral on their face, have an adverse impact on female employees.  First, Plaintiffs allege that an "all-male Editorial Management Committee controls … all employment decisions," including decisions on hiring, promotion, pay raises, bonuses and final evaluations.  SAC ¶¶ 14, 28, 40, 42.  This committee is small, works "closely together," and is "steeped in a common culture."  ¶ 122.  While lower level managers may make recommendations or discuss pay and promotions with putative class members, all ultimate decisions are made by the Editorial Management Committee.  ¶ 42.  Plaintiffs further allege that the Editorial Management Committee is directly involved with employee evaluations and regularly "dictates which employees should have their ratings reduced."  ¶ 40.  These evaluations are then used to deny or reduce bonuses, pay increases, and promotions.  *Id.*

Granting a small group such wide discretion over employment decisions can constitute a sufficiently specific practice.  For example, in *Rodriguez v. Town of Ramapo*, the plaintiffs alleged that their employer had "no objective performance rating system," which allowed for "subjective assessments by Caucasian managers" that were "disproportionately unfavorable to minorities."  412 F. Supp. 3d 412, 439 (S.D.N.Y. 2019).  The Court held that this "unchecked discretion" which led to "minority employees [being] passed over for promotions" was a plausible facially neutral practice.  *Id.*  This outcome reflects the reality that, when supervisors are given broad discretion, the decisions can "easily" be influenced by "subconscious stereotypes and prejudices."  *Gordon v. City of N.Y.*, 2016 WL 4618969, at *6 (S.D.N.Y. Sept. 2, 2016) (granting motion to amend complaint to add disparate impact claims related to discretionary practices such as giving managers authority to raise and lower evaluation scores based on "non-

articulated criteria") (citing *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 990 (1988)).

Indeed, where plaintiff alleges a small group of senior management made discretionary decisions

which has an adverse impact, a common mode of exercising discretion can be established, and a

specific employment practice has been identified. *Woods-Early v. Corning Inc.*, 330 F.R.D. 117,

124 (W.D.N.Y. 2019). Moreover, there is "nothing facially implausible with a claim that a small

group of executives controls the performance evaluation process for professional employees and

sets final ratings with an eye towards limiting the pool of candidates for promotions and other

employee benefits." *Id.* at 125.

Plaintiffs further allege that BLP's practices pertaining to starting salaries—specifically,

"decid[ing] what salary is authorized when deciding to extend job offers … largely based upon

prior pay"—have an adverse impact on female employees throughout their entire tenure at BLP.

SAC ¶¶ 33-36. Reliance on prior pay to set employee salaries, resulting in women being paid

less than men, as alleged here (¶¶ 35-36), has long been recognized as a facially neutral practice

which may have an adverse impact.[13] *Cf. Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520,

526 (2d Cir. 1992) (holding that the "employer bears the burden of proving that a bona fide

---

[13] BLP argues Ms. Ndugga was not impacted by the company's disparate starting pay practices. Def. Mem. at 27. However, as she alleges in the SAC, her starting pay was $10,000 less than male producers hired from the same program. SAC ¶ 37. How much of that differential is due to differences in pay at prior jobs Ms. Ndugga held before being hired by BLP, and how much is due to the Editorial Management Committee's reliance on more subjective criteria may not be resolved without discovery, but Ms. Ndugga has pled adequate facts to allege she was impacted by each challenged practice, and plaintiffs are permitted to plead in the alternative. *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999). Ms. Ndugga's salary differential demonstrates she "personally suffered some actual … injury as a result of the putatively illegal conduct of the defendant." *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal quotation omitted). BLP's conduct still implicates the "same set of concerns": that the Editorial Management Committee is using discriminatory metrics to set starting pay for female employees lower than for males, including both reliance on prior pay and use of subjective factors. *Id.*

business-related reason exists for using" an ostensibly gender-neutral factor, such as prior salary, if it "results in a wage differential"); *Rizo v. Yovino*, 950 F.3d 1217, 1219-20 (9th Cir.), *cert. denied*, 141 S. Ct. 189 (2020) ("[A]n employee's prior pay cannot serve as an affirmative defense to a prima facie showing of an EPA violation.").

