UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NAFEESA SYEED AND NAULA NDUGGA, ON BEHALF OF THEMSELVES AND SIMILARLY SITUATED WOMEN,

Plaintiffs,

-against-

BLOOMBERG L.P.,

Defendant.

20-cv-07464 (GHW)

**ECF CASE**

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT AND, IN THE ALTERNATIVE, TO STRIKE THE DEMAND FOR A JURY TRIAL**

# TABLE OF CONTENTS

**Page**


PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 2

I. SYEED'S CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY ..... 2

A. The Majority of Syeed's Claims Must Be Dismissed, as Even She Concedes. ..... 2

B. Syeed Cannot State a Claim for Failure-To-Promote or Constructive Discharge Under New York Law. ..... 3

II. NDUGGA'S CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY ..... 6

A. Ndugga's Title VII Claims Should Be Dismissed Because She Has Failed To Exhaust Her Administrative Remedies. ..... 6

B. Ndugga Has Failed To State a Claim For Disparate Treatment. ..... 7

1. Ndugga Concedes That Her Evaluation Claims Must Be Dismissed. ..... 7

2. Ndugga Fails To Plausibly Plead a Claim Of Failure-To-Promote. ..... 7

3. Ndugga Fails To Plausibly Allege a Claim For Disparate Pay ..... 10

C. Ndugga Cannot State a Claim For Disparate Impact. ..... 11

D. Ndugga Fails To Plausibly Plead a Claim for Retaliation Under Title VII. ..... 15

E. Ndugga Has Not Pled a Claim For Hostile Work Environment. ..... 17

III. PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO REPLEAD FOR A FOURTH TIME ..... 19

IV. PLAINTIFFS WAIVED THEIR RIGHT TO DEMAND A JURY TRIAL ..... 19

CONCLUSION ..... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Anderson v. Davis Polk & Wardwell LLP*,
850 F. Supp. 2d 392 (S.D.N.Y. 2012)....8

*Anderson v. HotelsAB, LLC*,
2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015)....3, 4

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....8, 13

*Aslin v. University of Rochester*,
2019 WL 4112130 (W.D.N.Y. Aug. 28, 2019)....16

*Barrett v. Forest Lab'ys, Inc.*,
39 F. Supp. 3d 407 (S.D.N.Y. 2014)....12

*Benjamin v. Brookhaven Sci. Assocs., LLC*,
387 F. Supp. 2d 146 (E.D.N.Y. 2005)....15

*Cardwell v. Davis Polk & Wardwell LLP*,
2020 WL 6274826 (S.D.N.Y. Oct. 24, 2020) (Woods, J.)....9, 10, 17

*Cascone v. Ortho Pharmaceutical Corp.*,
702 F.2d 389 (2d Cir. 1983)....20

*Cetina v. Longworth*,
583 F. App'x 1 (2d Cir. 2014)....13

*Chau v. Donovan*,
357 F. Supp. 3d 276 (S.D.N.Y. 2019)....4

*Collette v. St. Luke's Roosevelt Hosp.*,
132 F. Supp. 2d 256 (S.D.N.Y. 2001)....14

*Doe v. Bloomberg L.P.*,
2021 WL 496608 (N.Y. 2021)....18

*Eng v. City of N.Y.*,
2016 WL 750251 (S.D.N.Y. Feb. 19, 2016)....10

*Eng v. City of N.Y.*,
2017 WL 1287569 (S.D.N.Y. Mar. 29, 2017), *aff'd*, 715 F. App'x 49 (2d Cir. 2017)....11

**Page(s)**

*Eng v. City of New York*,
715 F. App'x 49 (2d Cir. 2017) ....................10

*Foman v. Davis*,
371 U.S. 178, 182 (1962)....................19

*Friedl v. City of N.Y.*,
210 F.3d 79 (2d Cir. 2000)....................16

*Gaddy v. Ports Am.*,
2015 WL 3929693 (S.D.N.Y. June 15, 2015) ....................8

*Galper v. JPMorgan Chase Bank, N.A.*,
2016 WL 4533267 (S.D.N.Y. Aug. 30, 2016)....................20

*Ghorpade v. MetLife, Inc.*,
2014 WL 7008954 (S.D.N.Y. Dec. 11, 2014) ....................3

*Gibb v. Tapestry, Inc.*,
2018 WL 6329403 (S.D.N.Y. Dec. 3, 2018) ....................6, 7

*Gonzalez v. City of N.Y.*,
377 F. Supp. 3d 273 (S.D.N.Y. 2019) (Woods, J.) ....................2

*Hardwick v. Auriemma*,
116 A.D.3d 465 (1st Dep't 2014) ....................5

*Hardy v. Lewis Gale Med. Ctr., LLC*,
377 F. Supp. 3d 596 (W.D. Va. 2019) ....................7

*Hoffman v. Parade Publ'ns*,
15 N.Y.3d 285 (N.Y. 2010) ....................3, 4

*Humphries v. City Univ. of N.Y.*,
2013 WL 6196561 (S.D.N.Y. Nov. 26, 2013)....................10, 18

*In re Manulife Fin. Corp. Sec. Litig.*,
276 F.R.D. 87 (S.D.N.Y. 2011) ....................16

*Johnson v. Andy Frain Servs., Inc.*,
638 F. App'x 68 (2d Cir. 2016) ....................10

*Kalia v. City Univ. of N.Y.*,
2020 WL 6875173 (S.D.N.Y. Nov. 23, 2020)....................16

*Kounitz v. Slaatten*,
901 F. Supp. 650 (S.D.N.Y. 1995)....................7

**Page(s)**

*Littlejohn v. City of N.Y.*,
795 F.3d 297, 312 (2d Cir. 2015)....................10

*Malone v. N.Y. Pressman's Union No. 2*,
2011 WL 2150551 (S.D.N.Y. May 31, 2011) ....................15

*Mandala v. NTT Data, Inc.*,
975 F.3d 202 (2d Cir. 2020), *rehearing en banc denied*, 2021 WL 684330 (2d Cir. Feb. 23, 2021) .................... passim

*Mandala v. NTT Data, Inc.*,
2021 WL 684330 (2d Cir. Feb. 23, 2021)....................8, 14

*Martini v. Fed. Nat'l Mortg. Ass'n*,
178 F.3d 1336 (D.C. Cir. 1999) ....................6

*McCain v. Sprint Cellular Corp.*,
2016 WL 11596029 (D. Vt. Aug. 16, 2016)....................12

