

Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

May 2, 2022

Elise M. Bloom
Member of the Firm
d +1.212.969.3410
f 212.969.2900
ebloom@proskauer.com
www.proskauer.com

**By ECF**

The Honorable Gabriel W. Gorenstein
U.S. District Court, Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    <u>*Ndugga v. Bloomberg L.P.*, Civil Action No. 20-cv-07464 (GHW)(GWG)</u>

Dear Judge Gorenstein:

We represent Defendant Bloomberg L.P. ("BLP") and respectfully submit this letter in response to Plaintiff's April 28, 2022 letter requesting a discovery conference. (Dkt. 105.)

In repeated meet-and-confer calls and multiple drafts over more than two months since Defendant first presented an initial draft of an ESI protocol on February 18, 2022 – most of which involved repeated concessions by BLP to seriatim demands by the Plaintiff – the parties resolved most of their disputes. What remains is a dispute over a straightforward proposal that relies on an industry-standard tool – Technology Assisted Review ("TAR") with Continuous Active Learning ("CAL") – to search for responsive documents, the success of which will be measured according to well-accepted, mainstream criteria. As set forth below, the Court should approve Defendant's proposal for the use of TAR and reject Plaintiff's continued demands for extraordinary procedures that are not supported by the case law.

**I.    DEFENDANT'S RESPONSE TO PLAINTIFF'S SPECIFIC REQUESTS FOR RELIEF**

    **a.    Defendant's proposed search strategy is consistent with best practices.**

While some iterations of the draft protocol would have used search terms to narrow the universe of documents to be searched by TAR, BLP eventually moved search terms to the side, for two reasons. First, because current TAR software is so effective at separating relevant from irrelevant documents, there is no need for an initial search-term step; the TAR algorithm does that work for the parties without the need to agree on search terms and then meet and confer about the results. Second, as described in Part II below, Plaintiff's never-ending objections to the protocol suggest that the parties are better served by an approach that does not rely on agreements between them. Rather than trying to agree on search terms and then on the results of those searches, more likely than not requiring the Court to resolve disputes, it will be far more efficient to let the TAR algorithm do that work.

But Plaintiff mischaracterizes Defendant's position in claiming that Defendant is unwilling to use search terms at all. The latest version of the protocol, which Plaintiff attached to her letter, expressly provides that "the parties will cooperate regarding the disclosure and formulation of appropriate search protocols for use in the review and production of ESI, including selection of

**Proskauer»**

May 2, 2022
Page 2

custodians, *search terms*, and/or search methodology" and may use TAR for other categories of ESI. (Dkt. 150-1 at para. 4.a-c) (emphasis added); *see also id*. at para. 4.d.iii (permitting the parties to "request a reasonable number of additional search terms or custodians" no later than 90 days before the close of fact discovery). In other words, Defendant expressly agreed that the parties could resort to search terms where appropriate.[1]

In any event, courts have conclusively rejected Plaintiff's argument that it would be inefficient to apply TAR before introducing search terms. *See FCA US LLC v. Cummins, Inc.*, 2017 WL 2806896, at *1 (E.D. Mich. Mar. 28, 2017) ("Applying TAR to the universe of electronic material before any keyword search reduces the universe of electronic material is the preferred method. The TAR results can then be culled by the use of search terms or other methods."); *Rio Tinto v. Vale*, 2015 WL 4367250, at *1 (S.D.N.Y. July 15, 2015) ("The Court itself felt bound by the parties' protocol, such as to allow keyword culling before running TAR, *even though such pre-culling should not occur in a perfect world*.") (emphasis added); *Progressive Cas. Ins. Co. v. Delaney*, 2014 WL 3563467, at *11 (D. Nev. July 18, 2014) (criticizing plaintiff's plan to apply TAR only to documents hitting the search terms, and not to the entire document population, as inconsistent with the "best practices" guide of its TAR vendor).

    b.    **ESI discovery should not commence until an ESI Protocol is in place.**

Plaintiff complains that Defendant should have begun searching, reviewing, and producing ESI prior to the implementation of an agreed-upon ESI protocol. But that would have been highly inefficient. In the very case on which Plaintiff relies, *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637 (S.D.N.Y. 2019), the Court noted the defendant's explanation that "it did not conduct a thorough review of email accounts before reaching an ESI protocol because such an approach would have been expensive and inefficient," and concluded that the defendant's approach was consistent with its discovery obligations. *Id*. at 646. Indeed, the Court noted in the footnote cited by Plaintiff that the "two-step" process suggested by Plaintiff "may result in increased costs for the producing party." *Id*. at 646 n.5.

Here, after extensive efforts to reach a compromise (detailed in Part II below), the parties have reached agreement with respect to all terms of the draft ESI protocol with the exception of paragraph 4, which concerns the use of TAR. (Dkt. 105-1.) Particularly now that Plaintiff has asked the Court to rule with respect to the terms of the ESI protocol, it would make little sense to require Defendant to commence ESI discovery before the ESI protocol is finalized.

    c.    **Defendant should not be required to share non-responsive documents with Plaintiff.**

Plaintiff also asks the Court to require Defendant to share a random cross-section of non-responsive documents so that she can confirm that the TAR system was properly trained. As an

---

[1] For example, Plaintiff has indicated that she prefers to produce ESI using search terms rather than TAR. As another example, there are likely documents that Defendant can locate more easily using search terms rather than TAR, such as communications between particular individuals, or documents such as spreadsheets that do not lend themselves to the content analysis that the TAR algorithm uses.

