UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

```
NAFEESA SYEED and NAULA NDUGGA, on  :
behalf of themselves and similarly situated women,  :
                                          :
                          Plaintiff,      :
            -against-                     :
                                          :
BLOOMBERG L.P.,                           :
                                          :
                          Defendant.      :
```
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  8/17/2022

1:20-cv-7464-GHW

MEMORANDUM OPINION &
ORDER

GREGORY H. WOODS, United States District Judge:

## I.     INTRODUCTION

Plaintiff Naula Ndugga, a Black woman who worked for Defendant Bloomberg L.P.'s

("Bloomberg") media division in New York, alleges that she was denied promotions for which she

was well-qualified, paid less than her male counterparts, subjected to derogatory conduct and

remarks targeting her race and gender, and retaliated against for reporting that discriminatory

conduct.  Accordingly, she brings various claims for discrimination and retaliation against

Bloomberg.  In a previous opinion, the Court dismissed all claims by Ms. Ndugga's co-plaintiff, Ms.

Nafeesa Syeed, and also dismissed Ms. Ndugga's claims under Title VII of the Civil Rights Act of

1964 ("Title VII"), as well as Ms. Ndugga's claims for disparate impact under the New York State

Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL").

In an amended complaint, Ms. Ndugga reasserted her Title VII claims and her disparate

impact claims.  She also brought claims for retaliation under Title VII, the NYSHRL, and the

NYCHRL.  Defendant moved to dismiss those claims.  Because Ms. Ndugga did not file her

amended complaint in the 90 days after she received a right to sue letter from the Equal

Employment Opportunity Commission ("EEOC"), her Title VII claims are dismissed.  In addition,

Ms. Ndugga fails to sufficiently plead a claim for disparate treatment under the NYSHRL and NYCHRL. However, Ms. Ndugga's claim for retaliation may proceed.

## II.        BACKGROUND AND PROCEDURAL HISTORY[1]

### a.  Factual History

In significant part, the facts are set forth in the Court's previous opinion on Defendant's first motion to dismiss. *See generally Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314 (S.D.N.Y. 2021) ("*Syeed I*"). To the extent that Plaintiff's newly pleaded allegations are relevant the Court's analysis, those allegations are embedded into the discussion below.

### b.  Procedural History

The majority of this case's procedural history is discussed in *Syeed I*. Picking up where that opinion left off, on October 25, 2021, the Court granted in part and denied Defendant's motion to dismiss Plaintiffs' second amended complaint. *See id.*; Dkt. No. 50. In that opinion, the Court dismissed Ms. Syeed's claims in full, and dismissed Ms. Ndugga's Title VII claims and her claims for disparate impact and failure to promote under the NYCHRL and NYSHRL. *See generally Syeed I*. The Court permitted Ms. Ndugga's claims for disparate pay and hostile work environment under the NYCHRL and NYSHRL to proceed. *Id.*

Plaintiffs amended their complaint for the third time on December 10, 2021. Dkt. No. 59 ("TAC"). On February 18, 2022, Defendant moved to dismiss the third amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 81 ("Mot."). Plaintiff filed its opposition on March 11, 2022. Dkt. No. 90 ("Opp'n."). Defendant filed its reply on March 25, 2022. Dkt. No. 91 ("Reply").

---

[1] The facts are drawn from Plaintiffs' third amended complaint ("TAC"), Dkt. No. 59, and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.     **LEGAL STANDARD**

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept" as true a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545. And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect."

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (holding that a court may "consider the plaintiff's relevant filings with the EEOC" on a motion to dismiss if the filings "are integral to and solely relied upon by the complaint" (quotation and brackets omitted)).  A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough."  *Nicosia*, 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

## IV.    DISCUSSION

### a.  Ms. Ndugga's Title VII Claims Are Dismissed

Ms. Ndugga's Title VII claims, TAC ¶¶ 81–96, are dismissed because they were not timely filed within the 90-day period after she received a right to sue letter from the EEOC.[2]  "As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC."  *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003); *see also* 42 U.S.C. § 2000e–5(e)-(f).  "Exhaustion of administrative remedies through the EEOC is 'an essential element' of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court."  *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam) (quoting *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000)).  "The purpose of this exhaustion requirement is to give the administrative agency

---

[2] "The failure to exhaust administrative remedies is an affirmative defense, for which defendant bears the burden of proof." *Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 n.5 (E.D.N.Y. 2013).  While affirmative defenses are most typically asserted in an answer, they "may be raised on a motion to dismiss . . . where the complaint itself establishes the circumstances required as a predicate to a finding that the affirmative defense applies." *In re Sept. 11 Prop. Damage & Bus. Loss Litig.*, 481 F.Supp.2d 253, 258 (S.D.N.Y.2007) (alteration omitted) (quoting *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004)).  Here, Ms. Ndugga's failure to exhaust her remedies before the EEOC is clear from the face of her complaint and documents within the purview of judicial notice, and the Court will consider Defendant's exhaustion defense in considering the current motion to dismiss. *See Jordan*, 928 F. Supp. 2d at 594 n.5 (considering the plaintiff's failure to exhaust their remedies before the EEOC in deciding the defendant's motion to dismiss).

the opportunity to investigate, mediate, and take remedial action." *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 384 (2d Cir. 2015) (quoting *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998)). That purpose "would be defeated if a complainant could litigate a claim not previously presented to and investigated by the EEOC." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 26 (2d Cir. 1985).

