USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/25/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                                                                        :
NAULA NDUGGA, *on behalf of herself and*      :
*similarly situated women*,                         :
                                                                       :
                                     Plaintiff,     :            1:20-cv-7464-GHW
                                                                       :
                                     -v-                          :
                                                                       :          MEMORANDUM OPINION
BLOOMBERG L.P.,                        :                    AND ORDER
                                                                       :
                                         Defendant.   :
------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

**I.     INTRODUCTION**

Plaintiff Naula Ndugga, a Black woman who used to work for Bloomberg's Media Division in New York, alleges that Bloomberg engaged in several discriminatory policies and practices imposed by the firm's three man "Editorial Management Committee," which controls hiring and compensation decisions at Bloomberg. In its most recent opinion, the Court allowed Ms. Ndugga's retaliation claim to proceed, but dismissed her Title VII claims. The Court also dismissed her disparate impact claims.

Ms. Ndugga filed a motion asking that the Court reconsider its decision dismissing her disparate impact claims. Because Ms. Ndugga's amended complaint sufficiently raises a reasonable inference that the Editorial Management Committee's discretionary control over compensation decisions actually caused a greater statistical disparity in pay at Blomberg than in the industry at large, her motion for reconsideration is GRANTED.

**II.     LEGAL STANDARD**

Motions for reconsideration are governed by Local Rule 6.3, which provides that the moving party shall set forth "the matters or controlling decisions which counsel believes the Court has

overlooked." "Motions for reconsideration are . . . committed to the sound discretion of the district court." *Immigrant Def. Project v. U.S. Immigration and Customs Enforcement*, No. 14-cv-6117 (JPO), 2017 WL 2126839, at *1 (S.D.N.Y. May 16, 2017) (citing cases). "Reconsideration of a previous order by the Court is an extraordinary remedy to be employed sparingly." *Ortega v. Mutt*, No. 14-cv-9703 (JGK), 2017 WL 1968296, at *1 (S.D.N.Y. May 11, 2017) (quoting *Anwar v. Fairfield Greenwich Ltd.*, 800 F. Supp. 2d 571, 572 (S.D.N.Y. 2011)). As such, reconsideration should be granted only when the moving party "identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[1] *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 185 (S.D.N.Y. 2016) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013)) (internal quotation marks omitted).

### III. DISCUSSION

Ms. Ndugga adequately pleaded a claim for disparate impact because her third amended complaint sufficiently raises a reasonable inference that the Editorial Management Committee's discretionary control over compensation decisions actually caused a greater statistical disparity in pay at Bloomberg ("BLP") than in the industry at large.

In *Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314 (S.D.N.Y. 2021) ("*Syeed I*"), the Court held that Ms. Ndugga's second amended complaint failed to "sufficiently allege a causal relationship between Defendants' employment policies and any alleged disparities." *Syeed I,* at 321. In holding so, the Court relied on the Second Circuit's decision in *Mandala v. NTT Data, Inc.,* 975 F.3d 202, 210 (2d Cir. 2020):

> 'At the prima facie stage' under Title VII, statistical analysis put forth to support the existence of a disparity 'must [demonstrate] that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity.' *Mandala*, 975 F. 3d at 209 (quoting *Chin*, 685 F.3d at 151). '[T]hat standard is relaxed at the pleading stage,' *id.*, especially under the newly liberalized NYSHRL. For instance, a 'plaintiff is not

---

[1] Ms. Ndugga only seeks reconsideration on one ground: clear error. Dkt. No. 126 at 3.

2

>required 'to prove in detail the methodological soundness of her statistical assessment' or to 'supplement [the complaint's] statistical analysis with corroborating evidence.' *Cardwell v. Davis Polk & Wardwell LLP*, No. 19-cv-10256, 2021 WL 4434935, at *36 (S.D.N.Y. Sept. 23, 2021) (quoting *Mandala*, 975 F.3d at 209). 'But even at this early juncture, the statistics must plausibly suggest that the challenged practice *actually* has a disparate impact.' *Mandala*, 975 F.3d at 209 (emphasis in original).

