```
Case 1:20-cv-07464-GHW-GWG   Document 210   Filed 07/25/23   Page 1 of 15
```

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/25/2023
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------- X
:
NAULA NDUGGA, *on behalf of herself and* :
*similarly situated women*, :
:
                                            Plaintiff, :
:     1:20-cv-7464-GHW
                 -v- :
:     MEMORANDUM OPINION
BLOOMBERG L.P., :     AND ORDER
:
                                    Defendant. :
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

### I. INTRODUCTION

Plaintiff Naula Ndugga, a Black woman who worked for Defendant Bloomberg L.P.'s media division in New York, alleges that she was denied promotions for which she was well-qualified, paid less than her male counterparts, subjected to derogatory conduct and remarks targeting her race and gender, and retaliated against for reporting that alleged discriminatory conduct. Accordingly, she brings various claims for discrimination and retaliation against BLP. In a previous opinion, the Court dismissed all claims by Ms. Ndugga's co-plaintiff, Ms. Nafeesa Syeed, and also dismissed Ms. Ndugga's claims under Title VII of the Civil Rights Act of 1964 ("Title VII").

In amending her complaint for the fourth time, Ms. Ndugga reasserted her Title VII claims. Defendant moved to dismiss Ms. Ndugga's Title VII individual disparate treatment and disparate impact claims, as well as those brought on behalf of a proposed class of approximately 1000 female producers, reporters and editors employed by BLP nationwide. Because Ms. Ndugga has adequately alleged ongoing compensation disparities caused by BLP's employment practices and practices that plausibly affect all female producers, reporters, and editors employed at BLP, Defendant's motion to dismiss is DENIED.

## II. BACKGROUND

### A. Facts[1]

In significant part, the facts are set forth in the Court's previous opinions on Defendant's first and second motions to dismiss. *See generally Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314 (S.D.N.Y. 2021) ("*Syeed I*"); *Syeed v Bloomberg L.P.*, 1:20-CV-7464-GHW, 2022 WL 3447987 (SDNY Aug. 17, 2022) ("*Syeed II*"). The reader is referred to those decisions for an overview of the basis for Ms. Ndugga's claims. This opinion considers the facts pleaded in Ms. Ndugga's amended complaint, but does not review all of the complaint's narrative in detail. To the extent that Ms. Ndugga's newly pleaded allegations are relevant to the Court's analysis, those allegations are embedded in the discussion below.

### B. Procedural History

On August 9, 2020, Ms. Syeed commenced this action in New York state court against BLP and several of its employees. Dkt. No. 1. Ms. Syeed amended her complaint in the state court action on August 11, 2020. *Id.* On September 11, 2020, Defendant Bloomberg L.P. ("BLP") removed the case to this Court pursuant to the Class Action Fairness Act. *Id.*

On October 9, 2020, BLP moved to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 20. Rather than oppose BLP's motion to dismiss, on November 16, 2020, Ms. Syeed amended her complaint a second time. Dkt. No. 24 ("SAC"). The SAC added Ms. Ndugga as a plaintiff. *Id.* It also dropped all of the individual defendants, leaving BLP as the sole defendant in the case. *Id.*

---

[1] The facts are drawn from Ms. Ndugga's fourth amended complaint ("FAC"), Dkt. No. 170, and are accepted as true for the purposes of this motion to dismiss. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On January 15, 2021, BLP moved to dismiss the newly amended complaint or, in the alternative, to strike Plaintiff's demand for a jury trial. Dkt. No. 43. On February 12, 2021, Plaintiffs filed a brief in opposition. Dkt. No. 45. On February 26, 2021, BLP filed its reply. Dkt. No. 47. On March 4, 2021, Plaintiff filed her response to BLP's reply. Dkt. Nos. 48–49.

On October 25, 2021, the Court granted in part and denied in part BLP's motion to dismiss Plaintiff's complaint. *See Syeed v. Bloomberg L.P.,* 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021) ("*Syeed I*"); Dkt. No. 50. In that opinion, the Court dismissed Ms. Syeed's claims in full, and dismissed Ms. Ndugga's Title VII claims and her claims for disparate impact and failure to promote under the NYCHRL and NYSHRL. *See generally Syeed I.* The Court permitted Ms. Ndugga's claims for disparate pay and hostile work environment under the NYCHRL and NYSHRL to proceed. *Id.*

On November 30, 2021, Ms. Ndugga filed a second charge with the Equal Employment Opportunity Commission ("EEOC"), alleging acts of retaliation for her protected activity and continuing discrimination in compensation after her initial charge. Dkt. No. 181, Ex. 3 ("Second Charge").