BLP nonetheless argues that Plaintiffs allegations about BLP's "practices for promotions, evaluations and compensation as a whole" fail to adequately identify a "*specific* employment practice." Def. Mem. 27. Such an argument fails not only for the reasons stated above, but also because Title VII explicitly provides that plaintiffs may "focus on an employer's overall decision-making process as the cause of a disparate impact if the plaintiff can show that the elements of the employer's decision-making process are not capable of separation for analysis." *Smith*, 196 F.3d at 368. Thus, to the extent that the Court may conclude that it cannot determine the specific impact certain of the practices instituted by the Editorial Management Committee described above—such as their role in altering evaluation scores or setting base pay—that does not preclude the claims.[14] As Plaintiffs allege in the SAC, BLP "has failed to create or maintain the data that would allow analysis of the impact of each of these policies and practices separately," thus making it appropriate for the Court to consider those practices as a whole. SAC ¶ 123 (citing 42 U.S.C. § 2000e-2(k)(1)(B)(i)).

---

[14] The cases BLP relies upon are inapposite. Def. Mem. 27-28. Those cases involve plaintiffs who failed to identify *any* practice whatsoever. *See, e.g.*, *Janneh v. Regal Entm't Grp.*, 2009 WL 2922830, at *13 (N.D.N.Y. Sept. 8, 2009) (noting that Plaintiff did "nothing more than point to the racial imbalance in Regal's work force and then, conclude that there must be a policy or practice that has been the causative factor"); *Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 277 (S.D.N.Y. 2001) (noting that plaintiff failed to identify *any* practice in her complaint, and in her briefing, argued that defendant did not post job offerings but failed to plausibly allege this was actually a regular practice). Unlike those cases, Plaintiff Ndugga identified a precise practice—putting exclusive authority over decisions into the hands of the Editorial Management Committee—that cannot easily be broken up into its component parts.

2.      Plaintiffs Adequately Pled Adverse Impact and Causation

The SAC contains numerous allegations that raise an expectation that, following

discovery, Plaintiffs will be able to prove the identified practices have an adverse impact on

female employees and that there is a causal link between the two.  Specifically, Plaintiffs allege

there are disparities in compensation, such that women are paid significantly less than their male

peers—an estimated 20% less—and that women are denied advancement to senior positions,

having been nearly eliminated from senior management.  SAC ¶¶ 19, 38.  Plaintiffs allege that,

of BLP's approximately 2,700 Reporters, Producers, and Editors, only 1,000 are women (¶ 16),

that male reporters "frequently" receive starting salaries $20,000 or more above their female

peers (¶ 35-36), that a bureau chief confirmed the existence of disparities in pay (¶ 38), that a

current HR employee confirmed women were barred from advancement (¶ 87), that in addition

to the named plaintiffs, other women employees complained of pay disparities and denial of

promotions (¶¶ 31, 38), and that comprehensive pay data that BLP was required to make public

in the UK confirms such disparities (¶ 39).  These well-pled allegations of the complaint must be

taken as true, and inferences therefrom drawn in Plaintiffs' favor.  *Menaker*, 935 F.3d at 30.

Despite these specific allegations of disparities among similarly situated employees,

corroborated by senior managers, an HR employee, and Defendant's self-reported data,

Defendant posits that, even at the pleading stage, more is required: the sort of statistical analysis

relied upon to survive summary judgment and ultimately make out a *prima facie* case at trial.

Def. Mem. 28.  Not so.

Defendant relies on *Mandala*, which analyzed whether allegations of overall national

disparities in arrests were sufficient to sustain a claim which depended on the existence of

disparities in arrests among individuals qualified for the IT jobs at issue.  *Mandala*, 975 F.3d at

211-12.  The *Mandala* plaintiffs did not make allegations specific to the company at issue or the

qualified applicant pool. *Id.* at 211; *see also Mandala* Compl. ¶¶ 6, 52-53, ECF No. 1, 2019 WL

3237361 (W.D.N.Y. Aug. 15, 2018). The Second Circuit held that, because the job at issue had

specific training and educational requirements, it was "error for Plaintiffs to simply presume that

population-level statistics will accurately describe subgroups of that population." *Mandala*, 975

F.3d at 211. Because plaintiffs made no allegations that supported the claim that the national

statistics were representative of the disparities that would be found among the qualified applicant

pool, their case was dismissed. *Id.* at 212. The Court summarized its holding: "In short, if a

Title VII plaintiff *intends to rely on national statistics to plead a disparate impact claim*, she

must explain why those statistics can plausibly be expected to hold true for the qualified

applicant pool in question." *Id.* (emphasis added).