*McCullough v. Xerox Corp.*,
942 F. Supp. 2d 380 (W.D.N.Y. 2013) ....................16

*Moore v. Verizon*,
2016 WL 825001 (S.D.N.Y. Feb. 5, 2016)....................18, 19

*Musiello v. CBS Corp.*,
2021 WL 517742 (S.D.N.Y. Feb. 11, 2021)....................17

*Nguedi v. Fed. Rsrv. Bank of N.Y.*,
2017 WL 5991757 (S.D.N.Y. Dec. 1, 2017) (Woods, J.)....................11

*Noonan v. Cunard Steamship Co.*,
375 F.2d 69 (2d Cir. 1967)....................20

*Nunez v. Cuomo*,
2012 WL 3241260 (E.D.N.Y. Aug. 7, 2012)....................12

*Opoku v. Brega*,
2016 WL 5720807 (S.D.N.Y. Sept. 30, 2016)....................8, 9

*Pedroza v. Ralph Lauren Corp.*,
2020 WL 4273988 (S.D.N.Y. July 24, 2020) ....................4

*Petrosino v. Bell Atl.*,
385 F.3d 210 (2d Cir. 2004)....................9

*Reyes v. Westchester Cnty. Health Care Corp.*,
2021 WL 310945 (S.D.N.Y. Jan. 29, 2021) ....................15

**Page(s)**

*Robles v. Cox & Co.*,
841 F. Supp. 2d 615 (E.D.N.Y. 2012) ....................5

*Romaine v. N.Y.C. Coll. of Tech. of the City Univ. of N.Y.*,
2012 WL 1980371 (E.D.N.Y. June 1, 2012) ....................8

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*,
2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019) ....................4

*Soloman v. Fordham Univ.*,
2020 WL 7711697 (S.D.N.Y. Dec. 29, 2020) ....................10

*Stewart v. City of New York*,
2012 WL 2849779 (S.D.N.Y. July 10, 2012) ....................9

*Swierkiewicz v. Sorema N.A.*,
534 U.S. 506 (2002) ....................8

*Tiraco v. N.Y. State Bd. of Elections*,
963 F. Supp. 2d 184 (E.D.N.Y. 2013) ....................19

*Torre v. Charter Commc'ns, Inc.*,
2020 WL 5982684 (S.D.N.Y. Oct. 8, 2020) ....................11

*Toussaint v. City of N.Y.*,
2020 WL 3978317 (S.D.N.Y. June 29, 2020) ....................13

*Tsombanidis v. West Haven Fire Department*,
352 F.3d 565 (2d Cir. 2003) ....................13

*Vangas v. Montefiore Med. Ctr.*,
823 F.3d 174 (2d Cir. 2016) ....................3

*Wang v. Government Employees Insurance Co.*,
2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016) ....................5

*Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*,
323 F. Supp. 3d 501 (S.D.N.Y. 2018) ....................19

*Wolf v. Imus*,
170 A.D.3d 563 (1st Dep't 2019) ....................5

*Wynn v. AC Rochester*,
3 F. Supp. 2d 358 (W.D.N.Y. 1998) ....................19, 20

**STATUTES**

42 U.S.C. § 2000e-5(b) ....................6

**Page(s)**

42 U.S.C. § 2000e-5(f)(1) ....................................................................................................6

D.C. Code § 2-1403.16 ..........................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 38, Advisory Committee Notes (1937) ...............................................................20

Fed. R. Civ. P. 81(c)(3)(A) .......................................................................................................19

## PRELIMINARY STATEMENT

After three iterations of her Complaint, Syeed now finally admits that the majority of her claims are insufficient as a matter of law.[1] As to the only claims she has not conceded – failure-to-promote and constructive discharge under New York law – it is undisputed that Syeed, a California resident, never worked in New York and her claims in this lawsuit relate to her employment with BLP in Dubai and Washington, D.C., where she worked during the entire relevant time period. Because she is unable to establish that any alleged discriminatory conduct had an impact on her within the territorial boundaries of New York State or New York City, her New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims must be dismissed.

Ndugga's claims also should be dismissed in full. As an initial matter, she cannot bring claims under Title VII of the Civil Rights Act of 1964 ("Title VII") because her Charge was not pending before the EEOC for at least 180 days, as Title VII requires, and the EEOC did not issue her a valid right-to-sue letter prior to her filing of the SAC. Ndugga concedes that she cannot bring claims for intentional discrimination with respect to performance evaluations, and presents no legitimate grounds to avoid dismissal of her claims for failure-to-promote, disparate pay, and hostile work environment because, among other reasons, she has alleged no concrete facts to show discriminatory animus. Ndugga's disparate impact claim also fails because she has not plausibly alleged a practice that disproportionately impacted her and other female employees. Her retaliation claim under Title VII suffers from numerous infirmities, including the absence of any well-pled facts showing causation, and must be dismissed as well.

---

[1] Defined terms used herein have the same meaning as in Defendant's opening brief (Dkt. 43), which is referred to herein as "Mot." Plaintiffs' opposition brief (Dkt. 45) is referred to herein as "Opp."

Plaintiffs' claims should be dismissed without leave to replead for a fourth time. Because neither Syeed nor Ndugga can state an individual claim for relief, the claims they purport to bring on behalf of a putative class also fail for the reasons set forth in BLP's moving brief. Lastly, Plaintiffs waived their right to demand a jury trial when they failed to serve a jury demand in response to the Court's order directing them to do so. There is no basis to excuse their noncompliance and their untimely demand should therefore be stricken.

For the reasons set forth below and those contained in BLP's main brief, the SAC should be dismissed in full with prejudice and without leave to replead and, alternatively, the Court should strike Plaintiffs' untimely jury demand.

## ARGUMENT

### I. SYEED'S CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY

#### A. The Majority of Syeed's Claims Must Be Dismissed, as Even She Concedes.

Syeed admits that she cannot state a claim under either the NYSHRL or the NYCHRL for alleged disparate pay or hostile work environment because such claims "did not have a New York impact," and also confirms that she is not pursuing any Title VII claims. (Opp. at n.3 & 7-8.) She further makes no effort to defend her claims for alleged disparate treatment in evaluations and alleged disparate impact, and therefore has abandoned them. *See, e.g., Gonzalez v. City of N.Y.*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019) (Woods, J.) (holding plaintiff abandoned claims not addressed in opposition to defendants' motion to dismiss). The following claims therefore should be dismissed with prejudice as to Syeed: (i) Counts One and Two under Title VII; (ii) Counts Three, Five and Six with respect to compensation, evaluations and hostile work environment under the NYSHRL and NYCHRL; and (iii) Count Four under the NYSHRL.