**Proskauer»**

May 2, 2022
Page 3

initial matter, Plaintiff's request is not properly before this Court because Plaintiff made no attempt to meet and confer regarding this issue. Although the parties have conferred extensively about the contents of the ESI protocol, Plaintiff did not previously request that such a provision be included. Indeed, Defendant saw this request for the first time in Plaintiff's letter to the Court.

In any event, Plaintiff's request should be rejected. As former Magistrate Judge James Francis noted in a recent decision denying a similar request, it is "contrary to the rules of discovery to require disclosure of non-responsive documents." *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *9 (W.D. Pa. Aug. 23, 2021). Judge Francis acknowledged that some courts had allowed a requesting party to review a sample of non-responsive documents (including the 2017 *Winfield* decision, relied on by Plaintiff), but distinguished those cases on the basis that the parties had "utilized either search terms exclusively or earlier versions of TAR." *Id*. The Court held that such an approach was no longer justified given that the more recent iteration of TAR technology uses CAL, which "provides a means for achieving greater confidence in the completeness of a search without the need to reveal non-responsive documents." *Id*.

      **d.**      **The Court should approve Defendant's proposed 80% recall rate, which is at the high end of the industry standard.**

"'Recall rate' refers to the percentage of responsive documents within the TAR dataset that have been correctly identified." *Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 3288058, at *7 n.4 (D. Kan. June 18, 2020). "[I]f the target recall rate is set too high, it may require unreasonable and disproportionate human review to train the computer to be able to achieve that targeted recall." *Id*. at *19 (internal quotation and citation omitted); *see also Lawson v. Spirit AeroSystems, Inc.*, 2020 WL 1813395, at *9 (D. Kan. Apr. 9, 2020) (finding that motion to compel which sought a 100% TAR recall rate "borders on the abusive").

Plaintiff's objection to Defendant's proposed 80% recall rate is puzzling, as the very case on which Plaintiff relies notes that "70-80% estimated recall is often considered reasonable by the courts." *In re Diisocyanates Antitrust Litig.*, 2021 WL 4295729, at *8. *See also Lawson*, 2020 WL 1813395 at *8 ("Courts have found TAR processes achieving a 75% recall rate to be appropriate.") (citing The Sedona Conference Tar Case Law Primer, 18 SEDONA CONF. J. 1, 37 (2017)); *In re Bair Hugger Forced Air Warming Prod. Liab. Litig.*, 2016 WL 3702959, at *2 (D. Minn. July 8, 2016) (setting an 80% target recall rate); *Mark, et al. v. Gawker Media LLC, et al.*, No. 13-cv-4347 (AJN) at Dkt. 108, para. 8 (S.D.N.Y. March 30, 2015) (same). Defendant's proposal is at the high end of that range and is consistent with the recall rate approved by this Court in other cases. *See, e.g., Sinclair, et al. v. Mike Bloomberg 2020 Inc.*, No. 20-cv-4528 (LTS)(GWG) at Dkt. 41, para. 5 (S.D.N.Y. March 11, 2021) (setting an 80% target recall rate); *Sklair, et al. v. Mike Bloomberg 2020 Inc., et al.*, No. 20-cv-2495 (LTS)(GWG) at Dkt. 68, para. 5 (S.D.N.Y. Dec. 9, 2020) (same); *Wood, et al. v. Mike Bloomberg 2020 Inc.*, No. 20-cv-2489 (LTS)(GWG) at Dkt. 165, para. 5. (S.D.N.Y. Oct. 30, 2020) (same).

Plaintiff's objection to Defendant's proposed 80% recall rate on the grounds that such a rate purportedly "offers only the illusion of objectivity" betrays a fundamental misunderstanding of the TAR process. "[C]omputer-assisted review is not perfect, [but] the Federal Rules of Civil

**Proskauer»**

May 2, 2022
Page 4

Procedure do not require perfection." *Moore v. Publicis Groupe*, 287 F.R.D. 182, 191 (S.D.N.Y. 2012). *See also Treppel v. Biovail Corp.*, 233 F.R.D. 363, 374 (S.D.N.Y. 2006) ("[T]here is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations."); *Rio Tinto PLC v. Vale S.A.*, 306 F.R.D. 125, 129 (S.D.N.Y. 2015) ("[I]t is inappropriate to hold TAR to a higher standard than keywords or manual review."); *Winfield v. City of New York*, 2017 WL 5664852, at *9 (S.D.N.Y. Nov. 27, 2017) ("perfection in ESI discovery is not required").

Because an 80% recall rate is consistent with the relevant case law and best practices in the industry, the Court should approve Defendant's proposed recall rate.