Under Title VII's exhaustion requirements, a "right-to-sue letter is a necessary prerequisite to filing suit." *Newsome v. Berman*, 24 F. App'x 33, 34 (2d Cir. 2001) (citing 42 U.S.C. § 2000e–5(f)(3); 29 C.F.R. 1601.28(e)(1)). Title VII expressly provides that a plaintiff must receive a right-to-sue letter before filing a civil action asserting a Title VII claim:

> If a charge filed with the Commission . . . is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge . . . the Commission has not filed a civil action under this section . . . or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission . . . *shall so notify the person aggrieved* and within ninety days after the giving of such notice *a civil action may be brought against the respondent named in the charge* . . . by the person claiming to be aggrieved . . . .

42 U.S.C. § 2000e–5(f) (emphasis added). "[A] plaintiff's failure to obtain a notice-of-right-to-sue-letter is not a jurisdictional bar, but only a precondition to bringing a Title VII action that can be waived by the parties or the court[,]" and accordingly, a failure to obtain a right-to-sue letter can be excused by the Court on equitable grounds. *Pietras v. Bd. of Fire Comm'rs of Farmingville Fire Dist.,* 180 F.3d 468, 474 (2d Cir. 1999).

"If the EEOC issues a notice of a plaintiff's right to sue, then that plaintiff must file their court case within 90 days after receipt of the notice to avoid being time barred." *McLeod v. 1199 SEIU United Healthcare*, No. 1:17-CV-7500-GHW, 2019 WL 1428433, at *8 (S.D.N.Y. Mar. 29, 2019) (citing 42 U.S.C. § 2000e-5(f)(1)); *Pohlman v. Vill. of Freeport*, No. 19CV05277DLIRLM, 2020 WL 5878257, at *3 (E.D.N.Y. Sept. 30, 2020) ("[A] claim under Title VII must be filed within 90 days of the claimant's receipt of a right-to-sue letter."). "The 90-day limit is not jurisdictional but rather

operates as a statute of limitations." *Poniatowski v. Johnson*, No. 1:13-CV-1490-GHW, 2014 WL 3844790, at *2 (S.D.N.Y. Aug. 5, 2014). Thus, it "is subject to the doctrine of equitable tolling." *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 216 (S.D.N.Y. 2010); *see also Vollinger v. Merrill Lynch & Co., Inc.*, 198 F. Supp. 2d 433, 440 (S.D.N.Y. 2002) ("[T]he [90]-day filing requirement is akin to a statute of limitations and is subject to waiver, equitable estoppel, and equitable tolling.").

Here, Ms. Ndugga received her right to sue letter on February 2, 2021. TAC ¶ 6. The third amended complaint was not filed until December 10, 2021. Dkt. No. 59. Thus, there is no dispute that Ms. Ndugga filed the third amended complaint more than 90 days after the receipt of the February 2, 2021 right to sue letter such that her Title VII claims are barred by the statute of limitations.[3]

Still, Ms. Ndugga argues that the Court should nonetheless permit her Title VII claims to proceed because either (1) the third amended complaint should "relate back" to the originally filed complaint; or (2) the 90-day limitations period should be equitably tolled. Neither argument is persuasive. As to the first, "the relation back doctrine is inapplicable where . . . the original complaint itself is untimely." *Bradley v. Nolan,* No. 03 Civ. 1616 (GBD), 2007 WL 959160, at *2 (S.D.N.Y. Mar. 30, 2007); *Nkansah v. United States*, No. 18CIV10230PACSLC, 2021 WL 5910647, at *5 (S.D.N.Y. Aug. 30, 2021), report and recommendation adopted, No. 18CV10230PACSLC, 2021 WL 5493214 (S.D.N.Y. Nov. 23, 2021) (same). Here, the Court previously found that Ms. Ndugga's Title VII claims were not timely because she failed to exhaust her remedies—in that case, because

---

[3] Ms. Ndugga asserts that she "incorporated a request for leave to amend into [Plaintiffs'] opposition brief" to Defendant's first motion to dismiss. Opp'n at 4. Plaintiffs merely noted, in a footnote, that they should be granted leave to amend if the Court denied their motion. Dkt. No. 35 n.19. Plaintiffs did not mention the February 2, 2021 right-to-sue letter in that footnote, nor did they request leave to amend Ms. Ndugga's Title VII claims. *Id.* That conclusory footnote is a far cry from a motion to amend the Title VII claims in a complaint.

she had not received a right to sue letter in the first place prior to filing her Title VII claims.  *See Syeed I*, 568 F. Supp. 3d. 314.  Thus, the relation back doctrine does not apply.[4]

Ms. Ndugga's argument that the 90-day filing deadline should have been equitably tolled is similarly unpersuasive.  "'Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.'"  *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Mottahedeh v. United States*, 794 F.3d 347, 352 (2d Cir. 2015)).  "The term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).  Moreover, "[t]o secure equitable tolling, it is not enough for a party to show that he experienced extraordinary circumstances[;] [h]e must further demonstrate that those circumstances caused him to miss the original filing deadline."  *Id.*  In addition, even if a party demonstrates a causal relationship between the extraordinary circumstances and the lateness of his filing, the party seeking equitable tolling is "required to show reasonable diligence in pursuing his claim throughout the period he seeks to have tolled."  *Id.* at 134.  This showing cannot be made if the party, "acting with reasonable diligence, could have filed on time notwithstanding" the extraordinary circumstances.  *Bolarinwa v. Williams*, 593 F.3d 226, 231 (2d Cir. 2010).