*Id.*

Applying *Mandala*, the Court concluded that Ms. Ndugga's allegations did not pass muster. The Court noted that, "[m]erely alleging that men are 'frequently' hired at higher salaries than their female peers does not sufficiently demonstrate that a disparity between the starting salaries of male and female reporters exists . . . [w]ithout more, the allegations related to male salaries are insufficient to show a disparity, let alone one caused by Defendant's employment practices." *Id.* The Court also highlighted that Ms. Ndugga's "allegations are insufficient to permit the court to infer a causal connection between the Executive Management Committee's discretion and the disparity between male and female reporters." *Id.*

Ms. Ndugga then amended her complaint as follows to cure the deficiencies identified by the Court:

>Within the Washington, D.C. Bureau . . . [t]here was an average pay disparity of 20%, seen at all levels in the news bureau. Significantly, the same Editorial Management Committee controls compensation decisions for New York, Washington, and every other part of Bloomberg Media . . . [b]ased upon employee compensation data and analysis published by the U.K.'s Government Equalities Office . . . [w]omen's "median hourly wage is 20.2% lower than men's" in the 2020-21 report . . . [a]gain, there is one Editorial Management Committee that controls compensation for all Bloomberg Media reporters, editors, and producers – including those working in the U.K. and included in this U.K. report . . . [g]iven that employees subject to the Editorial Management Committee's decisionmaking in Washington and the U.K. both show approximately 20% pay disparities for women . . . in an industry with pay disparities averaging 10-15%, women employees in New York, like Ms. Ndugga, and throughout the United States who are all subject to the Editorial Management Committee's decision-making are highly likely to be suffering an average 20% pay disparity as well.

Third Amended Compl. ("TAC") ¶¶ 40-41, 43.

3

This time, Ms. Ndugga's allegations did raise a reasonable inference that BLP's practices result in pay disparities. In her third amended complaint, Ms. Ndugga alleged that there was an average pay discrepancy of 20% between men and women at all levels in the Washington, D.C. Bureau and the U.K. office. She further alleged that the Executive Management Committee controlled all compensation for the Washington D.C. bureau, the U.K. offices, and the New York office. Ms. Ndugga then pleaded that BLP employees around the nation are "highly likely to be suffering an average 20% pay disparity as well" due to the Editorial Management Committee being the common decisionmaker over hiring and compensation. She also alleged that the industry-wide pay disparity ranges are lower than the pay disparity at BLP—around 10-15%. Accordingly, Ms. Ndugga's newly added allegations permit the reasonable inference that, because the Editorial Management Committee is the common decisionmaker amongst the BLP offices, and some of the BLP offices experience statistically higher pay disparities than industry-wide pay disparities, it is "highly likely" that BLP's practices cause gendered wage disparities greater than those found in the news media industry at large.[2]

Defendant's argument that Ms. Ndugga's allegations are impermissibly speculative because she does not actually plead a 20% disparity in the New York office is without merit. Ms. Ndugga added specific details about the basis for that allegation, including the multiple BLP locations with 20% pay disparities, and the Editorial Management Committee as the common decisionmaker amongst BLP offices. TAC ¶¶ 41–43. The combination of these allegations makes it plausible that there are similar disparities within all offices over which the Editorial Management Committee has discretionary control over compensation. Furthermore, Ms. Ndugga's use of the phrase "highly

---

[2] In her reconsideration motion, Ms. Ndugga argues an independent discriminatory practice as an alternate ground for her motion for reconsideration. Dkt. No. 126 at ECF p. 4-6. It is unnecessary to determine the merits of this argument because the Court is granting Ms. Ndugga's motion for reconsideration based on the EMC's broad discretion over hiring and compensation at BLP.

likely" is not impermissibly speculative. This allegation is sufficient at this stage because "the use of phrases such as 'strongly suggests' and 'highly likely' is fully consistent with the 'reasonable inference' standard, and does not make a [c]omplaint susceptible to a motion to dismiss." *Brookfield Asset Mgmt., Inc. v. AIG Fin. Prods. Corp.*, No. 09 Civ. 8285(PGG), 2010 WL 3910590, at *5 (S.D.N.Y. Sept. 29, 2010).

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for reconsideration is GRANTED. Accordingly, Defendant's underlying motion to dismiss Plaintiff's disparate impact claims is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 125.

SO ORDERED.

Dated: July 25, 2023  
New York, New York

_____  
GREGORY H. WOODS  
United States District Judge