Ms. Ndugga amended her complaint for the third time on December 10, 2021. Dkt. No. 59 ("TAC"). On February 18, 2022, BLP moved to dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 81. Plaintiff filed her opposition on March 11, 2022. Dkt. No. 90. BLP filed its reply on March 25, 2022. Dkt. No. 91.

On August 17, 2022, the Court granted in part and denied BLP's motion to dismiss the TAC. *Syeed v. Bloomberg L.P.,* No. 20-cv-7464-GHW, 2022 WL 3447987, at *1 (S.D.N.Y. Aug. 17, 2022) ("*Syeed II*"); Dkt. No. 120. In that opinion, the Court dismissed all Ms. Ndugga's Title VII claims as time barred because she had not amended her complaint within 90 days of receiving her February 2, 2021 right to sue letter from her the EEOC. *Id.* at *2–3. Additionally, the Court

dismissed her NYSHRL and NYCHRL disparate impact claims. *Id.* at *11. The Court permitted Ms. Ndugga's retaliation claims to proceed. *Id.*

On August 31, 2023, Plaintiff moved for reconsideration of the dismissal of her NYSHRL disparate impact claims. Dkt. No. 126. BLP filed its opposition on September 12, 2022. Dkt. No. 133. Plaintiff filed her reply on September 14, 2022. Dkt. No. 134. On July 25, 2023, the Court granted Ms. Ndugga's reconsideration motion and allowed her disparate impact claims pursuant to the NYSHRL and the NYCHRL to proceed. Dkt. No. 209.

On October 7, 2022, Plaintiff received her right to sue letter from the Second Charge with the EEOC. FAC ¶ 6. On December 8, 2022, while her reconsideration motion was pending, Ms. Ndugga amended her complaint. *Id.* In her amended complaint, Ms. Ndugga adds allegations and corresponding causes of action with respect to retaliation, pay discrimination, and hostile work environment that occurred after February 3, 2021—after she received her first right to sue letter from the EEOC. That is the operative complaint in this action. BLP moved to dismiss Ms. Ndugga's Title VII claims on January 27, 2023. Dkt. 181 ("Def's Mot."). Plaintiff filed her opposition on February 27, 2023. Dkt. 183 ("Pl's Opp'n"). BLP filed its reply on March 3, 2023. Dkt. No. 184 ("Reply").

### III.   LEGAL STANDARD

A complaint need only contain "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a claim that does not meet this pleading standard for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion filed under Rule 12(b)(6), the court accepts as true the facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are inadequate. *Iqbal*, 556

U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And "[t]he tenet that a court must accept" as true a complaint's factual allegations does not apply "to legal conclusions." *Iqbal*, 556 U.S. at 678 (alterations omitted).

To survive dismissal, a complaint must allege sufficient facts to state a plausible claim. *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts to support the reasonable inference that the defendant has acted unlawfully. *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). The plaintiff's claim must be more than merely "speculative." *Twombly*, 550 U.S. at 545. And a reviewing court must "draw on its judicial experience and common sense" to determine plausibility. *Iqbal*, 556 U.S. at 679 (citation omitted).

On a motion to dismiss, a court must generally "limit itself to the facts stated in the complaint." *Field Day, LLC v. Cnty. of Suffolk*, 463 F.3d 167, 192 (2d Cir. 2006). But a court may consider "any 'written instrument' . . . attached to [the complaint] as 'an exhibit' or . . . incorporated in it by reference." *Lynch v. City of New York*, 952 F.3d 67, 79 (2d Cir. 2020) (quoting Fed. R. Civ. P. 10(c) (other citations omitted)). A court may also consider a document "solely relie[d]" on by the plaintiff if it "is integral to the complaint." *Id.* (quotation and brackets omitted). A document is "integral to the complaint" if the complaint "relies heavily" on the document's "terms and effect." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016); *see also Littlejohn v. City of N.Y.*, 795 F.3d 297, 305 n.3 (2d Cir. 2015) (holding that a court may "consider the plaintiff's relevant filings with the EEOC" on a motion to dismiss if the filings "are integral to and solely relied upon by the complaint" (quotation and brackets omitted)). A plaintiff must "*rely* on the terms and effect of the document in drafting the complaint; mere notice or possession is not enough." *Nicosia*, 834 F.3d at 231 (emphasis added) (quoting *Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