　　*Mandala*'s holding is thus narrow and unremarkable—the Second Circuit has long held

that any statistics must "focus on the disparity between appropriate comparator groups." *Id.* at

210; *see also, e.g.*, *Chin*, 685 F.3d at 152 (noting that "plaintiffs must identify the correct

population for analysis"). Because the *Mandala* plaintiffs' only allegation of adverse impact and

causation was the "conclusory and unsupported assertion that these figures are so stark that they

must hold true for this (or any) segment of the population," the claim failed. *Mandala*, 975 F.3d.

at 211. Nothing suggests, however, that in reaching that conclusion, the Court intended to

overturn equally well-settled precedent that there can be "cases where statistics are not

necessary" and plaintiffs can use "qualitative comparison[s]" to "support[] the disparate impact

theory." *Tsombanidis v. West Haven Fire Dep't*, 352 F.3d 565, 577 (2d Cir. 2003), *superseded

on other grounds by Mhany Mgmt., Inc. v. Cty. of Nassau*, 819 F.3d 581 (2d Cir. 2016).[15] When

---

[15] Although *Tsombanidis* is a Fair Housing Act case, it relies on Title VII standards to assess disparate impact claims. *Id.* at 575.

*Mandala* noted that plaintiffs "typically" rely on statistics to "nudge" their disparate impact claim from "conceivable to plausible," 975 F.3d at 209, it cited three cases, all of which addressed the evidence presented post-discovery, not the details pled in a complaint.  Indeed, there is broad consensus in district courts within this Circuit that statistics are not necessary at the pleadings stage to state a claim for disparate impact.  *See Gittens-Bridges v. City of N.Y.*, 2020 WL 3100213, at *16 (S.D.N.Y. June 11, 2020) (holding that, even though plaintiff provided no statistics, her "anecdotal" examples were sufficient to state a claim); *Martin v. Coinmach Corp.*, 2016 WL 6996182, at *7 (S.D.N.Y. Nov. 29, 2016) ("In order to survive a motion to dismiss, however, plaintiffs need not provide statistical support for their claims[.]"); *Barrett*, 39 F. Supp. 3d at 436 (rejecting Defendants' argument that plaintiffs could not state a plausible claim without alleging statistics); *Jenkins v. N.Y. City Transit Auth.*, 646 F. Supp. 2d 464, 469 (S.D.N.Y. 2009) ("To the extent the defendants' argument is that a plaintiff must provide statistical support for a disparate impact claim in order to survive a motion to dismiss, that argument is incorrect.").  The allegations of the SAC are specific to the putative class members and their similarly situated male peers, they do not rely upon nationwide or even industry-wide patterns, but point to disparities between men and women reporters, editors and producers within Bloomberg Media.

The Supreme Court has specifically rejected applying a heightened pleading standard to employment discrimination cases and emphasized that the *prima facie* case is an *evidentiary* standard, not a pleading burden.  *Swierkiewicz*, 534 U.S. at 510; *Chin*, 768 F.3d at 254.[16]  At this stage in the proceeding, plaintiffs simply must be able to "nudge" their claim from "conceivable

---

[16] *Mandala* cannot be read to establish a contrary rule, since a panel is bound by the decisions of prior panels unless those opinions are overruled by an *en banc* panel of the Second Circuit or by the Supreme Court.  *In re Zarnel*, 619 F.3d 156, 168 (2d Cir. 2010).

to plausible." *Mandala*, 975 F.3d at 209.  Then, plaintiffs have access to "liberal discovery

rules" that give them "broad access to employers' records in an effort to document their claims."

*Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 657 (1989).  It is particularly inappropriate to

require a plaintiff to produce detailed statistics before she has the benefit of discovery in a case

like this, where the type of information Plaintiffs need in order to conduct a statistical analysis—

such as data pertaining to employees' starting salaries, raises, bonuses, and job titles or levels—

is uniquely within BLP's control.  *See Jenkins*, 646 F. Supp. 2d at 469.[17]

Further, Plaintiffs tie all of the adverse impacts detailed to the identified facially neutral

practices.  *See, e.g.*, SAC ¶ 34 (alleging that the Editorial Management Committee is the

decisionmaker behind offering more money to male reporters and editors but not to female ones);

¶¶ 40-41 (alleging that the Editorial Management Committee's ability to unilaterally reduce

employees' ratings impacts bonuses, pay increases, and promotions); ¶ 42 (alleging that

decisions "on compensation, including pay raises and bonuses, are made by the Editorial

Management Committee"); ¶ 99 (alleging that Ms. Ndugga was denied a pay raise by the

Editorial Management Committee despite her supervisor recommending her for one).  Thus,

Plaintiffs readily provide information to suggest that discovery will provide evidence of a causal

connection between the practices and the adverse impact, which is more than sufficient.