## B. Syeed Cannot State a Claim for Failure-To-Promote or Constructive Discharge Under New York Law.

Syeed's concessions leave just two claims, for alleged failure-to-promote and constructive discharge under the NYSHRL and NYCHRL, both of which require her to establish that she suffered the impact of the alleged discriminatory acts within the boundaries of New York State and New York City. *See, e.g., Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 290-92 (N.Y. 2010); *Vangas v. Montefiore Med. Ctr*., 823 F.3d 174, 183 (2d Cir. 2016) (to state a claim under the NYCHRL, the "impact of the employment action must be felt *by the plaintiff*" in New York City) (emphasis in original).

Syeed never worked in New York and does not claim to have experienced any unlawful conduct while in New York. At all relevant times she was employed in either Dubai or Washington, D.C., and this is not a "case[ ] in which an employee's workplace is . . . difficult to pin down." *Ghorpade v. MetLife, Inc*., 2014 WL 7008954, at *3 (S.D.N.Y. Dec. 11, 2014), *cited in* Opp. at 8 n.2.[2] Syeed nonetheless insists that she can avail herself of the protections of New York law long distance because she allegedly was denied promotions that would have required her to transfer to the New York News Bureau.

Syeed cites no case holding that denial of a promotion, or constructive discharge caused by such a denial, can satisfy the "impact" requirement where the plaintiff lives and works for the employer outside New York State. Instead, she reaches for three isolated cases involving failure-to-hire claims, where the plaintiff had no employment relationship with the defendant. (Opp. at 5-7) (citing *Anderson v. HotelsAB, LLC*, 2015 WL 5008771 (S.D.N.Y. Aug. 24, 2015);

[2] Syeed's reliance on *Ghorpade* is puzzling, since the Court there granted a motion to dismiss NYSHRL and NYCHRL claims even though the plaintiff had worked in MetLife's New York and New Jersey offices for more than a decade before accepting a temporary assignment in India, from which he returned several times. *Id.* at *3. The Court held that "the question is whether [Ghorpade] was 'in' or 'within' the City or State of New York when the discriminatory acts were alleged to have taken place." *Id*. The Court merely speculated that "[t]here may be some

*Scalercio-Isenberg v. Morgan Stanley Servs. Grp. Inc.*, 2019 WL 6916099 (S.D.N.Y. Dec. 19, 2019); *Chau v. Donovan*, 357 F. Supp. 3d 276 (S.D.N.Y. 2019)). *Anderson* was the first of these cases, and the other two derive their holdings from it.

Leaving aside those decisions' questionable fidelity to *Hoffman*, they have no application to a case about promotions and discharge. As *Anderson* emphasized, an out-of-state applicant discriminatorily rejected from employment in New York may not be able to seek redress under the laws of his or her home jurisdiction. 2015 WL 5008771, at *4 ("Defendants' interpretation of the NYCHRL would deny protection against hiring discrimination to anyone who did not actually cross the employer's threshold in New York"). Syeed, of course, could have sued BLP in Washington, D.C. to challenge the promotion denial and her alleged constructive discharge under the D.C. Human Rights Act ("DCHRA"). Indeed, the SAC appears to allege that the BLP employees who blocked her promotion, leading her to resign, or at least participated in those decisions, were supervisors whom she worked with in Washington. (*See* SAC ¶¶ 79, 81-83) (alleging unpleasant interactions with Bill Faries and Mike Shepard).[3] In any event, Syeed chose not to file any charge within the DCHRA's one-year statute of limitations. *See* D.C. Code § 2-1403.16. Having made this election, she should not be permitted now to take advantage of the longer statute of limitations under New York law when she is not within the group of persons the laws are intended to protect – those who work in New York. *See Hoffman*, 15 N.Y.3d at 291.[4]

cases" where physical presence outside New York is irrelevant, but did not identify any such potential circumstances and dismissed Ghorpade's claims for lack of any New York impact. *Id*.

[3] Moreover, even Faries' and Shepard's superiors were by Syeed's own account based in Washington, demonstrating just how far removed from New York these decisions were. (*See* SAC ¶ 66 (identifying Faries as taking direction from "Craig Gordon, D.C. Bureau Chief").)

[4] *See also Pedroza v. Ralph Lauren Corp.*, 2020 WL 4273988, at *3-6, n.2 (S.D.N.Y. July 24, 2020) (dismissing NYSHRL and NYCHRL claims brought by a New Jersey-based plaintiff for unlawful termination, and finding the failure-to-hire cases relied on by plaintiff to be "unconvincing" because plaintiff had worked for the employer for "years" so "her situation cannot be analogized to a plaintiff who was not hired due to discrimination").

Syeed has far less to say about the case that actually considered a failure to promote, *Wang v. Government Employees Insurance Co.*, 2016 WL 11469653 (E.D.N.Y. Mar. 31, 2016). There, the plaintiff worked for GEICO on Long Island, and sought a promotion to a supervisory attorney position involving work in New York City courts. 2016 WL 11469653, at *7. Citing *Hoffman*'s holding that the NYCHRL limits its remedies "to those who are meant to be protected--those who work in the city," the court dismissed the claim, holding that the plaintiff failed to demonstrate "how the impact of [the employer]'s alleged conduct" – the denial of the promotion – "was felt in New York City." *Id*. The same rationale applies here.

Syeed has no remedy under New York law for discrimination she purportedly experienced while working in Washington, D.C., and Syeed's invitation to create a new exception to the impact analysis would ignore *Vangas, Hoffman*, and *Wang.* Even accepting her allegations as true, Syeed cannot establish that she felt the impact of a decision not to promote her – which she acknowledges had the effect of her continuing to work in Washington, D.C. – anywhere but in Washington, D.C., where she worked for BLP. *See also Robles v. Cox & Co.,* 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012) ("the relevant location of the injury for purposes of the impact analysis is…the [p]laintiff's place of employment")*; Hardwick v. Auriemma*, 116 A.D.3d 465, 467 (1st Dep't 2014) (affirming dismissal of NYSHRL and NYCHRL claims brought by plaintiff who lived in New York State and was employed by a New York City-based employer because the alleged discrimination occurred while plaintiff was on an assignment in London); *Wolf v. Imus*, 170 A.D.3d 563, 564 (1st Dep't 2019) ("Whether New York courts have subject matter jurisdiction over a nonresident plaintiff's claims under the HRLs turns primarily on her [or his] physical location at the time of the alleged discriminatory acts") (citation omitted). Syeed's claims under the NYSHRL and NYCHRL therefore must be dismissed.