### e. Plaintiff's demand that all ESI discovery be completed this month is manifestly unreasonable.

Plaintiff's final request that Defendant be ordered to complete all ESI discovery by the end of this month would place an impossible burden on Defendant and should be rejected out of hand. Indeed, Plaintiff's request is particularly unreasonable given that the burden to collect, search, review, and produce ESI from multiple custodians would fall entirely on Defendant, which has repeatedly tried since February to reach agreement on an ESI protocol. Defendant will commence ESI discovery promptly as soon as an ESI protocol is in place. Fact discovery does not close until October 14, 2022, and it is therefore premature, and impractical, to set an arbitrary cutoff date in just four weeks for the production of all ESI. (Dkt. 60 at 2.)

## II. RELEVANT PROCEDURAL BACKGROUND

Although not material to the remaining disputes over the content of the ESI protocol, Plaintiff's suggestion that BLP has unduly delayed resolution of these issues mischaracterizes the history of BLP's efforts to reach agreement on Plaintiff's demands.

### a. The draft ESI protocol.

On February 14, 2022, the parties exchanged their initial responses to each other's written discovery requests. Four days later, on February 18, Defendant sent Plaintiff a draft ESI protocol. The draft protocol sent by Defendant was substantially similar to the ESI protocols approved by this Court in the *Sinclair*, *Sklair*, and *Wood* cases referenced above. On February 21, Plaintiff sent extensive revisions to most of the provisions in the ESI protocol and proposed multiple additional provisions. On February 25, Defendant sent its further revisions and comments to the ESI protocol. Although Plaintiff purportedly sent its edits in redline, Defendant discovered several substantive changes that were not reflected in the redline and only became apparent when Defendant performed a line-by-line comparison of the original version it had sent Plaintiff with the version it received back. The parties exchanged further comments and edits to the ESI protocol on February 28, March 1, March 2, and March 3, and, on March 8, Defendant sent a revised version of the ESI protocol in which the number of disagreements were substantially narrowed. On March 10, Plaintiff noted that she was reviewing the revised ESI protocol and that she agreed that "a further meet and confer regarding the proposed ESI Protocol could be helpful." Plaintiff's counsel asked for a date in the week of March 21 because of her

**Proskauer**

May 2, 2022
Page 5

trial schedule. The parties subsequently met and conferred on March 22. On March 24, Defendant clarified one question of Plaintiff's regarding its anticipated ESI search, and noted:

> You did not raise any other objections to the draft protocol on the meet-and-confer call, and in light of our clarification on the breadth of the search, we are not aware of any outstanding disagreements. We have made numerous and substantial changes to our initial draft of the protocol to accommodate Plaintiff's demands. Please let us know by the end of this week whether we are in agreement on the protocol, or if not, what remains to be discussed.

Although Defendant believed that the parties were close to an agreement, Plaintiff sent a revised version of the ESI protocol later that day containing multiple additional proposed edits. On April 5, the parties met and conferred again via telephone regarding the ESI protocol, and Defendant provided an updated protocol on April 20. As Plaintiff acknowledges in her letter to the Court, on the following day, Plaintiff informed Defendant that the parties had reached agreement with respect to all of the provisions in the ESI protocol "with the exception of the paragraph on TAR." (Dkt. 105 at 2.) On April 26, Defendant proposed a list of 10 ESI custodians, in accordance with paragraph 4 of the draft ESI protocol, which had long specified that the producing party would start the process by identifying proposed custodians. Defendant's proposed list included the three members of BLP's Editorial Management Committee, pursuant to this Court's order during the April 7 conference, as well as relevant supervisors and HR personnel. Plaintiff has objected that Defendant's list omits other relevant custodians, and the parties continue to confer in an attempt to reach agreement on that list.

In the light of the foregoing history, Plaintiff's accusation that Defendant has engaged in a "strategy of delay and obstruction" is not supported by the record. To the contrary, the primary cause of any delay is Plaintiff's persistent refusal to agree to Defendant's reasonable proposals.

      b.      **The status of the parties' document productions to date.**

Plaintiff without justification criticizes Defendant's document productions to date as inadequate, while boasting that she has produced 2,993 documents. First, Defendant already produced last week some of the documents referenced in Plaintiff's letter, including organizational charts and job descriptions. As we have repeatedly advised Plaintiff, most of the remaining documents she seeks will need to be searched for as part of ESI discovery. Moreover, Plaintiff's reference to her own production is misleading. The overwhelming majority of documents produced by Plaintiff (2,871 out of 2,993) consist of printouts of her entire social media posting history during her employment, most of which are completely irrelevant to this case. It is entirely natural that the discovery burdens in a case like this are disproportionate. Plaintiff must only search her own documents, with which she is presumably familiar, while a corporate defendant like BLP must search for documents among multiple disparate custodians. Plaintiff's reference to the documents produced to date is not relevant to the instant dispute regarding ESI discovery, which likely will be the source of the vast majority of documents produced by Defendant in this case.

      \*   \*   \*

We thank the Court for its attention to this matter.

Proskauer»

May 2, 2022
Page 6

Respectfully submitted,

*/s/ Elise M. Bloom*

Elise M. Bloom

cc:     All Counsel of Record (*via ECF*)