Here, Ms. Ndugga does not identify any extraordinary circumstances that prevented her from filing an amended complaint within the 90-day filing deadline.  Recent case law reinforces that

---

[4] Neither is Ms. Ndugga's reliance on *Cassells v. Univ. Hosp. at Stony Brook*, No. 86cv698, 1987 WL 3717 (E.D.N.Y. Jan. 12, 1987).  In *Cassells*, the Court did not address whether a plaintiff could file an amended complaint more than 90 days after receiving a right to sue letter.  Rather, the court granted plaintiff's motion to amend, which was filed at some point between receiving a right to sue letter in August 1986 and the issuance of a decision on a motion to dismiss on January 12, 1987.  *Id.* at *5.  Because of the age of this case, the Court cannot reference the docket to determine whether than motion was filed within the 90-day time limit.  Thus, the Court will not assume, as Plaintiff seems to do, that the motion was filed outside of that window.  Indeed, without any discussion of the issue in *Cassells*, it is possible that the motion to amend was filed within that 90-day limit, and the case would be inapplicable to this case.

a plaintiff must identify some extraordinary circumstance that prevented them from meeting the 90-day deadline in order to invoke equitable tolling. *See Edo v. Antika Pizzeria Astoria, Inc.*, 852 F. App'x 618, 619 (2d Cir. 2021) (determining that the plaintiff's claims were untimely where he failed to file a lawsuit within 90 days of receiving a right to sue letter, despite the fact that record evidence demonstrated he had been hospitalized for psychiatric treatment immediately before receiving the letter); *Gomez v. Henry St. Settlement*, No. 20CV5585ATBCM, 2021 WL 4943509, at *5 (S.D.N.Y. July 27, 2021), report and recommendation adopted, No. 20 CIV. 5585 (AT), 2021 WL 4239177 (S.D.N.Y. Sept. 17, 2021) (no equitable tolling where the plaintiff failed to file a lawsuit within 90 days of receiving his right to sue letter because he had not been residing at the address to which it was sent; *Kitani v. New York City Transit*, No. 19-CV-1043 (VSB), 2022 WL 874781, at *6 (S.D.N.Y. Mar. 24, 2022) (requiring claims to be filed within 90-days of receipt of a right to sue letter). Without having identified any such circumstance, the 90-day deadline will not be equitably tolled.[5]

Ms. Ndugga asserts that she need not identify such a circumstance because the 90-day requirement is automatically tolled any time a right to sue letter is received subsequent to a Title VII lawsuit being initiated. Opp'n. at 4–5. Ms. Ndugga relies on *Brunson-Bedi v. New York*, No. 15 CIV. 9790 (NSR), 2018 WL 2084171 (S.D.N.Y. May 1, 2018) in support of that argument. In *Brunson-Bedi*, a court commented, "where a plaintiff has received a 'right to sue letter subsequent to commencement of a Title VII action' and while the federal action is still pending, the statutory exhaustion requirements have been met 'based on . . . equitable principles.'" *Id.* at *4 (quoting *Benzo v. New York State Div. of Hum. Rts.*, No. 95 CIV. 5362 (LAP), 1997 WL 37961, at *1 (S.D.N.Y. Jan. 31, 1997), aff'd, 141 F.3d 1151 (2d Cir. 1998)). It then determined that the plaintiff's complaint would not be dismissed for failure to exhaust because the plaintiff failed to file an amended

---

[5] Counsel for Ms. Ndugga does not argue that their choice to ignore the deadlines established in the statute constitutes a basis for equitable tolling, and the Court does not conclude that it does.

complaint after receiving that letter.  However, it ultimately dismissed the Title VII claims on other

grounds, including because the plaintiff had not properly served the defendants.  *See id.* at *4 n.5, *7–

*10.  Notably, *Brunson-Bedi* conducted no analysis as to whether the plaintiff in that case satisfied the

Second Circuit's requirements for equitable tolling:  its analysis is limited to a determination that

*exhaustion* requirements can be satisfied when a plaintiff receives a right to sue letter after previously

filing a Title VII claims.[6]

Moreover, while *Brunson-Bedi* cited to other cases where courts had permitted Title VII

claims to proceed where a right-to-sue letter was filed after the initiation of a Title VII lawsuit**,** none

of those cases analyzed whether a plaintiff could file a right to sue letter outside of the 90-day

window for bringing an amended complaint.  Indeed, those cases either (1) were decided on issues

other than whether a later-received right to sue letter could toll the statute of limitations, *see Benzo v.*

*New York State Div. of Hum. Rts.*, No. 95 CIV. 5362 (LAP), 1997 WL 37961, at *9 (S.D.N.Y. Jan. 31,

1997), aff'd, 141 F.3d 1151 (2d Cir. 1998) (dismissing the plaintiff's complaints on other grounds);

(2) involved plaintiffs that had not received *any* right to sue letter, *see Hladki v. Jeffrey's Consol., Ltd.*,

652 F. Supp. 388, 393 (E.D.N.Y. 1987) ("A review of plaintiff's papers reveals no showing that

plaintiff has received a right to sue letter nor any indication that plaintiff has attempted to obtain a

right to sue letter since this action was commenced."); or (3) provided no significant analysis as to

why the receipt of a later-filed right to sue letter permitted the plaintiff's claims to proceed, *see*

*Kounitz v. Slaatten*, 901 F.Supp. 650, 655 (S.D.N.Y. 1995) (summarily permitting claims to proceed

without any analysis); *Obago v. Union of Am. Hebrew Congregations*, No. 89-CV-0608(LBS), 1989 WL

---

[6] Indeed, in analyzing whether service was proper on the defendant for whom the plaintiff had received a right to sue letter, the court determined to dismiss the complaint because the plaintiff did not serve the relevant defendant (although that defendant had been named in the original complaint) *within the 90-day deadline* that had been tolled under Federal Rule of Civil Procedure 4(m).  *Id.* at *8.