5

IV.     DISCUSSION

### A. Ms. Ndugga's Individual Title VII Disparate Treatment Claim

Ms. Ndugga sufficiently pleads a disparate treatment claim under Title VII. Title VII "makes actionable *any* form of sex-based compensation discrimination." *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 110 (2d Cir. 2019) (emphasis in original). Claims under Title VII are subject to the burden-shifting framework adopted in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Torre v. Charter Commc'n., Inc.,* 493 F. Supp. 3d 276, 284–85 (S.D.N.Y. 2020) (collecting cases). "At the motion-to-dismiss stage, however, only the first step — the plaintiff's burden to allege a *prima facie* case of discrimination — is at issue." *Id.* (citing *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)).

"To establish a *prima facie* case under Title VII and the NYSHRL, a plaintiff must show that: (1) she was a member of a protected class; (2) she was competent to perform the job in question, or was performing the job duties satisfactorily; (3) she suffered a materially adverse employment action; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination." *Id.* (citing *Jeune v. City of New York*, No.11 Civ. 7424, 2014 WL 83851, at *4 (S.D.N.Y. Jan. 9, 2014)).

Here, BLP contends that Ms. Ndugga fails to raise a minimal inference of discrimination because she has not shown that she was "similarly situated in all material aspects to individuals with whom she seeks to compare herself" from February 2021 and after (the "Relevant Time Period"). Def's Mot. at 9; Pl's Opp'n at 7. BLP claims that Ms. Ndugga has not made "'specific allegations' regarding the 'actual job duties' performed by the plaintiff and similarly situated employees" and therefore fails to meet the pleading standard for her claim. Def's Mot. at 12; *Stern v. State Univ. of New York*, 2018 WL 4863588, at *9 (E.D.N.Y. Sept. 30, 2018).

6

Ms. Ndugga alleges that her 5% pay raise failed to remedy the ongoing pay discrimination that she suffered throughout her employment at BLP.  FAC ¶¶ 85, 114.  "[D]iscriminatory compensation decision" claims are covered by the Lilly Ledbetter Fair Pay Act and accrue each time discriminatory wages are paid.  42 U.S.C. § 2000e-5(e)(3)(A); *Davis v. Bombardier Transp. Holdings (USA) Inc.*, 794 F.3d 266, 270 (2d Cir. 2015).  Ms. Ndugga alleges that the Editorial Management Committee's (the "EMC") broad discretion over hiring and compensation caused ongoing pay disparities and that those disparities went uncorrected, even after she received her raise.  FAC ¶ 85.  Ongoing pay disparities violate Title VII.  *Davis*, 794 F.3d at 269 (2d Cir. 2015) ("[A] compensation claim under the statute accrues not only at the time of the discriminatory decision but also with each paycheck the victim receives.").  Since Ms. Ndugga claims that neither the 5% merit raise she first received in 2021, nor the later pay increases through the end of January 2022, right before she resigned, brought her compensation "in line with her white male counterparts," FAC ¶¶ 64, 112, the continued pay-discrimination falls within the Relevant Time Period of February 2021 through her resignation in February 2022.