---

[17] The cases BLP cites as examples of when a complaint fails to establish that the practices had an adverse impact, MTD at 29, are readily distinguishable.  *See, e.g.*, *Motta v. Glob. Contract Servs. Inc.*, 2016 WL 2642229, at *2 (S.D.N.Y. May 4, 2016), *aff'd sub nom. Motta v. Glob. Contact Servs., Inc.*, 675 F. App'x 98 (2d Cir. 2017) (rejecting claim where complaint failed to "allege that Plaintiffs are paid less than their white or male counterparts" at the company); *Samuels v. Agency*, 2013 WL 417770, at *1 (N.Y. Sup. Ct. Jan. 14, 2013) (denying claim because plaintiff failed to allege "*any* comparison regarding" the proportion of African Americans in the screenplay industry specifically) (emphasis added); *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) (dismissing claim where plaintiff failed to connect "general statistics" to "*any* Coach policy") (emphasis added).

IV.    **CLASS CLAIMS SURVIVE, BECAUSE NDUGGA'S PAY, PROMOTION, AND DISPARATE IMPACT CLAIMS SURVIVE**

Defendant's sole argument for striking class claims is that none of the individual claims of Plaintiffs Syeed or Ndugga survive, and thus, absent any named plaintiff with a claim, the class claims must also be dismissed.  Def. Mem. 33-34.  Defendant's argument implicitly concedes that if either Plaintiff's claim of pay or promotion discrimination survives, the corresponding class claims also survive.  For the reasons set forth above, both Plaintiffs' claims of discrimination survive, and thus the class claims do as well.

V.    **PLAINTIFFS PRESERVED THEIR JURY DEMAND**

Finally, BLP's claim that Plaintiffs waived their right to demand a jury trial flatly contradicts the pleadings.  This Court ordered, pursuant to Fed. R. Civ. P. 81(c)(3), that any jury demands must be "served and filed no later than September 25, 2020."  Rule 81 provides for such an order in removal cases because state courts differ in when and how a jury demand should be made, and Federal Rules expect the demand to be clearly made at the outset to the litigation.  After removal, Federal Rules control the procedural requirements for making a jury demand.  *See* Fed. R. Civ. P. 81(c)(1).  Thus, despite BLP's arguments to the contrary, for purposes of determining compliance with this Court's order, it is irrelevant whether Plaintiffs filed a jury demand according to *New York state law*.[18]  Federal Rule 38, which governs, provides that a party may demand a jury trial by "serving the other parties with a written demand—*which may*

---

[18] Defendants nonetheless argue that Plaintiffs did not make a formal jury demand under state law.  Def. Mem. 34-35.  Plaintiffs have never argued to the contrary—in New York state, formal jury demands are not made until a party files a "Note of Issue," which often does not occur until the case is "actually ready for trial."  *See Cascone v. Ortho Pharm. Corp.*, 702 F.2d 389, 391 (2d Cir. 1983) (citing N.Y.C.P.L.R. § 4102(a)).  Given the early stage at which this case was removed, Plaintiffs could not have made a formal jury demand prior to removal.  But state court rules are not at issue here.  Notably, Plaintiff had included a jury demand on the face of her complaint when still in state court.

*be included in a pleading*—no later than 14 days after the last pleading directed to the issue is served" (emphasis added).

Although Rule 38 does not prescribe any specific form for the demand, "the recommended practice is to write the demand on the first page of the pleading." *Gargiulo v. Delsole*, 769 F.2d 77, 78 (2d Cir. 1985). Plaintiffs' Amended Complaint stated clearly in its caption "**JURY TRIAL DEMANDED**" and, in the prayer for relief, Plaintiffs further requested relief following a jury verdict. Doc. 1 at Ex. B. Thus, when Plaintiffs' Amended Complaint, which was served on BLP, was removed and filed on the docket (Doc. 1) on September 11, 2020, Plaintiffs made a jury demand that complied with Rule 38. To accept BLP's position would be to provide that this Court's Order in fact had the effect of nullifying an otherwise proper jury demand because the demand was made in the Complaint—as Rule 38 permits— instead of in a separate pleading. There is no basis in Rule 81 for imposing such a heightened pleading burden on parties whose cases were removed.