## II. NDUGGA'S CLAIMS SHOULD BE DISMISSED IN THEIR ENTIRETY

### A. Ndugga's Title VII Claims Should Be Dismissed Because She Has Failed To Exhaust Her Administrative Remedies.

Ndugga's Title VII claims should be dismissed for failure to exhaust her administrative remedies because her Charge was not pending before the EEOC for at least 180 days, as required by Title VII, and the early right-to-sue letter she received from the EEOC is invalid. Under Title VII, a private plaintiff may not file suit in court unless she first files a charge with the EEOC to give the agency a chance to investigate and decide whether to bring its own enforcement proceeding. Accordingly, a "civil action may be brought" by the plaintiff only if the agency has "dismissed" the charge or has not filed a civil action "within one hundred and eighty days." 42 U.S.C. § 2000e-5(f)(1). The statutory text requires that the agency conduct an investigation prior to dismissing a charge: after a charge is filed, the agency "*shall* make an investigation thereof." *Id.* § 2000e-5(b) (emphasis added). Only then, "[i]f the Commission determines *after such investigation* that there is not reasonable cause to believe that the charge is true, it shall dismiss the charge." *Id.* (emphasis added). The statutory scheme thus gives effect to Congress's intention that the EEOC should have primary responsibility for investigating and prosecuting alleged violations of Title VII, and that "recourse to the private lawsuit will be the exception and not the rule." *Martini v. Fed. Nat'l Mortg. Ass'n*, 178 F.3d 1336, 1346 (D.C. Cir. 1999).

Despite the clear statutory text, the EEOC has purported to "authorize[] itself" to issue early right-to-sue letters before the 180-day period expires and before the agency has conducted any investigation. *Gibb v. Tapestry, Inc.*, 2018 WL 6329403, at *4 (S.D.N.Y. Dec. 3, 2018). However, the "plain language" of Title VII bars this practice, and "[t]he EEOC cannot, by its own hand, abrogate its congressional mandate." *Id.* at *6. Accordingly, if the 180-day period has not expired and the EEOC has not conducted any investigation, then the issuance of "an early

right-to-sue letter presents 'a jurisdictional deficiency requiring suspension and a remand of plaintiff's Title VII claims to the EEOC.'" *Id.* at *5 (citation omitted); *see also Hardy v. Lewis Gale Med. Ctr., LLC*, 377 F. Supp. 3d 596, 607-11 (W.D. Va. 2019).

Here, the EEOC did not issue a valid right-to-sue letter because the 180-day period had not yet run and the agency conducted no discernible investigation of Ndugga's Charge. Ndugga filed her EEOC Charge on November 13, 2020 (Dkt. 44-2); therefore, the 180-day period does not expire until May 12, 2021. Although the EEOC issued an early right-to-sue letter on February 2, 2021 (Dkt. 46-1), that letter is invalid because 180 days had not yet passed and there is no indication that the agency conducted any investigation as required by law. This type of early and perfunctory right-to-sue letter is unlawful and does not satisfy the administrative-exhaustion requirements that Title VII imposes. *See, e.g., Gibb,* 2018 WL 6329403, at *6. Ndugga's Title VII claims are thus premature, and must be dismissed or remanded to the EEOC for the agency to investigate for the full statutory period.[5]

**B. Ndugga Has Failed To State a Claim For Disparate Treatment.**

***1. Ndugga Concedes That Her Evaluation Claims Must Be Dismissed.***

Ndugga now says that she has not alleged any claim based on her evaluations, and she cannot show that she suffered any adverse employment action, as a result. (Opp. at n.7) Counts One and Three therefore should be dismissed with respect to evaluations.

***2. Ndugga Fails To Plausibly Plead a Claim Of Failure-To-Promote.***

Ndugga further concedes that she has failed to identify any specific, open promotion for which she applied and was denied. She makes no attempt to refute the case law cited in BLP's Motion demonstrating that this deficiency is fatal to a failure-to-promote claim (Mot. at 19-20)

[5] The sole case on which Ndugga relies, *Kounitz v. Slaatten*, 901 F. Supp. 650 (S.D.N.Y. 1995), is not to the contrary. There the plaintiff filed her charge on April 1, 1994; filed suit on January 5, 1995; and received a right-to-sue letter on February 17, 1995. The charge was under investigation by the EEOC for far more than 180 days.

and, instead, summarily opines that the specific-application requirement is "at odds" with the Supreme Court's senescent decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002). Ndugga makes no attempt to account for the Supreme Court's subsequent decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), which made clear that a plaintiff must plead a facially plausible claim, or the Second Circuit's recent observation that *Iqbal* "cast[s] doubt on *Swierkiewicz*'s vitality." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208-09 (2d Cir. 2020), *rehearing en banc denied*, 2021 WL 684330 (2d Cir. Feb. 23, 2021). Following *Iqbal*, the Second Circuit has repeatedly held that in order to withstand a motion to dismiss, the complaint must plead enough nonconclusory facts to state a claim of discrimination that is facially plausible. *Id.* (collecting cases); *see also Mandala*, 2021 WL 684330, at *5 (Sullivan, J. & Nardini, J. concurring) (explaining that the "plaintiff-friendly notice pleading standard" of *Swierkiewicz* "changed with the Supreme Court's announcement of the plausibility pleading standard in *Twombly* and *Iqbal*"). Contrary to Ndugga's suggestion, the elements of a prima facie case are still very much relevant at the pleadings stage because they "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Gaddy v. Ports Am.*, 2015 WL 3929693, at *4 (S.D.N.Y. June 15, 2015).

Courts in this Circuit applying *Iqbal* in the context of a failure-to-promote claim consistently require a plaintiff to allege, *inter alia*, that she "applied for a specific position." *Anderson v. Davis Polk & Wardwell LLP*, 850 F. Supp. 2d 392, 414 (S.D.N.Y. 2012) (quotations omitted); *see also, e.g., Opoku v. Brega*, 2016 WL 5720807, at *11 (S.D.N.Y. Sept. 30, 2016) (collecting cases applying the specific-application requirement at the motion to dismiss stage post-*Swierkiewicz*); *Romaine v. N.Y.C. Coll. of Tech. of the City Univ. of N.Y.*, 2012 WL 1980371, at *3 (E.D.N.Y. June 1, 2012) ("a plausible failure to promote claim" requires a

plaintiff to "allege that he or she applied specifically for the position in question."). Ndugga briefly mentions that courts have recognized exceptions to this requirement where an application would have been "quixotic," but does not claim that any of those exceptions—which are "narrow"—apply here. *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004). Nor could she credibly do so based on the allegations in the SAC.[6] She alleges only that she expressed "interest" in a position that was never created. (SAC ¶ 104.) Her failure to plead that she applied for any specific, open promotion dooms her failure-to-promote claims.