88665, at *2 (S.D.N.Y. Aug. 3, 1989) (same).  Accordingly, bound by the Second Circuit's established standard for equitable tolling, the Court declines to adopt *Brunson-Bedi's* rationale.

As the Court explained in its previous opinion, Ms. Ndugga could have easily ensured that her Title VII claims would be properly heard:  she could simply have filed a complaint with her state law claims and then filed an amended complaint within 90 days of receiving the February 2, 2021 right to sue letter to bring Title VII claims.  Having failed to do so, her next-best option would have been to file an amended complaint within the 90 days after her receipt of the February 2, 2021 right to sue letter.  Again, she took no steps to do so.  Ms. Ndugga's counsel could have readily complied with the statute's requirements.  They chose not to do so, and instead were left with this effort to contort the law to play clean-up after their initial strategic error.  That attempt proves unsuccessful.  Accordingly, because Ms. Ndugga's Title VII claims were filed more than 90 days after the receipt of her February 2, 2021 letter, they are not timely.  Thus, Defendant's motion to dismiss those claims is granted.

### b.  Ms. Ndugga's NYCHRL and NYSHRL Retaliation Claims Are Sufficiently Pleaded

Ms. Ndugga sufficiently pleads retaliation under the NYSHRL and NYCHRL.  The NYSHRL prohibits retaliation "against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."  N.Y. Exec. Law § 296.  The NYCHRL also makes retaliatory conduct illegal:  "Section 8-107(7) of the NYCHRL prohibits employers from 'retaliating or discriminating in any manner against any person because such person has opposed any practice forbidden under this chapter.'"  *Mihalik*, 715 F.3d at 112 (quoting N.Y.C. Admin. Code § 8-107(7)) (alterations omitted).

As discussed in *Syeed* I, prior to August 19, 2019, the pleading standards were generally the same for Title VII, section 1981, and NYSHRL claims.  *See Awad v. City of N.Y.*, No. 13 civ. 5753

(BMC), 2014 WL 1814114, at *5 (E.D.N.Y. May 7, 2014) ("Discrimination claims under § 1981 . . . and [the] NYSHRL are analyzed under the same framework and pleading standard as Title VII claims.") (citing *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010); *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 n.1 (2d Cir. 2000); *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 72 (2d Cir. 2006) (per curiam)). As a result, it was generally more difficult to state a claim under the NYSHRL than under the NYCHRL. *See, e.g.*, *Soloviev v. Goldstein*, 104 F. Supp. 3d 232, 250 (E.D.N.Y. 2015) ("[A] complaint may fail to state a claim under Title VII and NYSHRL but still be allowed to proceed under NYCHRL.")

However, the New York legislature amended the NYSHRL on August 19, 2019 to establish that its provisions should be construed liberally even if "federal civil rights law, including those laws with provisions worded comparably to the provisions of this article" have been construed narrowly. *Deveaux v. Skechers USA, Inc.*, No. 19-cv-9734 (DLC), 2020 WL 1812741, at *3 n.3 (S.D.N.Y. Apr. 9, 2020) (quoting NY Legis 160 (2019), 2019 Sess. Law News of N.Y. Ch. 160 (A. 8421)).[7] "The effect of [that amendment] is to render the standard for claims closer to the standard under the NYCHRL." *Wellner v. Montefiore Med. Ctr.*, No. 17 CIV. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019). "[H]owever, these amendments only apply to claims that accrue on or after the effective date of October 11, 2019." *Id.* "[A] cause of action for discrimination under the NYSHRL accrues and the limitation period begins to run on the date of the alleged discriminatory act." *Fair Hous. Just. Ctr., Inc. v. JDS Dev. LLC*, 443 F. Supp. 3d 494, 504 (S.D.N.Y. 2020), reconsideration denied, No. 19 CIV. 1171 (AT), 2020 WL 5018349 (S.D.N.Y. Aug. 25, 2020) (citing *Flaherty v. Massapequa Pub. Sch.*, 752 F. Supp. 2d 286, 293 (E.D.N.Y. 2010)) (alterations omitted).

---

[7] Specifically, the statute was amended "to eliminate the requirement that harassing or discriminatory conduct be "severe or pervasive" for it to be actionable and to adopt instead a more protective standard that prohibits conduct that results in "inferior terms, conditions or privileges of employment." *Maiurano v. Cantor Fitzgerald Sec.*, No. 19 CIV. 10042 (KPF), 2021 WL 76410, at *3 (S.D.N.Y. Jan. 8, 2021) (citing N.Y. Exec. Law § 296(1)(h))

Here, Ms. Ndugga alleges that she was retaliated against as early as "the fall of 2019." *See* TAC ¶ 69. Construing that allegation in the light most favorable to Ms. Ndugga, the court will apply the NYCHRL's more liberal pleading standard.

"New York courts have broadly interpreted the NYCHRL's retaliation provisions." *Taylor v. City of N.Y.*, 207 F. Supp. 3d 293, 308 (S.D.N.Y. 2016) (quoting *Mihalik*, 715 F.3d at 112). As to the NYSHRL, as previously noted, Plaintiffs seeking to plead retaliation under the NYSHRL faced a higher burden than those looking to do so under the NYCHRL prior to the NYSHRL's amendment in 2019. After that amendment, the standard for NYSHRL aligns with the NYCHRL standard for claims that accrued on or after October 11, 2019.