Moreover, even if Ms. Ndugga's prior allegations fell "outside of the actionable statutory period," the Supreme Court has explained that past discrimination "might in some circumstances support the inference that such discrimination continued, particularly where relevant aspects of the decision-making process [have] undergone little change."  *Bazemore v. Friday*, 478 U.S. 385, 402 (1986) (Brennan, J., concurring) (internal quotation marks omitted).  The statute of limitations does not bar an employee from using past acts as background evidence in support of a timely claim.  *Natl. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

In *Syeed I*, this Court made its similarly situated ruling on a NYSHRL claim that included pay discrimination before October 2019.  *Syeed I*, 568 F. Supp. 3d at 343.  As the Court noted, NYSHRL claims accruing prior to October 11, 2019, are evaluated under the same general

7

framework as Title VII claims. *Id.* In other words, the Court already applied the standard relevant to Ms. Ndugga's Title VII claims and determined that she plausibly alleged similarly situated comparators. *Id.* at 344.[2]

Defendants argue that there is no information linking the 2018 comparators to the post 2021 comparators and that there could be relevant differences in jobs, responsibilities, or performance. Mot. at 12. But analogous arguments were raised and dismissed in *Syeed I*:

> It is not the case, as Defendants suggest, that Ms. Ndugga's claims fail because she has not pleaded sufficiently detailed facts concerning her comparators relevant experience, length of employment, job titles, job responsibilities or annual review . . . . [Nor] are Ms. Ndugga's claims defeated by the fact that three of the eighteen men identified by Ms. Ndugga occupied more senior positions at Bloomberg than she did. *See* Mot. at 17–18. Notably, even if the court declined to consider these three individuals as comparators, Ms. Ndugga alleges that the men were her "team members" and performed "similar job duties" to her.

*Syeed I*, 568 F. Supp. 3d at 338. The same analysis applies here.[3] Further, the fact that Ms. Ndugga's 2021 salary increase still left her below the starting salary of male counterparts deemed sufficient comparators for purposes of her NYSHRL disparate pay claim *strengthens* the inference that such discrimination was ongoing. *See, e.g.*, *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (explaining that Title VII does not "bar an employee from using . . . prior acts as background evidence in support of a timely claim").

---

[2] Notably, in most cases, "'[w]hether two employees are similarly situated . . . presents a question of fact,' rather than a legal question to be resolved on a motion to dismiss." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014); *Chalmers v. City of New York*, No. 20 Civ. 3389, 2021 WL 4226181, at *4 (S.D.N.Y. Sept. 16, 2021) ("In this Circuit, the question of whether comparators are sufficiently similar is typically resolved at the earliest at the summary judgment stage, following discovery.").

[3] Drawing all inferences in her favor and viewing these allegations in light of the rest of Ms. Ndugga's complaint, it is at least reasonable to infer that at least some of these 'team members' had the same level of seniority as Ms. Ndugga. Moreover, the Court must consider Ms. Ndugga's allegations she was systematically looked over for promotions and opportunities that were 'given to her male peers,' SAC at ¶ 96, which suggests that Ms. Ndugga could have occupied a similarly senior position, but was denied the chance to do so because of [BLP]'s discrimination. And regardless, Ms. Ndugga's identification of these individuals provides contextual support for the remainder of her claims.

*Syeed I*, 568 F. Supp. 3d at 340.

BLP argues that Ms. Ndugga's allegations are even weaker than those found insufficient in other cases. However, as discussed in *Syeed I*, courts have come to differing conclusions regarding the level of detail necessary to sufficiently show that a comparator is similarly situated to a plaintiff. While it is undisputed that, at the summary judgment stage, "[a] plaintiff relying on disparate treatment evidence must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself . . . whether a plaintiff must carry a similar burden at the motion to dismiss stage is hardly settled." *Syeed I*, 568 F. Supp. 3d at 338 n.9. This Court found that Ms. Ndugga sufficiently alleged that she was compensated less than BLP's male employees. *Id.* at 338.[4] Moreover, the Court determined that those male employees were similarly situated to her. *Id.* at 339.[5] BLP has identified no persuasive reason to reach a different conclusion here.

Finally, BLP's argument that Ms. Ndugga cannot raise a disparate treatment claim based on a practice she has not alleged was applied to her is without merit. Mot. at 14–15. The alleged discriminatory practice—the EMC's discretionary control over hiring and compensation—unquestionably affected Ms. Ndugga throughout her employment because she was an employee whose hiring and compensation was determined solely by the EMC. FAC ¶¶ 1, 14, 16, 40, 43, 47,

---

[4] Ms. Ndugga alleges, among other things, that male producers hired out of her internship program were paid a starting salary $10,000 more than hers, SAC ¶ 94; that eighteen male team members received increased compensation for performing similar job duties, *id.* ¶ 95; that she was denied raises and compensation compared to her male peers, *id.* ¶ 99, and that Brian Wall, "a producer who began his employment at the same time as Ms. Ndugga for the same position, with similar education" received increased compensation and a promotion, *id.* ¶ 103. These allegations are sufficient to state that Ms. Ndugga was treated less well with respect to compensation than male employees.