Nonetheless, were this Court to hold that Plaintiffs' jury demand was insufficient, Plaintiffs respectfully request this Court exercise its broad discretion under Federal Rule 39(b) to allow a jury trial. *See Cascone v. Ortho Pharm. Corp.*, 702 F.2d 389, 391-92 (2d Cir. 1983). All three factors courts typically considered in exercising that discretion weigh in Plaintiffs' favor. *See Rupolo v. Oshkosh Truck Corp.*, 749 F. Supp. 2d 31, 47 (E.D.N.Y. 2010). First, employment discrimination cases such as Plaintiffs' have been heard by juries for decades. *See, e.g.*, *Encarnacion*, 2014 WL 4494160, at *3. Second, BLP cannot plausibly argue it expected a bench trial, as the Complaint served upon it stated in bold, capital letters, "**JURY TRIAL DEMANDED**." Even if BLP were deemed to have such an expectation, when parties do not share a "common assumption" on this issue, this factor "does not militate either for or against a

jury trial." *Rupolo*, 749 F. Supp. 2d at 48. Finally, BLP has not, and cannot, identify any unfair prejudice that it would suffer as a result of allowing a jury trial. "The inquiry is not whether Defendant will be prejudiced by a jury trial, but whether Defendant will suffer prejudice as a result of the *late demand* for a jury trial." *Janetos v. Home Depot USA*, 2012 WL 4364510, at *4 (E.D.N.Y. Sept. 25, 2012). Not only is Plaintiffs' demand being made well before trial, but even before the start of discovery. Thus, while Plaintiffs maintain that they complied with this Court's order, if this Court concludes otherwise, this is an appropriate circumstance for the exercise of Rule 39(b) power.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, and to strike the claim for a jury trial, should be denied in its entirety.[19]

---

[19] Were this Court to grant BLP's Motion, in part or in whole, Plaintiffs respectfully request leave to amend. Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (internal quotations omitted). So long as the plaintiff has "at least colorable grounds for relief, justice does so require unless the plaintiff is guilty of undue delay or bad faith or unless permission to amend would unduly prejudice the opposing party." *S.S. Silberblatt, Inc. v. E. Harlem Pilot Block—Bldg. 1 Hous. Dev. Fund Co.*, 608 F.2d 28, 42 (2d Cir. 1979). This case is in its earliest stages and Plaintiffs seek to amend promptly following this Court's first consideration of their claims. Nor would amendment be futile. While Plaintiff Syeed has previously amended her claims, this is the first time she seeks leave of this Court to amend and the first time her claims have been fully heard. Given the predominantly factual nature of BLP's arguments—which largely focus on Plaintiff Syeed's ties to New York and the decision-making process at BLP—amendment would allow her to plead additional information on where she felt the impact of BLP's discriminatory conduct, and plead alternative statutes were violated if New York law did not apply, such as 42 U.S.C. § 1981. As for Plaintiff Ndugga, this is the first time her claims have been pleaded. BLP's arguments are factual in nature, relating to issues such as comparators, the level of detail with which she described BLP's overall practices, and the specificity of her descriptions of events that happened to her. If the Court agrees with any of BLP's arguments on these claims, Ms. Ndugga can cure those issues with additional facts.

Dated: February 12, 2021

Respectfully submitted,

*/s/Donna H. Clancy*

Donna H. Clancy
The Clancy Law Firm, P.C.
40 Wall Street, 61st Floor
New York, New York 10005
(t) (212) 747-1744
(f) (646) 693-7229
dhc@dhclancylaw.com

Christine E. Webber (*Pro hac vice*)
Stacy N. Cammarano
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave. NW ● Fifth Floor
Washington, DC 20005
(t) (202) 408-4600
(f) (202) 408-4699
cwebber@cohenmilstein.com

*Attorneys for Plaintiff Nafeesa Syeed, Naula Ndugga, and other similarly situated women*

## CERTIFICATE OF SERVICE

I hereby certify that on February 12, 2021, I electronically filed the *Plaintiffs' Opposition to Defendant's Motion to Dismiss* with the Clerk of the Court using the ECF, who in turn sent notice to the following:

Elise M. Bloom
Rachel S. Philion
Allison L. Martin
Eleven Times Square
New York, New York 10036
(t) 212-969-3000
(f) 212-969-2900
ebloom@proskauer.com
rphilion@proskauer.com
amartin@proskauer.com

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
(t) 617-526-9850
(f) 617-526-9899
mbatten@proskauer.com

*Counsel for Defendant Bloomberg L.P.*


Dated:    February 12, 2021            */s/ Donna H. Clancy*
                                       Donna H. Clancy

37