Ndugga's promotion claims also fail for the independent reason that she has not pled any facts that could plausibly support both the existence of an unlawful animus on the part of the decisionmakers and the "inference of a link between the [denial of a promotion] and the [sex or] racial animus." *Cardwell v. Davis Polk & Wardwell LLP*, 2020 WL 6274826, at *22 (S.D.N.Y. Oct. 24, 2020) (Woods, J.). In her opposition, Ndugga claims that BLP "had" a "practice" of limiting promotions based on sex and race, but she rests this hyperbolic accusation entirely on a single comment that a Washington, D.C. employee allegedly made to Syeed. Ndugga has no personal knowledge of the comment or the alleged practice, and does not allege that she was denied a promotion because of this purported "practice." Because the SAC does not plead facts giving rise to an inference of intentional discrimination, her promotion claims (Counts One, Three, Five, and Six) must be dismissed.

[6] Ndugga's reliance on *Stewart v. City of New York*, 2012 WL 2849779 (S.D.N.Y. July 10, 2012) for the proposition that it is "premature" to decide whether she has stated a failure-to-promote claim is entirely misguided. In *Stewart*, the court allowed an NYPD detective's claims to proceed based on allegations that he had repeatedly complained to his superiors about not being promoted, but did so based on the reasoning that the NYPD is a "paramilitary" law enforcement organization where it is "highly unlikely that one can 'apply' for a promotion from one Detective Grade to another." *Id.* at *6. In contrast, here, Ndugga explicitly alleges that BLP solicits applications for its open promotional opportunities via an "internally accessible career portal." (SAC ¶ 27.) On these facts, "the specific application requirement is applicable at the motion to dismiss stage." *Opoku*, 2016 WL 52270807, at *11.

**3. *Ndugga Fails To Plausibly Allege a Claim For Disparate Pay.***

Ndugga's defense of her disparate pay claims similarly leans on the outdated standards of *Swierkiewicz* to argue that she need not plausibly show that she is similarly situated to the male employees she identifies as comparators with respect to compensation. As this Court recently explained, however, "a plaintiff alleging that her 'employer treated her less favorably than a similarly situated employee outside her protected group' must allege that 'she was similarly situated in all material respects to the individuals with whom she seeks to compare herself'" to give rise to a plausible inference of discrimination. *Cardwell*, 2020 WL 6274826, at *21 (Woods, J.) (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015)); *see also, e.g., Soloman v. Fordham Univ.*, 2020 WL 7711697, at *14 (S.D.N.Y. Dec. 29, 2020) (dismissing disparate pay claims where plaintiff identified two male comparators by name and title, but failed to plead facts to show that the comparators' job content was similar to her own).[7] The SAC fails to meet these requirements, offering only conclusory allegations about the purported comparators and nothing with respect to, among other things, their "relevant experience[,] length of employment," job titles, supervisors, "job responsibilities or [ ] annual reviews." *Humphries v. City Univ. of N.Y.*, 2013 WL 6196561, at *7 (S.D.N.Y. Nov. 26, 2013) ("conclusory statements about a co-workers' qualifications are insufficient to raise an inference of discrimination").

Ndugga also tries to distinguish her allegations in the SAC from those dismissed in *Eng* v. *City of New York*, 715 F. App'x 49 (2d Cir. 2017) (summary order) by emphasizing her allegations that she and the purported comparators "perform 'similar job duties.'" (Opp. at 14.)

[7] *See also* Mot. at 16-17 (collecting cases); *Eng v. City of N.Y.*, 2016 WL 750251, at *3 (S.D.N.Y. Feb. 19, 2016) (dismissing NYSHRL and NYCHRL claims because the complaint did not plead facts that would "permit the Court to infer that she was similarly situated in all material respects to the coworkers who allegedly received greater compensation"); *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 70-71 (2d Cir. 2016) (summary order) (affirming dismissal of claims under, *inter alia*, the NYCHRL because the complaint did not plead facts giving rise to a plausible inference of discrimination when there were no allegations that plaintiff and the comparator "had similar job descriptions or responsibilities").

But that conclusory allegation merely matches Eng's deficient claim that the comparators "perform[ed] substantially similar ... or lesser job duties" than the plaintiff, which the Second Circuit held insufficient. *Eng v. City of N.Y.*, 2017 WL 1287569, at *1, *4 (S.D.N.Y. Mar. 29, 2017), *aff'd*, 715 F. App'x 49 (2d Cir. 2017). This Court should find the same here.[8]

Ndugga's passing mentions to other perceived slights add no texture to her threadbare allegations of a pay disparity. Her disparate pay claims (Counts One, Three, Five, and Six) thus must be dismissed.

### C. Ndugga Cannot State a Claim For Disparate Impact.

While Ndugga again tries to ignore binding precedent and downplay her pleading obligations, she concedes (as she must) that she is required to "set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim." *Mandala*, 975 F.3d at 209. She has failed to do so on all three elements: (1) she does not identify a facially neutral employment practice that harmed her; (2) she does not plausibly allege that a disparity based on sex exists; and (3) she pleads no facts supporting a causal relationship between the challenged practice(s) and any disparity.

Ndugga's disparate impact claim first fails because she does not adequately identify a neutral employment practice that adversely affected her. She points to her conclusory allegation that BLP bases starting salaries on compensation at prior jobs (SAC ¶ 122), but does not contend that *she* personally ever disclosed information about her prior compensation or that she was personally affected by this alleged practice. To the contrary, her employment at BLP was her first job after college graduation (SAC ¶¶ 92-93), and so she had no salary history. Because a

[8] The cases cited by Ndugga either include more detailed allegations about the comparators than what Ndugga offers to give rise to an inference of discrimination (*see Torre v. Charter Commc'ns, Inc.*, 2020 WL 5982684, at *1 (S.D.N.Y. Oct. 8, 2020) and *Nguedi v. Fed. Rsrv. Bank of N.Y.*, 2017 WL 5991757, at *8 (S.D.N.Y. Dec. 1, 2017)

"plaintiff asserting a disparate-impact claim must show that the policies injured them personally," Ndugga cannot base her disparate impact claim on this purported practice. *McCain v. Sprint Cellular Corp.*, 2016 WL 11596029, at *7 (D. Vt. Aug. 16, 2016) (citation omitted); *see also e.g., Nunez v. Cuomo*, 2012 WL 3241260, at *11 (E.D.N.Y. Aug. 7, 2012) ("Plaintiffs have failed to allege facts showing they were or will be personally injured by the purported layoffs… and, as such, they have failed to state a disparate impact claim").