Accordingly, to state a claim for retaliation for the state law causes of action at issue here, Plaintiffs must plead that "(1) [they] engaged in a protected activity as that term is defined under the NYCHRL, (2) [their] employer was aware that [they] participated in such activity, (3) [their] employer engaged in conduct which was reasonably likely to deter a person from engaging in that protected activity, and (4) there is a causal connection between the protected activity and the alleged retaliatory conduct." *Bilitch v. New York City Health & Hosps. Corp.*, 194 A.D.3d 999, 1004, 148 N.Y.S.3d 238, 246 (2nd Dep't 2021); *see also Sanderson-Burgess v. City of New York*, 102 N.Y.S.3d 678, 681 (2nd Dep't 2019); *see also Warmin v. New York City Dep't of Educ.*, No. 16-cv-8044 (KPF), 2019 WL 3409900, at *7 (S.D.N.Y. July 29, 2019) (noting that a plaintiff must allege "that he 'took an action opposing his employer's discrimination, and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action.'") (quoting *Mihalik*, 715 F.3d at 112) (brackets omitted)).

i.  Protected Activity

Ms. Ndugga sufficiently alleges protected activity. "To survive a motion to dismiss, a plaintiff claiming retaliation under the NYCHRL must allege that she engaged in protected activity."

*Leroy v. Delta Air Lines, Inc.*, 36 F.4th 469, 474 (2d Cir. 2022). "A plaintiff engages in protected activity when she 'oppose[s]' discrimination." *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2021 WL 4434935, at *29 (S.D.N.Y. Sept. 23, 2021) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015)). Thus, to plausibly plead an NYCHRL retaliation claim, "the plaintiff must [allege] that she took an action opposing her employer's discrimination." *Mihalik*, 715 F.3d at 112.

Opposing discrimination "can include situations where a person, before the retaliatory conduct occurred, merely 'made clear her disapproval of the defendant's discrimination by communicating to him, in substance, that she thought his treatment of the victim was wrong.'" *Id.* (quoting *Albunio v. City of N.Y.*, 922 N.Y.S.2d 244, 947 (2011) (brackets omitted). "NYCHRL claims must be reviewed considering the totality of the circumstances, and the New York Court of Appeals has held that an employee can oppose his employer's discrimination without expressly mentioning discrimination as the source of his discontent." *Benzinger*, 447 F. Supp. 3d at 99, 129 (S.D.N.Y. 2020) (citing *Mihalik*, 715 F.3d at 113). Still, not all complaints about workplace conduct constitute charges regarding illegal discrimination. *See Fattoruso v. Hilton Grand Vacations Co., LLC*, 525 F. App'x 26, 28 (2d Cir. 2013) (dismissing the plaintiff's NYCHRL retaliation claim because the plaintiff's "belief that he was being treated 'unfairly' " does not "transform his complaints to [the employer] into charges over unlawful discrimination"); *Farzan v. Wells Fargo Bank, N.A.*, No. 12-cv-1217, 2013 WL 6231615, at *29 (S.D.N.Y. Dec. 2, 2013) (granting summary judgment on NYCHRL retaliation claim because the plaintiff did not "ma[ke] clear her disapproval of the defendant's discrimination by communicating to [the employer], in substance," the alleged illegal treatment) (quoting *Mihalik*, 715 F.3d at 112) (brackets omitted), aff'd sub nom *Farzan v. Genesis* 10, 619 F. App'x 15 (2d Cir. 2015); *Mi-Kyung Cho v. Young Bin Café*, 42 F. Supp. 3d 495, 507 (S.D.N.Y. 2013) (similar).

Plaintiff sufficiently alleges that she engaged in protected activity.  She asserts that, in 2019, she "reported . . . disparities in treatment to Human Resources," including that certain benefits were given to her male peers, but not to her, and that her male peers received a higher salary than she did. TAC ¶¶ 66–68.  She also alleges that she raised concerns about disparate pay and "holding managers responsible for discriminatory acts" during a July 14, 2020 phone call with the Editorial Management Committee.  *Id.* ¶ 78.  "Protected activity may include both formal and informal complaints, including complaints to management."  *See Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 331 (S.D.N.Y. 2020).  Here, Ms. Ndugga's complaints to management are adequately pleaded to be protected activity.  *See id.* at 331–32 (determining that informal complaints to a supervisor about pregnancy discrimination were protected); *Ingrassia v. Health & Hosp. Corp.*, 130 F. Supp. 3d 709, 724 (E.D.N.Y. 2015) (finding that complaints of age and gender discrimination to a supervisor constituted protected activity).

However, Ms. Ndugga does not allege that she engaged in protected activity when she complained that her team had chosen to use "an image of a young white woman holding seemingly impoverished Black Ugandan children" in a story about marathons around the world.  TAC ¶ 73. "A complaint about an editorial decision is not a complaint about an employment practice or a contract-related right."  *Fenner v. News Corp.*, No. 09 CIV. 09832 LGS, 2013 WL 6244156, at *26 (S.D.N.Y. Dec. 2, 2013).  Here, the selection of a photo is not related to any of Defendant's employment practices, and thus, it is not protected activity under the NYSHRL or NYCHRL.