*Syeed I*, 568 F. Supp. 3d at 338.

[5] Ms. Ndugga claims that she and the higher-paid male producers were hired out of the same internship program. Drawing all inferences in Ms. Ndugga's favor, one could reasonably infer that the members of the internship class had a similar educational background and work history so as to be similarly situated. Similarly, construing in Ms. Ndugga's favor her allegations that she and Brian Wall worked in the "same position, with similar education," is it reasonable to infer that the two were similarly situated in terms of experience and their respective job responsibilities.

*Syeed I*, 568 F. Supp. 3d at 339.

9

114. Moreover, drawing all inferences in Ms. Ndugga's favor, one could reasonably infer that the EMC's determination of salary relying on prior pay applied to her, because her current or most recent salary when she was hired as a full-time employee out of the internship program was a $25 hourly payment as a paid intern, lower than her similarly situated male peers. FAC ¶¶ 32, 61; *see Syeed I*, 568 F. Supp. 3d at 339.

Because Ms. Ndugga has alleged that she was paid less than similarly situated men, she has raised the requisite minimal inference of discrimination. Accordingly, BLP's motion to dismiss Ms. Ndugga's individual disparate treatment claim under Title VII is denied.

### B. Ms. Ndugga's Individual Title VII Disparate Impact Claim

Ms. Ndugga sufficiently pleads an individual disparate impact claim under Title VII. To state a Title VII claim under a theory of disparate impact, the plaintiff "must at least set forth enough factual allegations to plausibly support each of the three basic elements of a disparate impact claim." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 209 (2d Cir. 2020). "To nudge a disparate impact claim across the line from conceivable to plausible—and, indeed, to ultimately prove such a claim—plaintiffs typically rely on statistical evidence to show a disparity in outcome between groups." *Id.* "At the *prima facie* stage, a plaintiff's statistical analysis 'must [demonstrate] that the disparity is substantial or significant, and must be of a kind and degree sufficient to reveal a causal relationship between the challenged practice and the disparity.'" *Id.* (quoting *Chin v. Port Auth. of New York & New Jersey*, 685 F.3d 135, 151 (2d Cir. 2012)). However, to survive a motion to dismiss, a plaintiff is not required "to prove in detail the methodological soundness of her statistical assessment" or to "supplement [the complaint's] statistical analysis with corroborating evidence," but "the statistics must plausibly suggest that the challenged practice actually has a disparate impact." *Id.* at 209–10. "This means that the statistical analysis must, at the very least,

focus on the disparity between appropriate comparator groups" or "reveal disparities between populations that are relevant to the claim the plaintiff seeks to prove." *Id.* at 210.

Because Ms. Ndugga's reconsideration motion was granted, BLP's argument about her disparate impact claims being dismissed under the "more lenient NYSHRL standard" is moot. Mot. at 18. Further, Ms. Ndugga's allegations—that the EMC's discretionary control over hiring and compensation cause a greater pay disparity in the New York office than the industry at large—are sufficient to state a claim under Title VII. *Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 439 (S.D.N.Y. 2019) (finding that plaintiff adequately alleged a facially neutral policy where defendant had an assessment system "that provide[d] unchecked discretion to supervisors and subsequently cause[d] minority employees to be passed over for promotions or treated more negatively"); *Martin v. Coinmach Corp.*, No. 15-CV-8137, 2016 WL 6996182, at *6 (S.D.N.Y. Nov. 29, 2016) (concluding that defendant's "policy of making all merit increases dependent entirely on the discretion of a white supervisor, in the absence of any objective criteria to cabin or direct that individual's judgment is a 'specific employment practice'"); *see also* Dkt. No. 209 ("Ms. Ndugga added specific details about the basis for that allegation, including the multiple BLP locations with 20% pay disparities, and the Editorial Management Committee as the common decisionmaker amongst BLP offices. TAC ¶¶ 41–43. The combination of these allegations makes it plausible that there are similar disparities within all offices over which the Editorial Management Committee has discretionary control over compensation.").