Ndugga's allegation that the Editorial Management Committee ("EMC") has discretion over employment decisions also cannot support her disparate impact claim. As an initial matter, her bald assertion that the three-person EMC "controls" all decisions on news content *and* makes every employment decision for every one of the alleged "2,700 Reporters, Producers, and Editors" of BLP as a matter of course is simply not plausible on its face. (SAC ¶¶ 14, 16.) Even putting this aside, Ndugga does not identify any well pled facts to show that any such "discretion" was exercised to her detriment. The crux of her allegation is that the EMC has discretion to modify performance ratings, and that those modified ratings are in turn used to deny compensation and promotions. (Opp. at 26.) Since Ndugga only alleges that she received positive evaluations (SAC ¶ 98) and does not identify a single occasion when her performance rating was changed, she cannot demonstrate that she was personally impacted by the claimed "practice" (the exercise of discretion) that she purports to challenge. *See Nunez,* 2012 WL 3241260, at *11.

Second, Ndugga fails to allege facts to show a significant disparity between male and female employees. "To nudge a disparate impact claim across the line from conceivable to plausible," a plaintiff generally must offer statistics that "plausibly suggest that the challenged practice *actually* had a disparate impact." *Mandala*, 975 F.3d at 209-10 (emphasis in original).

---

(Woods, J.)), or are premised on the outdated "fair notice" pleading standard that pre-dates *Littlejohn*. *See Barrett v.*

Ndugga's assertion that she does not need to plead statistics or any other concrete, well-pled facts to support the existence of a disparity is flatly wrong: each element of "a disparate impact claim must be supported by allegations that 'allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged' – allegations 'that are merely consistent with a defendant's liability' won't do."[9] *Id.* at 209, n.3 (quoting *Iqbal*, 556 U.S. at 678); *see also Cetina v. Longworth,* 583 F. App'x 1, 3 (2d Cir. 2014) (affirming dismissal where plaintiff "fail[ed] to make out a substantial or statistically significant disparity"); *Toussaint v. City of N.Y.*, 2020 WL 3978317, at *8 (S.D.N.Y. June 29, 2020) (granting motion to dismiss NYSHRL disparate impact claim because "although Plaintiff alleges that two other African-American employees in the IT Unit were also not promoted, he does not provide the statistical evidence necessary to support a disparate impact claim"). Ndugga also suggests that "qualitative comparisons" may suffice to state a disparate impact claim, citing *Tsombanidis v. West Haven Fire Department*, 352 F.3d 565 (2d Cir. 2003). In *Tsombanidis*, however, the court contemplated in the context of a Fair Housing Act claim that while there "may be cases where statistics are not necessary, there *must be some analytical mechanism* to determine disproportionate impact." *Id.* at 576 (emphasis added). Ndugga has not identified any other such "analytical mechanism."

Ndugga's suggestion that the court may overlook her deficient claims and allow her to embark on a fishing expedition to see if she can find some basis for a plausible claim through discovery fares no better. The law is clear that plaintiffs may not "rely on conclusory statistical inferences to force their way into discovery." *Mandala*, 975 F.3d at 212.

---

*Forest Lab'ys, Inc*., 39 F. Supp. 3d 407, 429 (S.D.N.Y. 2014).

[9] The three district court cases Ndugga relies on are inapposite because they apply outdated pleading standards that are inconsistent with *Mandala*.

When properly stripped of its conclusory allegations of impact, the SAC does not contain a single fact to support a finding that a disparity exists between female Reporters, Editors and Producers and their male counterparts as to the challenged practices. As to evaluations, there is no claim that the final performance ratings of female employees are lower than male employees. With respect to compensation and promotions, Ndugga does not plead any concrete facts that could plausibly show the existence of a statistical disparity as to the putative class and instead points to: vague, one-off comments purportedly made to Syeed (SAC ¶¶ 31, 38, 87); irrelevant allegations regarding four BLP executives that pre-date Ndugga's employment and have no relationship to the putative class (*id.* ¶ 19); a U.K. survey that does not pertain to the primarily U.S.-based putative class (*id.* ¶ 39); and conclusory allegations proclaiming the existence of a disparity that are devoid of any factual basis (*id.* ¶¶ 35-36). This is insufficient. Because Ndugga offers nothing but "conclusory and unsupported assertion[s]" as to the existence of a sex-based disparity, *Mandala*, 975 F.3d at 211, she cannot state a claim.[10]

Finally, the SAC does not plausibly allege facts to support a causal connection between the EMC's alleged exercise of discretion and any alleged disparity. Again, all Ndugga asserts in connection with this element are conclusory allegations that the EMC exercises discretion to the detriment of female employees that are not based on Ndugga's personal knowledge and are unsupported by any well-pled facts in the SAC. (*See* Opp. at 32 (citing SAC ¶¶ 34, 40-42, 99).) This shortcoming further compels the dismissal of her disparate impact claims. *See Collette v. St. Luke's Roosevelt Hosp.*, 132 F. Supp. 2d 256, 278 (S.D.N.Y. 2001) (plaintiff failed to provide "any specific facts, or even advanced a theory, as to how the alleged practice…*caused* any

[10] The plaintiffs in *Mandala* offered more statistics than what Plaintiffs provide here. *See Mandala*, 2021 WL 684330, at *9 (Chin, J. dissenting) (summarizing statistics that Plaintiffs cited in complaint). Still, the Second Circuit rejected plaintiff's statistical showing as insufficient. Here, Plaintiffs' showing falls even below what was found inadequate in *Mandala*.

disparate impact); *Malone v. N.Y. Pressman's Union No. 2*, 2011 WL 2150551, at *8 (S.D.N.Y. May 31, 2011). Counts Two and Four accordingly should be dismissed.

### D. Ndugga Fails To Plausibly Plead a Claim for Retaliation Under Title VII.

Ndugga's opposition purports to base her retaliation claim on four instances of protected activity. As set forth below, none of the four suffice to state a viable claim under Title VII.