Further, Ms. Ndugga did not engage in protected activity when she reported that her colleague had responded in a highly aggressive manner to Ms. Ndugga's complaint about the choice of that photo.  The complaint does not allege that she reported that his behavior was discriminatory or that he behaved in such a manner because of her race or gender; instead, it states only that, after he "got really angry and yelled at Ms. Ndugga" and "eventually stormed out of the room," Ms.

Ndugga reported "this altercation to the Division Head."  TAC ¶ 73.[8]   Without any allegation that she reported that altercation as having occurred at least in part because of her race or gender, Ms. Ndugga has not sufficiently alleged that her complaints regarding that "altercation" were protected activity.[9]

Finally, while Ms. Ndugga asserts in her opposition brief that she "complained to HR that she was being treated differently than her male colleagues" when an on-air interview she was scheduled to conduct was cancelled, the complaint does not, in fact, include such an allegation.  *See* Opp'n. at 20.  It states only that she "complained" that she had been "den[ied] [the] opportunity" and that the denial had "become a pattern of mistreatment."  *Id.* ¶ 76.  Without any allegations regarding the substance of her complaint, Ms. Ndugga does not sufficiently plead that she complained that she had been denied the interview on the basis of her gender or race.

Accordingly, some—but not all—of Ms. Ndugga's allegations are sufficient to plead that she engaged in protected activity.

### ii.   Knowledge

Ms. Ndugga sufficiently alleges that her employers knew of her protected activities.  She asserts that she complained about discriminator to "Human Resources."[10]  *Id.* ¶ 68.  That allegation is sufficient to allege that her employer knew of her complaints.

Defendant argues that she has not pleaded that her immediate supervisors were aware of her

---

[8] Ms. Ndugga's allegation that, after that incident, her supervisor "berate[d] her intelligence and worth as a Black female member of the team" is devoid of any factual details—*i.e.*, what the supervisor said or did—to suggest that the supervisor's inaction was due to Ms. Ndugga's race or gender.  *See* TAC ¶ 75.

[9] For similar reasons, Ms. Ndugga does not adequately allege that she engaged in protected activity when she "complained . . . about the lack of coverage regarding George Floyd's death."  *Id.* ¶ 76.  That complaint did not address an employment practice, but instead addressed an editorial choice.

[10] As further explained below, Ms. Ndugga's complaint to human resources is the only protected activity that can support her retaliation claims.

complaint to Defendant's human resources department. *See* Mot. at 9. In support, however, Defendant relies on *Pease v. City of New York* and *Tenemille v. Town of Ramapo*, *see* Reply at 9, both which can be distinguished because (1) those cases analyzed retaliation claims under Title VII's more onerous standard, not the standard for the NYSHRL and the NYCHRL; and (2) the plaintiff in *Pease* did not specifically identify to whom the plaintiff complained about the defendant's alleged discrimination, where here, Plaintiff specifically alleges that she reported the incident to the human resources department. *See Pease*, No. 19 CIV. 7693 (KPF), 2021 WL 2651400, at *13 (S.D.N.Y. June 28, 2021); *Tenemille*, No. 18-CV-724 (KMK), 2020 WL 5731964, at *13 (S.D.N.Y. Sept. 24, 2020).

### iii. Conduct that Would Reasonably Deter Ms. Ndugga from Engaging in that Activity

Ms. Ndugga sufficiently alleges that Defendant engaged in conduct that would reasonably deter her from engaging in the alleged protected activity. Ms. Ndugga alleges that after she complained about discrimination in the fall of 2019, she was "assigned to cover 'scraps'—subjects no one else wanted" although her colleagues were able to choose the journalistic topics that they wanted to cover. TAC ¶ 69. Under the NYCHRL's liberal pleading standards, being assigned less favorable work like Ms. Ndugga's "scraps" is sufficient to plead conduct that would deter an employee from complaining about discrimination. *Cf. Cardwell*, 2021 WL 4434935, at *35 ("Failure to staff Cardwell on any matters for several months is an action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'") (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)); *see also Coleman v. New York City Dep't of Health & Mental Hygiene*, No. 20CV10503 (DLC), 2022 WL 704304, at *6 (S.D.N.Y. Mar. 9, 2022) (determining that being denied the opportunity to work in certain division and being denied the opportunity to work in other divisions was sufficient to show that the employer engaged in deterrent conduct).

Ms. Ndugga also alleges that she was denied a raise in salary in February 2020, despite the fact that she had positive performance reviews and that her peers received raises. TAC ¶ 70. As alleged, the denial of that raise would deter an employee from complaining about discrimination. *Cf. Sesay-Harrell v. NYC Dep't of Homeless Servs.*, No. 12 CIV. 925 KPF, 2013 WL 6244158, at *15 (S.D.N.Y. Dec. 2, 2013) (commenting that delayed payment of the plaintiff's salary could be grounds for an NYCHRL retaliation claim, though the court ultimately dismissed the complaint on other grounds).[11]   Defendant's argument to the contrary relies on cases that can be distinguished.  *See* Mot. at 22–23.   In *Seitz v. New York State*, the court noted that being denied a raise would not be constitute adverse action where the plaintiff could "cite no facts suggesting that discretionary pay was awarded as a matter of course or that she was otherwise entitled to expect or rely on it."  No. 218CV4149PKCLB, 2019 WL 4805257, at *16 (E.D.N.Y. Sept. 30, 2019); *see also Shukla v. Deloitte Consulting LLP*, No. 119CV10578AJNSDA, 2020 WL 3181785, at *6 (S.D.N.Y. June 15, 2020) ("The Court finds that Plaintiff's statements that he was denied a salary increase and a bonus, without any additional facts regarding whether the bonus or pay increase were customary, expected or warranted, are insufficient to plausibly allege a material change in the terms and conditions of his employment.").   Here, by contrast, Ms. Ndugga has alleged that her peers were given raises, though she was not, and also that she was denied the raise despite positive performance reviews.  TAC ¶ 70. Those allegations are sufficient to allege that she was "entitled" to receive the raise.