BLP contends that Ms. Ndugga fails to identify a specific employment practice that impacted her "during the Relevant Time Period." Mot. at 20. However, because Ms. Ndugga alleges "discriminatory compensation decision[s] or other practice[s]," her claims accrue each time discriminatory wages are paid. *Davis*, 794 F.3d at 270; 42 U.S.C. § 2000e-5(e)(3)(A). BLP attempts to isolate Ms. Ndugga's new allegation that her raise still left her compensation below the starting

11

pay of her male colleagues, misrepresenting her principal argument. Mot. at 20. Ms. Ndugga is not alleging that the raise was independent evidence of disparate impact. She is alleging that the raise is evidence of BLP's failure to remedy the ongoing impact of the EMC's compensation decision making. FAC ¶ 114 ("[BLP]'s EMC made the decisions affecting Ms. Ndugga's compensation and refused to authorize the equitable pay raise so that Ms. Ndugga received a comparable salary like her male counterparts").[6]

Ms. Ndugga plausibly alleges that the EMC's discretionary control over hiring and compensation caused a greater statistical disparity at BLP that in the industry at large. Accordingly, BLP's motion to dismiss her Title VII disparate impact claim is denied.

### C. Ms. Ndugga's Title VII Class Claims[7]

#### i. Disparate Treatment

Ms. Ndugga sufficiently pleads class claims under Title VII. BLP argues that, even if Ms. Ndugga can state an individual Title VII disparate pay claim, her class claims fail because she cannot plausibly show that a proposed class of "approximately 1000 female producers, reporters and

---

[6] The cases BLP cites on this point are distinguishable because they concern plaintiffs who were not able to show that the alleged discriminatory practice caused them injury. *Nunez v. Cuomo*, 11-CV-3457 DLI LB, 2012 WL 3241260, at *11 (E.D.N.Y. Aug. 7, 2012) ("[N]amed plaintiffs . . . must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."); *Brown v. Coach Stores, Inc.*, 30 F. Supp. 2d 611, 613 (S.D.N.Y. 1997), *aff'd*, 163 F.3d 706 (2d Cir. 1998) ("Here, while plaintiff makes vague allegations about how defendant hires, promotes, and trains its employees . . . she identifies no affirmative policy, practice, or criteria that has causally resulted in the alleged disparities in defendant's workforce.").
[7] The procedural posture of this case creates the risk that "potential class members [are] waiting on the sidelines to see how the lawsuit turns out and, if a judgment for the class is entered, [they will] interven[e] to take advantage of the judgment." *Lowenbien v. Transworld Sys., Inc.*, 19-CV-492 (BMC), 2019 WL 3081095, at *3 (E.D.N.Y. July 15, 2019) (quoting *Brecher v. Republic of Argentina*, 806 F.3d 22, 26 (2d Cir. 2015)). However, the decision to decide the merits of a case "before acting on class certification [is] well within the discretion of the district court, particularly [if plaintiff] never moved to certify the purported class." *Lowenbien*, 2019 WL 3081095, at *3 (quoting *Schweizer v. Trans Union Corp.*, 136 F.3d 233, 239 (2d Cir. 1998)). Here, BLP—the party who would be most harmed by potential class members' "one-way intervention"—filed a motion to dismiss and plaintiff has not moved to certify the purported class. The Court therefore finds that it is appropriate to resolve the motion to dismiss before plaintiff moves to certify the purported class. *See Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995).

editors employed by BLP nationwide were denied equal pay based on sex after February 2021." Mot. at 16.[8]