*First*, Ndugga alleges (for the first time in her opposition) that her supervisors did not consult her about her preference for assignments in Fall of 2019 in retaliation for a complaint she made to Human Resources at some unspecified time prior. As an initial matter, this claim is time-barred because the alleged retaliatory act occurred in the Fall of 2019, more than 300 days before she filed her EEOC Charge. *See, e.g., Benjamin v. Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 153 (E.D.N.Y. 2005) (noting that it is "well-settled that…denial of preferred job assignments are considered discrete acts"). Even if it were timely, this allegation still would fail because Ndugga does not specify *when* she complained to Human Resources – as she must to support an inference of causation based on temporal proximity – and she does not plead any other facts to show causation. *Reyes v. Westchester Cnty. Health Care Corp*., 2021 WL 310945, at *12 (S.D.N.Y. Jan. 29, 2021) ("having failed to specify when Plaintiff complained to Human Resources, the Court cannot infer a [causal] connection based on temporal proximity").

*Second*, Ndugga claims retaliation after she complained to her supervisor, Mindy Massucci, about a male colleague following a verbal altercation regarding an image in a news video. Recognizing that her allegations in the SAC concerning these complaints did not show protected activity, Ndugga improperly tries to use her opposition as an opportunity to add entirely new allegations about the substance of her report to Ms. Massucci that do not appear anywhere in the SAC. (Opp. at 22.) These new claims must be disregarded because "long-standing precedent in the Second Circuit prevents parties from amending the pleadings by raising

new issues in their briefs." *In re Manulife Fin. Corp. Sec. Litig.*, 276 F.R.D. 87, 90 (S.D.N.Y. 2011); *see Friedl v. City of N.Y.*, 210 F.3d 79, 83-84 (2d Cir. 2000) (a district court must not "rel[y] on factual allegations contained in legal briefs or memoranda"). As set forth in BLP's Motion, the SAC does not plausibly allege that Ndugga's complaints constitute protected activity. Even if the new allegations are considered, Ndugga's claim nevertheless fails because the alleged retaliatory conduct (being "isolated" and scolded by a colleague) does not constitute an actionable adverse employment action under Title VII. (*See* Mot. at 30-31) (collecting cases); *see also, e.g., McCullough v. Xerox Corp.*, 942 F. Supp. 2d 380, 387 (W.D.N.Y. 2013) (dismissing retaliation claim because plaintiff's allegations that she was "ostracized and ignored" and "excluded from meetings that she…necessarily should have been included in" did not amount to an adverse employment action).[11] Insofar as Ndugga now also claims that she was not permitted to conduct a live interview in May 2020 because of her complaint to Ms. Massucci, this too is insufficient because the SAC does not specify *when* she complained to Ms. Massucci, nor does it plead any other facts that could plausibly support an inference of causation. (*See* SAC ¶¶ 106-08.) *See, e.g., Kalia v. City Univ. of N.Y.*, 2020 WL 6875173, at *6 (S.D.N.Y. Nov. 23, 2020) (dismissing retaliation claim because plaintiff "does not establish precisely when any of the other alleged retaliatory actions took place after he filed the EEOC charge").

*Third*, Ndugga asserts in her opposition that she engaged in protected activity when she complained to Ms. Massucci in May 2020 about the cancellation of an interview. The SAC,

---

[11] Ndugga cites *Aslin v. University of Rochester*, 2019 WL 4112130, at *5 (W.D.N.Y. Aug. 28, 2019) for the proposition that "fear of employer-sponsored isolation" and unwanted criticism might be actionable, but *Aslin* is readily distinguishable. In *Aslin*, eight plaintiffs who worked in a "niche" area of academic research alleged that numerous top-level University officials (including the President, Provost, Deans and Department heads) retaliated against them by, *inter alia*, sabotaging their employment prospects and engaging in a prolonged "pattern" of criticism that included publicly "calling the plaintiffs liars, bullies, deceivers, etc." to University faculty and those in the broader academic community. *Id.* at *1-2, 4-5. Ndugga's allegation that one colleague ignored her following a single interpersonal disagreement is in no way comparable to *Aslin*.

however, does not allege that this complaint conveyed concerns of discrimination, as is required to establish protected activity. (*See* SAC ¶ 109.) *See, e.g., Cardwell,* 2020 WL 6274826, at *31 (Woods, J.) ("[m]ere complaints of unfair treatment are not protected speech in the employment retaliation context"). This allegation is further insufficient to state a claim because Ndugga does not claim she experienced any retaliatory act because of this complaint, nor pled causation.

*Fourth*, Ndugga claims that she engaged in protected activity during a July 2020 conference call but, once again, does not identify any retaliatory act occurring thereafter and does not plausibly allege a causal connection. Because Ndugga has failed to state a claim for retaliation under Title VII, Count Eight of the SAC should be dismissed.

**E. Ndugga Has Not Pled a Claim For Hostile Work Environment.**

Searching the SAC for adequate allegations of a hostile work environment, Ndugga begins by insisting that she can aggregate her various allegations relating to discrete acts, such as promotions, compensation, and assignments, to suggest a hostile work environment. Even if she had alleged a plausible inference of discriminatory motive with respect to her purported disparate treatment claims (which she has not), this argument ignores "the difference between hostile work environment and other discrimination claims[:] '[a]llegations of 'discrete, adverse employment decisions concerning promotions, discipline, and appraisal, and about employer criticism' are insufficient to state a claim for hostile work environment.'" *Cardwell*, 2020 WL 6274826, at *27 (Woods, J.) (citation omitted).

Ndugga also tries to show discriminatory animus by pointing to her allegations about a sexist and racist "culture" at BLP. These allegations should not be considered because they are "highly conclusory" and are premised on nothing more than lawsuits from decades ago and hearsay allegations of which Ndugga has no personal knowledge. *Musiello v. CBS Corp.,* 2021 WL 517742, at *6 (S.D.N.Y. Feb. 11, 2021) (disregarding plaintiff's allegations that CBS

perpetuated a "top down sexist culture" as "highly conclusory"); s*ee also Doe v. Bloomberg L.P.*, 2021 WL 496608, at *6 (N.Y. 2021) (holding that allegations of a "culture of discrimination…based primarily on news articles and reports of a deposition in an unrelated case" were insufficient to make an owner/officer liable as an employer under the NYCHRL).