---

[11] Ms. Ndugga's alleges that, after her supervisor aggressively responded to her complaint about the choice of photograph to depict Uganda, the supervisor "isolated her from meetings and left her off team emails," ostensibly in response to her complaint.  TAC ¶ 75.  As discussed, Ms. Ndugga's complaint about the editorial photographic choice is not protected under the NYCHRL, and thus the Court need not determine whether her supervisor's conduct is such that it would deter an employee from complaining about discrimination.

Notably, Ms. Ndugga does not plead that any action was taken against her after her call with the Editorial Management Committee after the July 14, 2020 conference call.  *See* TAC ¶¶ 78–80.  Accordingly, that call cannot serve as the basis for a retaliation claim.[12]

Accordingly, Ms. Ndugga has sufficiently pleaded that being assigned scraps and being denied a pay raise would deter an employee from complaining about discrimination.

### iv.  Causal Connection

Ms. Ndugga alleges causal connection between her complaints to her supervisors and the alleged deterrent conduct.  "A causal connection in retaliation claims can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'"  *Littlejohn v. City of New York*, 795 F.3d 297, 319 (2d Cir. 2015) (quoting *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000).  Decisions by judges in this Circuit have considered close temporal proximity between a protected activity and a materially adverse action sufficient to plead causal connection for an ADEA retaliation claim.  *See, e.g.*, *Barrer-Cohen v. Greenburgh Cent. Sch. Dist.*, No. 18 CIV. 1847 (NSR), 2019 WL 3456679, at *6 (S.D.N.Y. July 30, 2019); *Jones v. New York City Dep't of Educ.*, 286 F. Supp. 3d 442, 449 (E.D.N.Y. 2018); *Blundell v. Nihon Kohden Am.*, No. 1:15-CV-1503 (GTS)(DEP), 2017 WL 318842, at *13 (N.D.N.Y. Jan. 23, 2017).

Here, Ms. Ndugga alleges that she "reported . . . disparities in treatment to Human Resources" in "2019."  TAC ¶¶ 66–68.  She then alleges that, "[i]n the fall of 2019," she was

---

[12] Similarly, to the extent that Ms. Ndugga asserts that her November 2021 EEOC charge is protected activity, *see* Opp'n at 21, she does not allege any adverse actions that took place after that charge was filed.  Thus, even assuming that filing the charge is protected activity, she has not pleaded retaliation on the basis of that charge.

"assigned to cover 'scraps,'" and that in February 2020, she was "again denied a raise in salary" despite the fact that she had received positive feedback and that her colleagues were provided raises. *Id.* ¶¶ 69–70. While those allegations certainly lack specifics regarding the date on which she made complaints and the date(s) on which she was assigned scraps and denied a raise, the Court cannot conclude, as a matter of law, that the amount of time between Ms. Ndugga's complaints those actions falls outside of the range in which a causal connection can be inferred. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010) ("[F]ive months is not too long to find the causal relationship."); *Rasmy v. Marriott Int'l, Inc.*, 952 F.3d 379, 391 (2d Cir. 2020) (same); *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) ("[T]he passage of only six months between the dismissal of Espinal's lawsuit and an allegedly retaliatory beating by officers . . . is sufficient to support an inference of a causal connection").

Defendant argues that Ms. Ndugga's allegations are deficient because she has not more specifically identified when she made the relevant complaints, and when the relevant conduct occurred. *See* Mot. at 23–24. However, Defendant relies on inapposite cases in support of that argument: in *Henry v. NYC Health & Hosp. Corp.*, the plaintiff "fail[ed] to state with even a modicum of specificity when the relevant events occurred." 18 F. Supp. 3d 396, 412 (S.D.N.Y. 2014); *see also Rogers v. Fashion Inst. of Tech.*, No. 14 CIV. 6420 (AT), 2016 WL 889590, at *7 (S.D.N.Y. Feb. 26, 2016) (same). Here, by contrast, Ms. Ndugga provides some degree of specificity as to the dates of the specific action—though again, the complaint is certainly wanting in detail.

Accordingly, Ms. Ndugga has sufficiently pleaded a claim for retaliation under the NYSHRL and NYCHRL.

### c.   Ms. Ndugga's Disparate Impact Claim is Dismissed

Ms. Ndugga's disparate impact claims under the NYSHRL and NYCHRL are not sufficiently pleaded. As the Court explained in its first opinion, prior to the NYSHRL's 2019

amendment, plaintiffs were required to plead NYSHRL claims for disparate impact under the same

pleading standard as applied to such claims under Title VII, which "prohibits . . . discrimination

resulting from employment practices that are facially neutral, but which have a 'disparate impact'

because they fall more harshly on a protected group than on other groups and cannot otherwise be

justified." *Waisome v. Port Auth. of New York & New Jersey*, 948 F.2d 1370, 1374 (2d Cir. 1991).  To

state a claim for disparate impact under Title VII, plaintiffs must "(1) identify a specific employment

practice or policy; (2) demonstrate that a disparity exists; and (3) establish a causal relationship

between the two." *Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135, 151 (2d Cir. 2012); *see also*

*Fitchett v. City of New York*, No. 18 CIV. 8144 (PAE), 2021 WL 964972, at *22 (S.D.N.Y. Mar. 15,

2021).  A plaintiff "must at least set forth enough factual allegations to plausibly support each of the

three basic elements of a disparate impact claim."  *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d

Cir. 2020).