"'[I]n appropriate cases, giving discretion to lower-level supervisors can be the basis of Title VII liability under a disparate impact theory—since 'an employer's undisciplined system of subjective decisionmaking [can have] precisely the same effects as a system pervaded by impermissible intentional discrimination.'" *Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 463 (S.D.N.Y. 2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 355 (2011)). "In such a case, however, a plaintiff must identify "a 'specific employment practice' . . . that ties all [of the class members'] claims together." *Id.* (quoting *Dukes*, 564 U.S. at 357). The relevant question is whether the plaintiffs can identify a common mode of exercising discretion that pervades the entire company. *See Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 118 (S.D.N.Y. 2012). At the motion to dismiss stage, a plaintiff does not have to "*prove* that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc.," for purposes of Rule 23. *Kassman*, 925 F. Supp. 2d at 464 (emphasis in original). The relevant question is whether, based on the allegations in the complaint, "it is plausible that plaintiffs will come forth with sufficient evidence at the class certification stage to demonstrate commonality." *Id.* (quoting *Calibuso v. Bank of America Corp,* 893 F.Supp.2d 374, 390 (E.D.N.Y. 2012)).

Ms. Ndugga has alleged several specific BLP policies that result in discrimination including: the EMC's policy of basing starting pay off of prior pay (FAC ¶¶ 32–33, 35); the EMC's alleged willingness to hire male reporters at higher salaries than their female peers (FAC ¶¶ 34–35); a

---

[8] The cases BLP cites on this point are distinguishable. In *Suzuki v. State University of New York College at Old Westbury*, the court found the plaintiff could not state an individual claim, that "Rule 23 was an improper way to bring a class action in an Equal Pay Act claim," and that "the claim was time-barred." No. 08-CV-4569, 2013 WL 2898135 *4 (E.D.N.Y. June 13, 2013). In *General Telephone Co. of Southwest v. Falcon*, the Court was deciding a direct challenge to class certification, not a motion to dismiss. 457 U.S. 147 (1982). Finally, in *Krish v. Connecticut Ear, Nose & Throat, Sinus & Allergy Specialists, P.C.*, the plaintiff only alleged "a few confirmatory instances . . . of age discrimination that follow[ed] a similar pattern" and not a "formal policy of discrimination." 607 F. Supp. 2d 324 (D. Conn. 2009).

13

company-wide ban on discussing salaries with coworkers and policy of reprimanding those who do not maintain confidentiality (FAC ¶ 38); and the EMC routinely directing Bureau Chiefs to reduce individual performance ratings, which are in turn used to deny pay increases (FAC ¶¶ 44, 47).  Ms. Ndugga alleges that these policies consistently produce pay disparities for women.  FAC ¶ 43.  Further, Ms. Ndugga alleges that, during the Relevant Time Period, BLP failed to remedy the effects of these policies.  FAC ¶ 115.  It is thus plausible that, after discovery, she will be able to demonstrate commonality among BLP's female producers, reporters and editors, especially since the EMC "controls all employment decisions" at BLP.[9]  Accordingly, BLP's motion to dismiss Ms. Ndugga's class wide Title VII disparate treatment claim is denied.

      ii.  Disparate Impact

  BLP also moves to dismiss Ms. Ndugga's Title VII disparate impact claims brought on behalf of the putative nationwide class in Count II.  Mot. at 20–22.  BLP largely recycles arguments made in their opposition to Ms. Ndugga's motion for reconsideration.  Dkt. No. 133.  These arguments are unavailing.  As discussed above, Ms. Ndugga alleges that specific, facially neutral employment policies had a disparate impact on female class members, including, for example, the EMC's reliance on prior pay in setting salaries and broad discretion over compensation and hiring.  FAC ¶¶ 33–43.  Those allegations are sufficient to survive a motion to dismiss.  *Kassman*, 925 F. Supp. 2d at 470.  Accordingly, BLP's motion to dismiss Ms. Ndugga's class wide Title VII disparate impact claim is denied.

---

[9] BLP points to the fact that discovery is underway for Ms. Ndugga's state law pay discrimination claims yet she has not identified "a single female producer, reporter or editor [] who purportedly was paid less than a similarly situated male journalist during the Relevant Time Period." Mot. at 17. Yet the protective order issued by this Court on March 4, 2022 precludes Ms. Ndugga from disclosing confidential discovery material in a publicly filed complaint. Dkt. No. 88.

## V. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss Plaintiff's fourth amended complaint is DENIED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 180.

SO ORDERED.

Dated: July 25, 2023
New York, New York

_____
GREGORY H. WOODS
United States District Judge