Finally, lacking any concrete facts to support a hostile environment claim, Ndugga resorts to embellishment and sensationalism. She is not permitted to amend her pleadings in this manner. Of particular note, she egregiously misrepresents that David Meyers "employed racist and sexist tropes about [her]" (*see* Opp. at 20 (citing SAC ¶ 107)), but without question, the SAC does not identify a single "racist or sexist trope" that Meyers or anyone else at BLP ever made to or about Ndugga. Instead, the SAC merely alleged that Meyers reported that she "raised her voice" and "was aggressive" during a "verbal altercation," which Ndugga, not Meyers, chooses to characterize as a "depict[ion]" of an "angry Black woman." (SAC ¶¶ 106-07.) Ndugga's "subjective interpretation" of these "facially non-discriminatory terms does not, itself, reveal discriminatory animus." *Humphries*, 2013 WL 6196561, at *9.

Ndugga has failed to plausibly allege that she was subject to a pattern of "severe or pervasive" abusive conduct, or even that she was treated less well, *because of* her sex or her race. *See, e.g., Moore v. Verizon*, 2016 WL 825001, at *2, 11-13 (S.D.N.Y. Feb. 5, 2016). In *Moore*, the plaintiff alleged that after she had a verbal altercation with a superior, the superior falsely reported plaintiff for using inappropriate racial language in the office and the supervisor also "used profanity" towards her, spoke to her in a "threatening tone," and demonstrated "hostile body language" towards her. *Id.* at *2, 11-13. The plaintiff further alleged that she was excluded from meetings, subjected to "angry stares," "yelled at," and was subjected to one instance of unwelcome physical contact. *Id.* The court in *Moore* observed that the plaintiff's allegations

amounted to "workplace difficulties entirely consistent with non-race[-based], non-gender-based personality disputes" that did not suggest discriminatory animus, and dismissed the plaintiff's claims under Title VII, the NYSHRL and NYCHRL. *Id.* at *7. Ndugga's allegations, which fall short of those in *Moore*, do not give rise to a plausible inference of discriminatory animus based on race or gender. Counts Five and Six of the SAC should be dismissed.

## III. PLAINTIFFS SHOULD NOT BE GIVEN LEAVE TO REPLEAD FOR A FOURTH TIME

"'Repeated failure to cure deficiencies by amendments previously allowed' is grounds for a District Court to deny leave to replead." *Weinreb v. Xerox Bus. Servs., LLC Health & Welfare Plan*, 323 F. Supp. 3d 501, 522 (S.D.N.Y. 2018) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Tiraco v. N.Y. State Bd. of Elections,* 963 F. Supp. 2d 184, 200-01 (E.D.N.Y. 2013) (same). Plaintiffs, who are represented by counsel, have already had *three* opportunities to plead a cognizable claim, including once in response to BLP's first motion to dismiss (*see* Dkt. 19). Plaintiffs' claims therefore should be dismissed with prejudice and without leave to replead.

## IV. PLAINTIFFS WAIVED THEIR RIGHT TO DEMAND A JURY TRIAL

Plaintiffs concede that they did not make a jury demand in state court. They also admit that they did not comply with this Court's September 14, 2020 Order directing them to serve and file a jury demand by a date certain. (Dkt. 7.) Since Plaintiffs (including Ndugga as a member of the putative class) undisputedly "fail[ed] to make a demand when so ordered," they have waived their right to a jury trial. Fed. R. Civ. P. 81(c)(3)(A). *Wynn v. AC Rochester*, 3 F. Supp. 2d 358 (W.D.N.Y. 1998) is instructive:

> On April 7, 1995, a notice was sent out to all parties, in accordance with the Local Rules, advising that unless a written request was made for a jury trial within thirty days of the date of that notice, the right to a jury trial would be waived. Having failed to timely request a jury trial, plaintiff is precluded from doing so now. The law is clear that the failure of a party to serve and file a timely demand for a jury trial constitutes a waiver of the right to trial by jury.

*Id.* at 360-61. In the event this Court does not grant Defendant's Motion in full, it should strike Plaintiffs' untimely jury demand.

Contrary to Plaintiffs' suggestion, Rule 38 does not govern demands in cases removed from state court; rather, "Rule 81(c) provides for claim for jury trial in removed actions." Fed. R. Civ. P. 38, Advisory Committee Notes (1937). Plaintiffs ask the Court to exercise its discretion under Rule 39 to excuse their failure to demand a jury trial, citing *Cascone v. Ortho Pharmaceutical Corp*., 702 F.2d 389 (2d Cir. 1983). *Cascone* is distinguishable from this case in two respects. First, unlike the plaintiff's counsel in *Cascone* who had been practicing in federal court for only a year, Plaintiffs here are represented by two sophisticated law firms that have substantial experience litigating in this forum. Second – and more importantly – in *Cascone*, the court expressly found that none of the circumstances in Rule 81(c) were directly applicable. *Id.* at 391. In contrast, here, the Court's Order is squarely within Rule 81(c)(3)(A). Because the rationale for latitude in *Cascone* is entirely inapplicable in this case, if the Court is inclined to consider Plaintiffs' request (which it should not), it should apply the standard set forth in *Noonan v. Cunard Steamship Co*., 375 F.2d 69, 70 (2d Cir. 1967) and consider whether Plaintiffs have made a "showing beyond mere inadvertence" that would warrant the exercise of discretion. *See Galper v. JPMorgan Chase Bank, N.A.*, 2016 WL 4533267, at *2 (S.D.N.Y. Aug. 30, 2016) (applying *Noonan* in a removed case). Plaintiffs do not and cannot satisfy this standard.

## CONCLUSION

For all of the foregoing reasons, the Court should grant Defendant's motion to dismiss the SAC in its entirety with prejudice and without leave to replead or, in the alternative, strike Plaintiffs' demand for a jury trial, together with such other and further relief as the Court deems just and proper.

Dated: New York, New York
February 26, 2021

PROSKAUER ROSE LLP

By: *<u>/s/ Elise M. Bloom</u>*
Elise M. Bloom
Rachel S. Philion
Allison L. Martin
Eleven Times Square
New York, New York 10036
(t) 212-969-3000
(f) 212-969-2900
ebloom@proskauer.com
rphilion@proskauer.com
amartin@proskauer.com

Mark W. Batten (admitted *pro hac vice*)
One International Place
Boston, Massachusetts 02110
(t) 617-526-9850
(f) 617-526-9899
mbatten@proskauer.com

*Attorneys for Defendant Bloomberg L.P.*