 Because the NYSHRL was amended to more closely mirror the NYCHRL, the Court

analyzes under the NYCHRL's standard Ms. Ndugga's disparate impact claims brought under the

NYSHRL for conduct occurring after October 11, 2019.  *See Wellner v. Montefiore Med. Ctr.*, No. 17

CIV. 3479 (KPF), 2019 WL 4081898, at *5 n.4 (S.D.N.Y. Aug. 29, 2019).  Under the NYCHRL, a

plaintiff "must establish 'that a policy or practice of a covered entity or a group of policies or

practices of a covered entity results in a disparate impact to the detriment of any group protected by

the provisions of [the NYCHRL].'"  *Fitchett*, 2021 WL 964972, at *24 (quoting N.Y.C. Admin. Code,

§ 8-107(17)).  That analysis considers the same three factors analyzed under Title VII, but the claims

are "construed more liberally than their counterparts under Title VII" and the previous version of

the NYSHRL.  *See Fitchett*, 2021 WL 964972, at *24.

 "At the prima facie stage" under Title VII, statistical analysis put forth to support the

existence of a disparity "'must [demonstrate] that the disparity is substantial or significant, and must

be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity.'" *Mandala v. NTT Data, Inc.*, 975 F. 3d 202, 209 (2d Cir. 2020) (citing *Chin*, 685 F.3d at 151). That standard is "relaxed at the pleading stage," *id.*, especially under the newly liberalized NYSHRL. For instance, a "plaintiff is not required 'to prove in detail the methodological soundness of her statistical assessment' or to 'supplement [the complaint's] statistical analysis with corroborating evidence.'" *Cardwell*, 2021 WL 4434935, at *36 (S.D.N.Y. Sept. 23, 2021) (quoting *Mandala*, 975 F.3d at 209). "But even at this early juncture, the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact." *Mandala*, 975 F.3d at 209 (emphasis in original).

Here, assuming without deciding that the first two elements have been sufficiently alleged, Ms. Ndugga's disparate impact claims fail because Ms. Ndugga has not sufficiently alleged that the challenged practice—here, the Executive Management Committee's decisions to set and raise journalist's salaries—is causally connected to the allege disparity in pay between women and men working as journalists at Bloomberg. In its first opinion, the Court explained:

> As *Mandala* emphasized, allegations of a disparity—in that case, statistical allegations— must "plausibly suggest that the challenged practice *actually* has a disparate impact." *Mandala*, 975 F.3d at 210. To show that the challenged practice actually has a disparate impact, plaintiffs must "focus on the disparity between appropriate comparator groups." *Id.* The relevant comparison is between the alleged disparity at issue and the "composition of the qualified population in the relevant labor market.'" *Id.* at 210–11 (quoting *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 650 (1989)).

*Syeed I*, 568 F. Supp. 3d at 314. Again, Plaintiff has failed to identify the relevant comparison between the alleged disparity at issue—here, pay between women and men at Bloomberg—and the pay between women and men in journalism. Plaintiff instead alleges that there are "industry wide pay disparities averag[ing] 10–15%." TAC ¶ 33. But Plaintiff does not allege that the pay disparity at Bloomberg is greater than that overall pay disparity in the industry. Without such an allegation, Plaintiff cannot sufficiently allege that the Executive Management Committee's salary-related

practices are the cause of any alleged disparities in pay at Bloomberg, as opposed to the disparity being caused by other (perhaps industry-wide) factors.  In other words, Plaintiff's focuses on an industry-wide pay disparity misses the mark:  the Court's analysis must focus on the alleged disparity resulting from the Defendant's practices that are at issue in this case, not merely the existence of industry-wide gender pay gaps.  Accordingly, Defendant's motion to dismiss Plaintiffs' disparate impact claim under the NYCHRL and NYSHRL is granted.

## V.        LEAVE TO AMEND

Here, the Court denies Plaintiff leave to amend the dismissed claims.  Leave to amend may be denied "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (citation omitted).  Plaintiff has already amended her complaint three times.  Dkt. No. 51.  Plaintiff does not dispute that she failed to file the third amended complaint within 90 days of receiving her right to sue letter from the EEOC.  Thus, for the reasons previously discussed, any amendment of that claim would be futile.  Moreover, it appears that any attempt by Plaintiff to replead her claims for disparate impact would be futile, given that Plaintiff has been provided with multiple opportunities to replead that claim and has failed to do so.  Finally, while Plaintiff raised her retaliation claims for the first time in the third amended complaint, the vast majority of her allegations are based on retaliatory conduct that was alleged in the first two complaints. Accordingly, Plaintiffs are denied leave to amend.  *Cf. Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 18 (2d Cir. 1997) (noting that leave to amend need not be granted where the proposed amendment would be futile).

## VI.       CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Plaintiff's third amended complaint is granted in part and denied in part.  Defendant's motion to dismiss is granted with respect to Ms. Ndugga's Title VII claims and her NYCHRL and NYSHRL claims for disparate

impact.  Defendant's motion to dismiss is denied with respect to Ms. Ndugga's retaliation claims

under the NYCHRL and NYSHRL.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 80.

SO ORDERED.

Dated:  August 17, 2022
New York, New York

_____
GREGORY H. WOODS
United States District Judge